1  Alan Himmelfarb (Cal. Bar. No. 90480)
   KAMBEREDELSON LLC
2  2757 Leonis Blvd.
   Los Angeles, CA 90058
3  (323) 585-8696
   ahimmelfarb@kamberedelson.com
4
   Jay Edelson
5  Ethan Preston
   KAMBEREDELSON LLC
6  53 West Jackson Ave., Suite 1530
   Chicago, IL 60604
7  312-589-6370
   jedelson@kamberedelson.com
8  epreston@kamberedelson.com

9  *Attorneys for John Lofton*

10        **IN THE UNITED STATES DISTRICT COURT**
          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11                    **OAKLAND DIVISION**

12  JOHN LOFTON, an individual, on his own behalf      No. 07-05892 (EDL)
    and on behalf of all others similarly situated,
13                                                     Judge Elizabeth D. Laporte
14                    Plaintiff                        **PLAINTIFF'S NOTICE OF**
                                                       **MOTION; MOTION FOR**
15            v.                                       **PRELIMINARY INJUNCTION**
                                                       **AND CLASS CERTIFICATION**
16  BANK OF AMERICA CORPORATION, FIA
    CARD SERVICES, N.A., a national banking            Date: January 15, 2008
17  association, CARLSON COMPANIES, INC., a            Time: 9:00 a.m.
    Minnesota corporation, CARLSON TRAVEL             Location: Courtroom E, 15th Floor
18  NETWORK ASSOCIATES, INC., a Minnesota             450 Golden Gate Ave.
    corporation, and CARLSON TRAVEL GROUP,            San Francisco, CA 94102
19  INC.  a California corporation, and DOES 1 to
    100,
20                    Defendants.

21

22

23

24

25

26

27

28

# NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that John Lofton ("Lofton") will move the Court for a preliminary injunction in the above referenced proceedings, pursuant to Federal Rule of Civil Procedure 65(a) on January 15, 2008, at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, CA 94102, in Courtroom E, 15th Floor, before the Honorable Elizabeth D. Laporte.

This Motion is based on this Notice of Motion and Motion, the Brief in Support of the Motion and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

Defendants Bank of America Corp., FIA Card Services, N.A., Carlson Companies, Inc., Carlson Travel Network Associates, Inc., and Carlson Travel Group, Inc., administer the travel-related benefits of the Rewards Program for WorldPoints credit cards. This litigation concerns the assessment of "fuel related" fees by one or more of the Defendants on card holders purchasing airline tickets through the WorldPoints Program. Lofton redeemed his WorldPoints for credit towards a set of airline tickets, and one or more of the Defendants charged Lofton a $45 "fuel related" fee. Lofton avers that the Defendants charged this fee, contrary to the representations made in the WorldPoint Program's rules. Through this Motion, Plaintiff seeks the following equitable remedies:

This Motion seeks an order requiring one or more of the Defendants to provide Lofton with an accounting for the fees charged to him with respect to the purchase of his airline tickets. This Motion also seeks an order imposing a constructive trust on those sums charged by the Defendants for the purchase of certain airline tickets. These sums should be not be dispersed, but should be placed in a segregated account pending the resolution of this action. Plaintiff's right to the accounting and the imposition of the constructive trust arise under operation of California law.

In addition, Defendants make representations in the marketing of the WorldPoints Program that, taken together, reasonably create a consumer expectation that a) the price for airline tickets under the Program would be at least as low as the lowest fare available to the

general public, and b) that Defendants would not charge their own transaction fees on top of the price of such airline tickets. Defendants must be enjoined from continuing to make these representations to potential and existing WorldPoint card holders, inasmuch as these representations are misleading and create mistaken expectations about the WorldPoint Program. Defendants' deceptive marketing threaten to cause irreparable harm to consumers' confidence in representations made in the marketplace and should be enjoined on that basis.

In sum, this Motion seeks an Order from this Court against Defendants that:

1.    To the extent necessary, and only to the extent necessary, for the Court to grant the preliminary injunction sought herein, certifies the action as a class action and

    (a)    designates Plaintiff as representative of a class of all persons California residents who purchased airline tickets through the WorldPoints Rewards program and who were charged a "fuel-related" fee by any of Defendants that was not imposed by the airline issuing the relevant ticket; and

    (b)    KAMBEREDELSON, LLC as class counsel under Rule 23(b)(2) and Rule 23(c)(4).

2.    Imposes a constructive trust on

    (a)    those sums Defendants received from the sales of airline tickets to members of the Class ("Constructive Trust Funds"),

    (b)    which Defendants and/or their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the Court's order ("Constructive Trustees") possess or control.

3.    Requires Defendants to provide notice of the Court's order to any person which any Defendant knows or has reason to believe has control over Constructive Trust Funds, and to certify to the Court that they have provided such notice no later than 5 days after the entry of the Court's order.

4.    Requires each Constructive Trustee

    (a)    to provide the Court and Plaintiff an accounting of all Constructive Trust Funds, no later than 30 days after the entry of the Court's order; and

    (b)    to certify to the Court no later than 10 days after the entry of the Court's order that all Constructive Trust Funds in their control as of the date of the Court's order, or which come into the control of the Constructive Trustees after the date of the Order, have been placed into a segregated, interest-bearing fiduciary account maintained by a FDIC-insured financial institution.

5.    Prohibits Defendants from continuing to make any written or oral representation that

(a)    Defendants will purchase "the lowest fare available through the travel provider at the time of booking" for WorldPoints card holders; or

(b)    that credit obtained from the redemption of WorldPoints would apply to "all taxes and destination fees [except] fuel related surcharges and/or additional security fees deemed necessary by the individual carrier."

without also specifically disclosing in the same representation that the price for airline tickets under the Program is not necessarily the lowest fare available to the general public for those tickets, and/or Defendants charge their own transaction fees on top of the price of such airline tickets.

1

**Table of Contents**

2

Page

3    I.    **Lofton's Factual Investigation Indicates a Breach of Fiduciary Duty**......................1

4
5         A.    Defendants Charged Lofton a $45 "Fuel Related" Fee That Was Not Imposed
               By Continental Airlines...........................................................................................2

6
7         B.    Under the Terms of the WorldPoints' Program Details, Lofton Reasonably
               Expected to Receive Airline Tickets at their Actual Price Charged by
8               Continental Airlines .................................................................................................
               2

9
10        C.    It Is Unclear Which Defendants Charged Lofton's Credit Card, Making an
               Order for an Accounting Still More Imperative....................................................3

11
12        D.    One or More of the Defendants Owes Lofton a Fiduciary Duty With Respect to
               the "Fuel Related" Fee............................................................................................4

13
14   II.   **Lofton Is Entitled to the Relief Sought in the Motion for Preliminary Injunction**..5

15
16        A.    An Equitable Accounting Is an Established Preliminary Remedy for a Breach of
               Fiduciary Duty Claim ..............................................................................................5

17
18        B.    The Misleading Terms of the Program Details Anchor Lofton's UCL and CLRA
               Claims        ................................................................................................................8

19
20        C.    Imposition of a Constructive Trust Is Ancillary to Restitution Under Lofton's
               Breach of Fiduciary Duty, UCL, and CLRA Claims ...........................................9

21
22        D.    UCL and CLRA Also Provide Plaintiff with Right to Injunction Against Further
               False Advertising and a Corrective Advertising Remedy ..................................11

23   III.  **The Applicable Law Supports Plaintiff's Motion for Preliminary Injunction** ......11

24
25        A.    Lofton Is Likely to Prevail on His Claims .........................................................12

26        B.    Irreparable Harm Is Presumed When a Right to an Equitable Remedy Is
               Demonstrated.........................................................................................................12

27
28        C.    Irreparable Harm Is Presumed Where Defendants' Misleading Representations
               Cause Consumer Confusion ................................................................................13

# Table of Contents

Page

D.    The Balance of Hardships and Public Interest Favor Granting the Motion, Because Plaintiff's Proposed Remedies are Carefully Tailored to Protect His Interests and the Class's Interests ....................................................................15

E.    The Court Should Impose No Bond or a Minimal Bond ...................................17

IV.    **Plaintiff Seeks Class Certification Under Rule 23(b)(2) and Rule 23(c)(4) to the Extent the Court Deems Class Certification Necessary to Obtain the Preliminary Injunction** ...........................................................................................................17

A.    Members of the Class Are So Numerous That Joinder Is Impractical ..............19

B.    The General Application of the "Fuel Related" Fee to Plaintiff and the Other Members of the Class Establishes Commonality, Typicality, and Class Cohesion..............................................................................................................21

C.    Class Representatives And Their Counsel Are Adequate to Represent the Class ..................................................................................................................22

V.    **Conclusion** ...............................................................................................................23

**Table of Authorities**

**Federal Cases**                                                                 **Page**

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001)....................................................22

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999)......................................17

*Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ......................................21

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) .......................................20, 21, 23

*Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141 (1989).....................................15

*Bowman v. Nat'l Football League*, 402 F. Supp. 754 (D. Minn. 1975) ............18 n.2

*Caroline C. v. Johnson*, 174 F.R.D. 452 (D. Neb. 1996) .........................................21

*Cason v. Nissan Motor Acceptance Corp.*, 212 F.R.D. 518 (M.D. Tenn. 2002) ...............19 n.2

*Cent. Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993) ........................18-19

*Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D. Cal. 2005).................................9

*Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064 (N.D. Cal. 2003) ................................15, 16

*eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000)..........................16-17

*Fraser v. Major League Soccer, LLC*, 180 F.R.D. 178 (D. Mass. 1998) ..........................19 n.2

*Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1977) ........................20

*Gilder v. PGA Tour, Inc.*, 936 F.2d 417 (9th Cir. 1991) .........................................14

*Gratz v. Bollinger*, 539 U.S. 244 (2003) ..................................................22 n.3

*Guckenberger v. Boston Univ.*, 957 F. Supp. 306 (D. Mass. 1997) ..................................19 n.2

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................................21, 22-23

*Henry v. Lehman Commer. Paper, Inc.*, 471 F.3d 977 (9th Cir. 2006) ..................................6

*Hicks v. Morgan Stanley & Co.*,
    No. 01-10071, 2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003)...............22 n. 3

*Howe v. Varity Corp.*,
    No. 88-1598, 1989 U.S. Dist. LEXIS 17521 (S.D. Iowa July 14, 1989)................17 n.1

*In re Activision Sec. Litig.*, 621 F. Supp. 415 (N.D. Cal. 1985)............................................18

*In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130 (D. N.J. 1984) ..................................23

*In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124 (9th Cir. 2002)..............................18

*In re Niles*, 106 F.3d 1456 (9th Cir. 1997) .......................................................6-7

**Table of Authorities**

**Federal Cases**                                                                                                        **Page**

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005)...............................20

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003)................................22 n.3

*Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982)...........................20-21

*Justin v. City of Los Angeles*,
    No. 00-12352, 2000 U.S. Dist. LEXIS 17881 (C.D. Cal. Dec. 5, 2000)......................17

*L.H. v. Schwarzenegger*,
    No. 06-2042, 2007 U.S. Dist. LEXIS 18728 (E.D. Cal. Feb. 28, 2007) .....................20

*Lynch v. Rank*, 604 F. Supp. 30 (N.D. Cal. 1984).........................................................20

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004) ................................................20

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) .........................................................23

*Morgan v. UPS of Am.*, 169 F.R.D. 349 (E.D. Mo. 1996)................................................19 n.2

*Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595 (N.D. Cal. 1986) .................20

*O'Connor v. Boeing North Am., Inc.*, 180 F.R.D. 359 (C.D. Cal. 1997) ..........................21-22

*Republic of Philippines v. Marcos*, 862 F.2d 1355 (9th Cir. 1988).........................................13

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ...............................................................................14

*Santiago v. Philadelphia*, 72 F.R.D. 619 (E.D. Pa. 1976)........................................................19

*Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113 (9th Cir. 2005) ...........................11-12, 17

*Schreiber v. NCAA*, 167 F.R.D. 169 (D. Kan. 1996)........................................................19 n.2

*Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643 (9th Cir. 1988) ..............................................13

*Smith v. Univ. of Wa. Law Sch.*, 2 F. Supp. 2d 1324 (W.D. Wash. 1998)................................22

*Snepp v. United States*, 444 U.S. 507 (1980) ..........................................................................15

*Soc'y for Individual Rights, Inc. v. Hampton*, 528 F.2d 905 (9th Cir. 1975) ..........................18

*Sweet v. Pfizer*, 232 F.R.D. 360 (C.D. Cal. 2005)..................................................................20

*Towers v. Titus*, 5 B.R. 786 (N.D. Cal. 1979)....................................................................10-11

*Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609 (9th Cir. 1989) .......................................14

*Wakefield v. Monsanto Co.*, 120 F.R.D. 112 (E.D. Mo. 1988)..........................................19 n.2

*Walker v. Pierce*, 665 F. Supp. 831 (N.D. Cal. 1987)..............................................................17

# Table of Authorities

**Federal Cases**                                                                                    **Page**

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) .................................................................14, 21

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994).........................................................17

*Weathers v. Peters Realty Corp.*, 499 F.2d 1197 (6th Cir. 1974)......................................19 n.2

**Federal Rules**                                                                                    **Page**

Fed. R. Civ. P. 23...................................................................................................................18

Fed. R. Civ. P. 65...................................................................................................................17

**California Cases**                                                                                  **Page**

*Bainbridge v. Stoner*, 16 Cal. 2d 423, 106 P.2d 423 (1940) ...........................................9

*Barquis v. Merchs. Collection A'ssn*, 7 Cal. 3d 94, 496 P.2d 817 (1972) ........................14

*Casey v. U.S. Bank National Ass'n*,
    127 Cal. App. 4th 1138, 26 Cal. Rptr. 3d 401 (Cal. Ct. App. 2005) .............................6

*Colgan v. Leatherman Tool Group, Inc.*,
    135 Cal. App. 4th 663, 38 Cal. Rptr. 3d 36 (Cal. Ct. App. 2006).............8-9, 11, 13, 14

*Comm. on Children's TV v. General Foods Corp.*, 35 Cal. 3d 197, 673 P.2d 660 (1983) ........8

*Consumer Advocates v. Echostar Satellite Corp.*,
    113 Cal. App. 4th 1351, 8 Cal. Rptr. 3d 22 (Cal. Ct. App. 2003) ........................8, 9, 12

*Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 999 P.2d 706 (2000).............12

*Estate of Sanders*, 40 Cal. 3d 607, 710 P.2d 232 (1985)..........................................................5

*GHK Assocs. v. Mayer Group*,
    224 Cal. App. 3d 856, 274 Cal. Rptr. 168 (Cal. Ct. App. 1990) ............................10, 12

*Heckmann v. Ahmanson*,
    168 Cal. App. 3d 119, 214 Cal. Rptr. 177 (Cal. Ct. App. 1985) ...................6, 9, 12, 13

*Herr v. Nestlé U.S.A., Inc.*,
    109 Cal. App. 4th 779, 135 Cal. Rptr. 2d 477 (Cal. Ct. App. 2003) ............................11

*Huong Que, Inc. v. Luu*,
    150 Cal. App. 4th 400, 58 Cal. Rptr. 3d 527 (Cal. Ct. App. 2007) ................................6

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 45 P.3d 243 (2002) ......................................8, 9

*L. Byron Culver & Assocs. v. Jaoudi Indus. & Trading Corp.*,
    1 Cal. App. 4th 300, 1 Cal. Rptr. 2d 680 (Cal. Ct. App. 1991)..................................5-6

*Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 271 Cal. Rptr. 146 (1990)........................6

**Table of Authorities**

**California Cases**                                                                                 **Page**

*Ornbaun v. Main*, 198 Cal. App. 2d 92, 17 Cal. Rptr. 631 (Cal. Ct. App. 1961) ...................10

*Outboard Marine Corp. v. Superior Court*,
    52 Cal. App. 3d 30, 124 Cal. Rptr. 852 (Cal. Ct. App. 1975) ........................................9

*Salahutdin v. Valley of Cal.*,
    24 Cal. App. 4th 555, 29 Cal. Rptr. 2d 463 (Cal. Ct. App. 1994) ...............................12

**California Statutes**                                                                              **Page**

Cal. Bus. & Prof. Code § 17203 (2007) ...................................................................1, 10

Cal. Bus. & Prof. Code § 17550.1 (2007) .................................................................4, 5

Cal. Bus. & Prof. Code § 17550.15 (2007) .........................................................4, 5, 6, 9-10

Cal. Bus. & Prof. Code § 17550.2 (2007) ...................................................................4

Cal. Civ. Code § 1780 (2007) ...............................................................................10

Cal. Civ. Code § 2224 (2007) ...............................................................................10

**Miscellaneous**                                                                                   **Page**

Restatement (First) of Restitution § 160 (1937).............................................................9

Restatement (Third) of Unfair Competition, § 2, cmt. a. (1995)............................................14

Manual for Complex Litigation § 21.24 (4th ed. 2004) ........................................................18

BA Credit Card Trust, Form 424B5, at S-4,
    http://edgar.sec.gov/Archives/edgar/data/838440/000119312506205403/d424b5.htm
    (October 5, 2006)........................................................................................16, 19

Carlson Companies, Inc., *Company Overview*, *at* http://www.carlson.com/overview/index.cfm
    (2007) ....................................................................................................16

U.S. Census Bureau, *California QuickFacts from the U.S. Census Bureau*, *at*
    http://quickfacts.census.gov/qfd/states/06000.html (May 7, 2007)...............................19

## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
## AND CLASS CERTIFICATION

Plaintiff John Lofton ("Lofton"), respectfully files this Motion for Preliminary Injunction and Class Certification under Federal Rule of Civil Procedure 65.

This case concerns a $45 "fuel-related" fee charged to Lofton when he obtained airline tickets under the WorldPoints Rewards Program offered by his credit card. The Defendants are Bank of America Corp. ("B of A"), one of the country's largest national banks, which issued Lofton's WorldPoints credit card, FIA Card Services, N.A. ("FIA"), B of A's subsidiary and the overall manager of the WorldPoints Rewards program, and Carlson Companies, Inc. ("CCI") and its subsidiaries – Carlson Travel Network Associates, Inc. ("CTNA") and Carlson Travel Group, Inc. ("CTG"), which appear to manage the travel-related aspects of the WorldPoints Rewards Program ("Travel Rewards").

Lofton's investigation cannot find any explanation for this fee other than wanton disregard for Defendants' fiduciary and contractual duties. Defendants either failed to disclose that one or more of them assessed the "fuel related" fee or that they did not obtain "the lowest fare available" to the general public for the tickets in question, as was contractually promised. Hence, Lofton petitions the Court to impose equitable remedies for an accounting and a constructive trust and to enjoin further unfair competition by Defendants. These proposed remedies are thoroughly supported by his claims for breach of fiduciary duty and under California's Consumer Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1782(a)) and Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17203).

## I.      Lofton's Factual Investigation Indicates a Breach of Fiduciary Duty

Lofton earns "WorldPoints" through the use of his WorldPoints credit card. (Lofton Decl. ¶ 3.) These WorldPoints can be redeemed for a variety of benefits, including credits toward airline tickets ("Travel Rewards"). (*Id.*) Under the WorldPoints' *Program Details*, WorldPoints credit card holders could redeem 25,000 WorldPoints for $400 credit towards a coach class ticket. (Credit card holders desiring first class or business class tickets could redeem more WorldPoints for correspondingly larger credits.)

### A. Defendants Charged Lofton a $45 "Fuel Related" Fee That Was *Not* Imposed By Continental Airlines

On October 22, 2007, Lofton purchased through the WorldPoints Program tickets for Continental Airline flights 416 and 2629 on December 14 and Continental Airline flights 2143 and 378 on December 16 (the "Tickets"). (*Id*. ¶¶ 6-8.) One or more of the Defendants charged Lofton's credit card $107.10 for the Tickets. (*Id*. ¶ 9.) Lofton received a statement from the WorldPoints program that indicated the $107.10 charge consisted of:

    a) $52.10 for an "overage amount," the portion of the ticket price which exceeded the $400 credit;

    b) $10 for a "security fee"; and

    c) $45 for a "fuel related" fee.

(*Id*.) Pursuant to the WorldPoint's *Program Details*, Lofton redeemed 25,000 WorldPoints and received a $400 credit towards the purchase price of the Tickets. (*Id*. ¶ 7.) Thus, the WorldPoints program's putative total price for Lofton's tickets was $507.10.

In fact, the Tickets were available to the general public for $462.10 – that is, without the "fuel related" charged to Lofton's credit card. (Preston Decl. ¶ 2.) Indeed, as of October 25, 2007, Continental Airlines' own website offered the Tickets for $462.10. (*Id*.) Likewise, on October 22, 2007 Orbitz.com offered the Tickets for $469.09, which price included Orbitz.com's service for providing airline tickets (which varied from $4.99 to $11.99). (Lofton Decl. ¶ 11.) Expedia.com offered the Tickets for $467.10, which included "a non-refundable $5.00 booking fee." (*Id*. ¶ 12.) Finally, Yahoo! Travel offered the Tickets for $469.10, which "include[d] a nonrefundable $7.00 service fee." (*Id*. ¶ 13.)

### B. Under the Terms of the WorldPoints' *Program Details*, Lofton Reasonably Expected to Receive Airline Tickets at their Actual Price Charged by Continental Airlines

The WorldPoints *Program Details* represent that a) the Travel Rewards program would purchase "the lowest fare available through the travel provider at the time of booking"; and b) that credit obtained from the redemption of WorldPoints would apply to "all taxes and destination fees [except] fuel related surcharges and/or additional security fees deemed necessary by the individual carrier." (Preston Decl. ¶ 3.)

Lofton concluded from these representations that a) the price for his Tickets would be at least as low as the lowest fare available to the general public, and b) that he would not be charged more than the Continental Airlines' total actual price for Tickets – i.e., that Defendants would not add their own transaction fees on the price of the Tickets. (Lofton Decl. ¶ 4.) Lofton maintained his WorldPoints credit card in reliance on his beliefs. (*Id*. ¶ 5.)

Lofton's tickets were available to the general public from Continental's own website without the "fuel-related" fee charged to Lofton's credit card. This leads to one of two conclusions: either 1) the $45 "fuel-related" fee was charged by (and was paid to) one or more of the Defendants, *rather than* Continental Airlines, or 2) Defendants failed to obtain the lowest fare available for the Tickets from Continental Airlines.

**C.     It Is Unclear Which Defendants Charged Lofton's Credit Card, Making an Order for an Accounting Still More Imperative**

Lofton has no way of knowing for sure which Defendant is most responsible for charging the "fuel related" against his credit card, although Lofton has collected evidence that points towards CTG, CTNA and/or CCI. (Because Lofton is not able, at this point, to sort out the particular roles or acts performed by these companies in this case, Lofton collectively refers to CTNA, CTG, and/or CCI as "Carlson" or the "Carlson Defendants.") Lofton's credit card statement contains a charge for $107.10 which was posted to his account on October 23, 2007 and reflects a October 22, 2007 transaction date. (Lofton Decl. ¶ 10.) The charges are designated "TRAVEL PLANS" and indicate an Idaho phone number (208-4295332). (*Id*.) The following automated voice recording is played to callers to the (208) 429-5332 number:

> Travel Plans and Trip Charges are names that may appear on your statement if you have used your credit card for travel reservations or for changes to travel reservations using credit card redemption points. If you have made or changed reservations within the last several months, please refer to the itinerary you received for an explanation of these charges. If you have any further questions, please visit our website, www.tripcharges.com, or continue to hold for our next available representative.

(Preston Decl. ¶ 4.) The website, www.tripcharges.com, indicates that it is operated by "Carlson Travel Group, Inc. and Subsidiaries." (*Id*. ¶ 5.) The tripcharges.com domain name appears to be owned by CCI. (*Id*. ¶ 6.) Further, the *Program Details* indicate that the travel-

related portion of the WorldPoints Rewards program is managed by "[a]n independent third party travel agency, registered to do business in California (Reg. No. 2036509-50.)" (*Id.* ¶ 3.) CTG is registered as a California Seller of Travel under the registration number 2036509. (*Id.* ¶ 7.) Lofton has no way of knowing for sure which of the Defendants charged him the $45 "fuel related" fee or, more importantly, where that fee was ultimately transferred.

### D.    One or More of the Defendants Owes Lofton a Fiduciary Duty With Respect to the "Fuel Related" Fee

Under California law, one or more of the Defendants is a fiduciary of Lofton with respect to any sums (including both the credit from redeemed Lofton's WorldPoints and charges made against his credit card) charged for the Tickets – including the $45 "fuel related" fee. As a matter of California law, any statutorily defined "seller of travel" owes Lofton "a fiduciary responsibility with respect to all sums received for" the Tickets. Cal. Bus. & Prof. Code § 17550.15(g) (2007).

As demonstrated above, CTG has registered with the state of California as a seller of travel. Moreover, the Defendants all meet California's broad definition of a "seller of travel" under Cal. Bus. & Prof. Code § 17550.1(a) through their participation in the WorldPoints Travel Rewards program. Each of the Defendants appears to have played some role in the provision of the Tickets and travel agency services to Lofton. B of A marketed, advertised, and/or offered Lofton a WorldPoints-branded credit card which offered various benefits. FIA managed the WorldPoints Program and selected, managed, and supervised the Carlson Defendants' operation of the Travel Rewards program for California WorldPoints credit card holders. The Carlson Defendants located and purchased the Tickets on Lofton's behalf, and operate the www.tripcharges.com website. The WorldPoints Travel Rewards program is a "partnership, corporation, joint venture, association, organization, group, or other entity" that solicits travel agency services and airline tickets (in exchange for WorldPoints), and each of the Defendants have "advertised" by making representations about the WorldPoints Travel Rewards program to Lofton and the other WorldPoints card holders. Cal. Bus. & Prof. Code § 17550.2 (2007). By advertising, selling, and arranging airline tickets through the WorldPoints Travel Rewards Program, each of the Defendants is a seller of travel. Cal. Bus. & Prof. Code § 17550.1(a) (2007).

1  **II.    Lofton Is Entitled to the Relief Sought in the Motion for Preliminary Injunction**

2          All evidence available to Lofton indicates that either one or more of the Defendants

3  (rather than Continental Airlines) charged the fee and concealed this charge by claiming the

4  fee was "fuel related" *or* that Defendants failed to obtain "the lowest fare available" to the

5  general public for the Tickets – i.e., Continental imposed a $45 fee on Lofton's fare that was

6  not charged to other purchasers of the same Tickets. As one or more of the Defendants are

7  Lofton's fiduciaries with respect to the "fuel related" fee, there is a *prima facie* case for a

8  breach of fiduciary duty claim and more than sufficient evidence for the equitable remedy of

9  an accounting. Further, the disparity between the Program Details and the actual operation of

10  the WorldPoints' Travel Rewards program gives rise to claims under the CLRA and the UCL.

11  In turn, California law supports each of the remedies sought in this Motion as relief on

12  Lofton's claims.

13          **A.    An Equitable Accounting Is an Established Preliminary Remedy for a Breach of Fiduciary Duty Claim**

14          There can be little question that at least CTG is Lofton's fiduciary under California law.

15  Further, there can be little question that either pocketing the "fuel related" fee, allowing the other

16  Defendants to pocket the "fuel related" fee, or simply failing to obtain the lowest publicly available

17  price for the Tickets constitutes a breach of fiduciary duty. At the very least, CTG and any other

18  Defendant found to be a fiduciary under Cal. Bus. & Prof. Code §§ 17550.1(a), 17550.15(g) had a

19  duty to disclose that the Continental did not collect the "fuel related" fee or that "the lowest fare

20  available through the travel provider at the time of booking" was $45 higher than the lowest fare

21  available to the general public. Defendants' fiduciary duties include making

22

23              full disclosure of all material facts within [their] knowledge relating to the transaction in question and any concealment of material facts [by these Defendants] is a fraud. . . . Where there is [such] a duty to disclose, the disclosure must be full and complete, and any material concealment or misrepresentation will amount to fraud sufficient to entitle the party injured thereby to an action.

24

25

26  *Estate of Sanders*, 40 Cal. 3d 607, 616, 710 P.2d 232, 237 (1985) (citations, punctuation omitted).

27  "An agent has a fiduciary duty to the principal to disclose all information in the agent's possession

28  relevant to the subject matter of the agency." *L. Byron Culver & Assocs. v. Jaoudi Indus. &*

*Trading Corp.*, 1 Cal. App. 4th 300, 304, 1 Cal. Rptr. 2d 680, 682 (Cal. Ct. App. 1991) (citing *Sierra Pac. Indus. v. Carter*, 104 Cal. App. 3d 579, 581-83, 163 Cal. Rptr. 764, 766 (Cal. Ct. App. 1980)). *See also Moore v. Regents of Univ. of Cal.*, 51 Cal. 3d 120, 129, 271 Cal. Rptr. 146, 150 (1990) (a fiduciary has "duty to disclose all information material to the patient's decision," citing, e.g., *Nelson v. Gaunt*, 125 Cal. App. 3d 623, 634, 178 Cal. Rptr. 167, 172 (Cal. Ct. App. 1981)).

To the extent that any Defendant is found not to be Lofton's fiduciary under Cal. Bus. & Prof. Code § 17550.15(g), Lofton's evidence establishes that these non-fiduciary Defendants are nonetheless jointly liable for an accounting because they aided and abetted the other Defendants' breach of fiduciary duty. B of A and FIA control the entry of charges against Lofton's credit card account and are at least complicit in placing the $107.10 charge on Lofton's account. Simple common sense dictates that B of A and FIA gave substantial assistance to CTG and the other Carlson Defendants in assessing the $45 "fuel related" fee, and must have known that such fee breached the Carlson Defendant's fiduciary duty to Plaintiff. Aiding and abetting liability in California requires only "actual knowledge, not specific intent." *Henry v. Lehman Commer. Paper, Inc.*, 471 F.3d 977, 993 (9th Cir. 2006). "California has adopted the common law rule" that "[l]iability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of a duty and gives substantial assistance or encouragement to the other to so act." *Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144, 26 Cal. Rptr. 3d 401, 405 (Cal. Ct. App. 2005) (quoted by *Henry*).

Even without *prima facie* evidence of a breach of fiduciary duty, the evidence presented to the Court is sufficient to support the equitable remedy of an accounting in a preliminary injunction. In California, equitable remedies for breach of fiduciary duty are available as a preliminary injunction. *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 400-19, 58 Cal. Rptr. 3d 527, 527-40 (Cal. Ct. App. 2007) (preliminary injunction to prohibit competition in breach of loyalty claim); *Heckmann v. Ahmanson*, 168 Cal. App. 3d 119, 135-38, 214 Cal. Rptr. 177, 188-90 (Cal. Ct. App. 1985) (granting constructive trust as preliminary injunction). An action for an accounting arises whenever a plaintiff establishes either a breach of a fiduciary duty or even questions the circumstances where a fiduciary has "come into possession of money or

other thing for the principal." *In re Niles*, 106 F.3d 1456, 1461-62 (9th Cir. 1997) (quoting Restatement (Second) of Agency, § 382 cmt. e (1958); *Batson v. Strehlow*, 68 Cal. 2d 662, 674, 441 P.2d 101, 109 (1968) ("When the principal questions the acts done by the agent in the course of the agency, the burden is cast upon the latter to prove that he acted with the utmost good faith toward the principal and that prior to the transaction he made a full disclosure of all the facts relating to the acts under attack")). "The obligation to render an accounting is triggered by proof that the plaintiff entrusted property to the defendant in a fiduciary relationship . . . Once the fiduciary relationship is established, the burden is on the defendant to show that he has performed his duties properly." *Id*. at 1461 n.4 (citation, punctuation omitted).

An accounting provides Lofton an important, salutory remedy for his claims: it obliges the fiduciary Defendants produce all their records which demonstrate the parties responsible for charging the "fuel related" fee and the ultimate recipient of that fee. An accounting requires CTG and other Defendants to produce all of their records which trace the "fuel related" fee's passage from Lofton to its last recipient:

> [T]he action for account render compels the fiduciary to explain the books under oath. . . . the fiduciary was under a duty to render an account that should show in detail the items expended and show when, to whom, and for what purposes the payments were made so the beneficiaries can make a reasonable test of the accuracy of the accounts.

*Id*. at 1461 n.4 (citations, punctuation omitted). Further, an order for an equitable accounting ensures that the fiduciary Defendants bear not only the bear of production, *but also the burden of proving their conduct was proper*. *Id*. at 1462 (an accounting "is more than a shifting of the burden of coming forward with evidence").

> Once the fiduciary relationship is established, the burden is on the defendant to show that he has performed his duties properly . . . The defendant thus could not escape liability simply by remaining silent or by testifying generally that funds were not misappropriated. . . . If [a fiduciary] does not [keep regular and correct accounts,] every presumption of fact is against him. He cannot impose upon his principal the obligation to prove what he has actually received. By failing to keep and submit accounts, he assumes the burden of repelling the presumption and disproving negligence and faithlessness.

*Id*. at 1461 n.4 & 1462 (citations, punctuation omitted). Ultimately, Lofton deserves to know

1    – and California law requires one or more of the Defendants to prove – where the "fuel

2    related" fee went.

3        **B.    The Misleading Terms of the Program Details Anchor Lofton's UCL and CLRA Claims**

4

5        Defendants' conduct is actionable under the UCL and CLRA for the same reason it is

6    actionable as a breach of fiduciary duty: it is misleading and likely to cause consumer

7    confusion (if not actually deceptive). The *Program Details'* representation that credit from

8    redeemed WorldPoints would be applied to "all taxes and destination fees [except] fuel related

9    surcharges and/or additional security fees deemed necessary by the individual carrier" created

10   the reasonable expectation that Lofton would not be charged more than the Continental

11   Airlines' total actual price for Tickets – i.e., that Defendants would not charge Lofton their

12   own fees. (Lofton Decl. ¶ 4.) When Lofton specifically inquired on this point, he was told that

13   "the fuel related fee was a charge passed on by the airline, and that WorldPoints did not apply

14   any kind of service charge to the transaction." (*Id.* ¶ 14). Likewise, the representation that the

15   Travel Rewards program would only purchase "the lowest fare available through the travel

16   provider at the time of booking" for coach-class tickets reasonably created the expectation that

17   the price of the Tickets would be at least as low as the lowest fare available to the general

18   public. (*Id.* ¶ 4.) Lofton's evidence establishes the imposition of the "fuel related" fee upset

19   one or the other of these expectations.

20       Lofton's UCL claim only requires "that members of the public are likely to be

21   deceived." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951, 45 P.3d 243, 250 (2002) (citations

22   omitted). "Allegations of actual deception, reasonable reliance, and damage are unnecessary"

23   for UCL claims. *Comm. on Children's TV v. General Foods Corp.*, 35 Cal. 3d 197, 211, 673

24   P.2d 660, 668 (1983). The CLRA and UCL share the same "consumer confusion" standard.

25   *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360, 8 Cal. Rptr.

26   3d 22, 29 (Cal. Ct. App. 2003) (cited by *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.

27   App. 4th 663, 680, 38 Cal. Rptr. 3d 36, 46 (Cal. Ct. App. 2006)). "Conduct that is 'likely to

28   mislead a reasonable consumer' thus violates the CLRA." *Colgan*, 135 Cal. App. 4th at 680,

38 Cal. Rptr. 3d at 46. Defendants cannot defend themselves by arguing that the representations in the Program Details were literally true, while ignoring the reasonable expectations they created. The UCL and CLRA prohibit misleading omissions of material facts, not just affirmative fraud. *Kasky*, 27 Cal. 4th at 951, 45 P.3d at 250 (UCL prohibits representations which "although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public"). "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable." *Consumer Advocates*, 113 Cal. App. 4th at 1362, 8 Cal. Rptr. 3d at 30. Thus, the Program Details were misleading in the absence of a disclosure that 1) Defendants could add their own fees on top of the base price of the Tickets or that 2) "the lowest fare available through the travel provider at the time of booking" was not necessarily as low as the lowest price available to the general public. *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 38, 124 Cal. Rptr. 852, 857 (Cal. Ct. App. 1975) (CLRA prohibits omission of material facts). *See also Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144-46 (N.D. Cal. 2005) (omitted disclosure of defects in non-metal manifolds could violate UCL, CLRA).

**C.    Imposition of a Constructive Trust Is Ancillary to Restitution Under Lofton's Breach of Fiduciary Duty, UCL, and CLRA Claims**

Lofton is entitled to a constructive trust on his breach of fiduciary duty claim. Imposition of a constructive trust is an established remedy for a breach of fiduciary duty. *Heckmann*, 168 Cal. App. 3d at 135-38, 214 Cal. Rptr. at 188-90. "The theory of a constructive trust was adopted by equity as a remedy to compel one to restore property to which he is not justly entitled, to another." *Bainbridge v. Stoner*, 16 Cal. 2d 423, 428, 106 P. 2d 423, 426 (1940). "Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises." Restatement (First) of Restitution § 160 (1937) (cited by *Bainbridge*, 16 Cal. 2d at 428-29, 106 P.2d at 426). The application of this remedy to this case is borne out and supported by Cal. Bus. & Prof. Code § 17550.15(h), which states:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> The following are deemed to be held in trust for passengers:
> (1) All sums received by the seller of travel for transportation or travel services whether or not required to be deposited in an actual trust account and regardless of whether any of these sums were required to be deposited or actually were deposited in a trust account.
> (2) All property with which any of the sums described in paragraph (1) has been commingled if any of these sums cannot be identified because of the commingling.

Cal. Bus. & Prof. Code § 17550.15(h) (2007).

Moreover, the UCL and CLRA provide Plaintiff with broad injunctive and restitutionary remedies for his claims. Cal. Civ. Code § 1780(a) (2007) (relief available under CLRA includes "order enjoining the methods, acts, or practices" violative of the CLRA, restitution, other relief); Cal. Bus. & Prof. Code 17203 (2007) (authority to enjoin persons engaged in unfair competition; restitution). California law provides for a constructive trust whenever a defendant "gains a thing by fraud . . . or other wrongful act . . . unless he has some other and better right thereto." Cal. Civ. Code § 2224 (2007). "The only conditions necessary to create a constructive trust are those stated" in California Civil Code sections 2223 and 2224. *GHK Assocs. v. Mayer Group*, 224 Cal. App. 3d 856, 878, 274 Cal. Rptr. 168, 182 (Cal. Ct. App. 1990). "Under section 2224 of the Civil Code, the courts have even gone so far as to hold that the theory behind the creation of [a constructive] trust extends to practically any case where there is a wrongful acquisition of property to which another is entitled." *Ornbaun v. Main*, 198 Cal. App. 2d 92, 99, 17 Cal. Rptr. 631, 634 (Cal. Ct. App. 1961) (citation, punctuation omitted). *See also GHK*, 224 Cal. App. 3d at 878, 274 Cal. Rptr. at 182 ("a constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled").

Likewise, the constructive trust provides separate and additional grounds for the equitable accounting beyond the existence and breach of a fiduciary duty: the accounting is incidental to Lofton's requested constructive trust. A "duty to account [is] imposed [on] a constructive trustee"; an accounting on an "otherwise legal claim" may also be required where it is "incidental to a demand for an injunction or other equitable relief." *Towers v. Titus*, 5 B.R. 786, 793 (N.D. Cal. 1979) (basing an accounting on a constructive trust).

An accounting, which involves a scrutiny of business records to calculate the

1

2

3

> amount of rents, profits and other payments captured by a wrongful grantee, is frequently a component of a constructive trust. It is essentially a form of disclosure, predicated upon the legal inability of a plaintiff to determine if, or how much, money is due him from another.

4

*Id*. The "firmest . . .ground" for an accounting is "the duty to account incumbent upon a

5

constructive trustee." *Id*. at 794.

6

### D.    UCL and CLRA Also Provide Plaintiff with Right to Injunction Against Further False Advertising and a Corrective Advertising Remedy

7

Courts have also recognized that the UCL and CLRA provide for the miscellaneous

8

injunctive relief sought under the Motion: the prohibition on further marketing of the

9

WorldPoints Travel Rewards without the mandatory corrective disclosures. The prohibitory

10

injunction sought by the Motion will vindicate the UCL and CLRA's legislative aims by

11

limiting the consumer confusion created by Defendants' misleading disclosures about the

12

benefits available under the WorldPoints Rewards program. *Cf. Herr v. Nestlé U.S.A., Inc.*,

13

109 Cal. App. 4th 779, 135 Cal. Rptr. 2d 477 (Cal. Ct. App. 2003) (injunction under UCL

14

prohibiting future age discrimination by defendant). Likewise, the UCL and CLRA authorize

15

the mandatory corrective disclosures sought in the Motion, because they redress consumer

16

confusion. *Colgan*, 135 Cal. App. 4th at 672-73, 677-78, 38 Cal. Rptr. 3d at 41, 44-45

17

(affirming injunction requiring corrective advertising).

18

### III.    The Applicable Law Supports Plaintiff's Motion for Preliminary Injunction

19

The Ninth Circuit has provided two tests for preliminary injunctive relief under

20

Federal Rule 65. The traditional criteria are 1) likelihood of success on the merits, 2) risk of

21

irreparable injury without a preliminary injunction, 3) a balance of hardships favoring the

22

movant, and 4) advancement of the public interest. *Save Our Sonoran, Inc. v. Flowers*, 408 F.

23

3d 1113, 1120 (9th Cir. 2005). Alternatively, the movant may demonstrate "*either* a

24

combination of probable success on the merits and the possibility of irreparable injury or that

25

serious questions are raised and the balance of hardships tips sharply in his favor." *Id*.

26

(emphasis in original, citations omitted). "These two formulations represent two points on a

27

sliding scale in which the required degree of irreparable harm increases as the probability of

28

success decreases. They are not separate tests but rather outer reaches of a single continuum."

*Id.* This brief establishes that Lofton is likely to succeed on his claims, that the applicable law presumes irreparable harm for his proposed remedies, and that the balance of harm and the public interest favors the relief requested in the Motion.

### A.    Lofton Is Likely to Prevail on His Claims

Lofton's evidence establishes a *prima facie* case of liability for breach of fiduciary duty and for violation of the UCL and CLRA. Simply put, no reasonable consumer reading the Program Details would expect to pay an additional $45 "fuel related" fee which was not charged to other Continental passengers for the same flights. Either the Defendants are pocketing this fee, or they are not buying the lowest available fare. Defendants cannot establish a defense to liability by asserting they were not intentionally misleading Lofton. Liability on a breach of fiduciary duty claim exists even "for constructive fraud even though [the fiduciary's] conduct is not actually fraudulent." *Salahutdin v. Valley of Cal.*, 24 Cal. App. 4th 555, 562, 29 Cal. Rptr. 2d 463, 466 (Cal. Ct. App. 1994). "[A] careless misstatement may constitute constructive fraud even though there is no fraudulent intent." *Id.* Likewise, "[t]he UCL imposes strict liability [on] conduct that constitutes an unfair business practice." *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 181, 999 P.2d 706, 717 (2000). *Cf.* Cal. Civ. Code § 1770 (2007) (intent is not an element of most CLRA violations); *Consumer Advocates*, 113 Cal. App. 4th at 1360, 8 Cal. Rptr. 3d at 29 (CLRA and UCL share the same standard of liability).

### B.    Irreparable Harm Is Presumed When a Right to an Equitable Remedy Is Demonstrated

California law presumes irreparable harm where Lofton can demonstrate a claim to an equitable remedy. "In California, as in most jurisdictions, an action in equity to establish a constructive trust does not depend on the absence of an adequate legal remedy. . . . A constructive trust is the usual theory upon which a plaintiff recovers wrongfully acquired assets." *Heckmann*, 168 Cal. App. 3d at 134, 214 Cal. Rptr. at 187 (affirming motion for preliminary injunction imposing constructive trust, citations, punctuation omitted). *See also GHK*, 224 Cal. App. 3d at 878, 274 Cal. Rptr. at 182 (rejecting argument that irreparable harm

was required for constructive trust, citing *Heckman*, 168 Cal. App. 3d at 134, 214 Cal. Rptr. at 187). *Cf. Republic of Philippines v. Marcos*, 862 F.2d 1355, 1361-64 (9th Cir. 1988) (affirming motion for preliminary injunction in support and "in order to preserve the possibility of equitable remedies," including an accounting and constructive trust). California law presumes irreparable harm where a constructive trust is otherwise available because

> [m]oney damages are . . . inadequate if, by that term, it is meant plaintiff is entitled to a judgment equal to the amount of money defendant wrongfully acquired plus the legal rate of interest. . . . The purpose of the constructive trust remedy is to prevent unjust enrichment and to prevent a person from taking advantage of his own wrong. . . . Thus, under a constructive trust upon money, the plaintiff is entitled to trace the fund to its ultimate product or profit. . . . By the time plaintiff obtains a final judgment, the original fund may have grown far greater than the legal rate of interest would recognize. To allow the defendant to pocket the difference would reward the defendant for his wrongdoing.

*Heckmann*, 168 Cal. App. 3d at 135, 214 Cal. Rptr. at 188 (citations, punctuation omitted). This same logic plainly supports an equitable accounting, which would naturally go hand in hand with demonstrating that a defendant had complied with its duties as a constructive trustee. Federal jurisprudence may or may not recognize a presumption of irreparable harm supporting an accounting and a constructive trust. This is irrelevant where *Heckmann* applies and controls Plaintiff's rights to a preliminary injunction where Plaintiff's claims arise under California law and there is no conflict between *Heckmann* and Rule 65. *Cf. Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988) (California law, not federal law, controls movant's right to preliminary injunction in diversity case in federal court).

**C.    Irreparable Harm Is Presumed Where Defendants' Misleading Representations Cause Consumer Confusion**

Lofton's declarations adequately establish the consumer confusion caused by Defendants' implementation of the *Program Details*. Lofton's CLRA and UCL claims do not require proof of consumer confusion by extrinsic evidence, such as expert testimony or consumer surveys, which might be necessary in Lanham Act cases. *Colgan*, 135 Cal. App. 4th at 681-82, 38 Cal. Rptr. 3d at 47-48. Rather, he can demonstrate an actionable likelihood of consumer confusion through his declarations – which show the disparity between Defendants' conduct and the reasonable expectation that Defendants would buy the lowest publicly

1   available fare for the Tickets and would not impose any fees of their own. *Cf. id.*, 135 Cal.

2   App. 4th at 682, 38 Cal. Rptr. 3d at 48-49.

3        Likelihood of consumer confusion is the classic factor leading to a presumption of

4   irreparable harm. "[O]nce the plaintiff establishes a likelihood of confusion, it is ordinarily

5   presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."

6   *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 n.3 (9th Cir. 1989).

7
            Unless prospective purchasers can accurately compare the products offered by
8           competing sellers, the free enterprise system cannot operate efficiently. The use
            of deceptive representations in the marketing of goods and services impairs the
9           ability of purchasers to choose intelligently among competing products. As
            confidence in the truth of advertising diminishes, prospective purchasers may
10          be forced to expend additional resources in examining and sampling competing
            products.
11
    Restatement (Third) of Unfair Competition, § 2, cmt. a. (1995). Defendants' continued
12
    misrepresentations in the *Program Details* about the rights and benefits offered to
13
    WorldPoints card holders under the Travel Rewards program threaten further erosion of Class
14
    members' ability and inclination to trust commercial marketing, and to thereby avoid
15
    inefficient examinations and sampling of competing products. This erosion is not susceptible
16
    to traditional damage calculations. Where "[t]here is no way to calculate the value of" of the
17
    movant's damages, a movant for preliminary injunction has no adequate legal remedies and
18
    irreparable harm exists. *Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998). "[W]here the
19
    threat of injury is imminent and the measure of that injury defies calculation, damages will not
20
    provide a remedy at law." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 423 (9th Cir. 1991). *See*
21
    *also Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603
22
    (9th Cir. 1991) (where "damages would be difficult to valuate," they "constitute[] possible
23
    irreparable harm").
24
         The presumption of irreparable harm consumer confusion is not limited to competitors.
25
    The California Supreme Court has specifically rejected arguments limiting the UCL's
26
    protections to competitors. *Barquis v. Merchs. Collection A'ssn*, 7 Cal. 3d 94, 108-13, 496 P.
27
    2d 817, 827-30 (1972) (Legislature "extended to the entire consuming public the protection
28
    once afforded only to business competitors" by enacting UCL). The CLRA's application is

expressly limited to consumers. *See* Cal. Civ. Code § 1780(a) (2007) (limiting right of action to consumers). *See also Bonito Boats v. Thunder Craft Boats*, 489 U.S. 141, 157 (1989) (goal of unfair competition law is "the protection of consumers, not the protection of producers"). Federal courts have already applied consumer confusion as an equitable factor as a consideration in favor of granting a preliminary injunction outside of the traditional competitor-plaintiff context. *Earth Island Inst. v. Evans*, 256 F. Supp. 2d 1064, 1077 (N.D. Cal. 2003) (potential consumer confusion supported injunction prohibiting Secretary of Commerce from enacting regulations that allowed tuna caught using purse seine nets to be labeled "dolphin safe").

**D.**    **The Balance of Hardships and Public Interest Favor Granting the Motion, Because Plaintiff's Proposed Remedies are Carefully Tailored to Protect his Interests and the Class's Interests**

The balance of hardships between Defendants, and Lofton, the Class Members, and the public interest tip sharply in favor of the injunction because the injunction is neatly tailored to protect Lofton's interests, and imposing minimal hardships on Defendants.

Lofton's right to the constructive trust and the accounting sought in the Motion are thoroughly established in California's common law, and Plaintiff would be prejudiced by the denial of those rights. A constructive trust is an inherently balanced remedy which limits the harm visited on the trustee: it "deals fairly with both parties by conforming relief to the dimensions of the wrong." *Snepp v. United States*, 444 U.S. 507, 515 (1980).

> [T]he trust remedy simply requires [the trustee] to disgorge the benefits of [its statutory violations]. Since the remedy is swift and sure, it is tailored to deter those who would [violate the UCL and the CLRA.] And since the remedy reaches only funds attributable to the [statutory violations], it cannot saddle [the trustee] with exemplary damages out of all proportion to [its] gain.

*Id.* at 515-16 (constructive trust "protects" both parties). Here, too, the constructive trust sought by Plaintiff is a balanced remedy, tailored to address Defendants' misconduct. The proposed constructive trust requires only that sequester the constructive trust's *corpus*, and does not require significant out-of-pocket expenses; indeed, if the dispute is resolved in its favor, Defendant would incurs no expense and may simply restore the constructive trust's *corpus* to itself.

1

2

Likewise, the Motion is narrowly tailored to counteracting the damage to consumers'

confidence in commercial marketing threatened by the misleading representations in the

3

*Program Details*. The prohibitory injunction does not stop Defendants from continuing to

4

market or offer the WorldPoints Travel Rewards – it only requires that if Defendants do so,

5

they must also disclose the fact that additional "fuel related" fees may be imposed or that

6

Defendants may not be obtain to obtain the lowest airfare available to the public. Further, the

7

corrective advertising sought in the Motion mandates that Defendants take minimal steps to

8

undo the consumer confusion caused by its misleading marketing.  These remedies would

9

have the salutory effect of protecting and restoring consumer confidence in the representations

10

of sellers in the marketplace, and thereby benefits both Plaintiff, Class members, and the

11

public at large – as well as, ultimately, Defendants themselves. The public interest favors the

12

injunction because it protects against the consumer confusion. *Evans*, 256 F. Supp. 2d at

13

1077.

14

The only out-of-pocket expenses Defendants can be expected to incur under the

15

Motion relate to performing the accounting and distributing the corrective disclosures. These

16

costs should be put into perspective of Defendants' massive commercial enterprises. Public

17

security filings indicate that FIA services at least $78.2 billion worth of credit card

18

receivables. BA Credit Card Trust, Form 424B5, at S-4,

19

http://edgar.sec.gov/Archives/edgar/data/838440/000119312506205403/d424b5.htm (October

20

5, 2006). Likewise, CCI represents itself as "one of the largest privately held corporations in

21

the world . . . employ[ing] about 190,000 people in nearly 150 countries. Carlson's 2006

22

systemwide sales, including franchised operations, totaled $37.1 billion." CCI, *Company*

23

*Overview*, *at* http://www.carlson.com/overview/index.cfm (2007).

24

Further, Defendants' operation of the WorldPoints Travel Rewards program clearly

25

violated the fiduciary duties owed to Lofton and his rights under the UCL and CLRA, and any

26

Defendants might incur by remedying their misconduct cannot be weighed against the

27

preliminary injunction sought in this Motion. *See eBay, Inc. v. Bidder's Edge*, 100 F. Supp. 2d

28

1058, 1069 (N.D. Cal. 2000) (it is "reversible error for a district court to even consider"

impact of injunction on defendant's business practices where business practices were in clear violation of plaintiff's rights).

### E.        The Court Should Impose No Bond or a Minimal Bond

Federal Rule of Civil Procedure 65(c) requires that a movant for a preliminary injunction give "security . . . in such sum as the court deems proper" before any preliminary injunction issues. Fed. R. Civ. P. 65(c). However, Rule 65(c) "invest[s] the district court with discretion as to the amount of security required, if any." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (citing three other circuit court cases); *Justin v. City of Los Angeles*, No. 00-12352, 2000 U.S. Dist. LEXIS 17881, at *6-7 (C.D. Cal. Dec. 5, 2000) (bonds under Rule 65(c) have "been dispensed with entirely where there was no proof of likelihood of harm to the party enjoined"). Consequently, the Ninth Circuit boasts "long-standing precedent that requiring nominal bonds is perfectly proper in public interest litigation." *Save Our Sonoran*, 408 F.3d at 1126. *See also Walker v. Pierce*, 665 F. Supp. 831, 843-44 (N.D. Cal. 1987) (waiving bond requirement for class representative). Lofton's status as class representatives, his inability to absorb the expenses of a massive commercial enterprises like Defendants, and the public interest features of the relief sought all weigh in favor of a minimal bond, or no bond at all. (*Cf.* Lofton Decl. ¶ 15) (Plaintiff cannot afford a bond over $5,000) *with Barahona-Gomez*, 167 F.3d at 1237 (affirming district court's discretion to require only nominal bond of $1,000); *Justin*, 2000 U.S. Dist. LEXIS 17881, at *38 (where injunction on constitutional claim "pose[d] no risk of pecuniary injury . . . from being restrained and enjoined," class representative exempted from bond)).

### IV.      Plaintiff Seeks Class Certification Under Rule 23(b)(2) and Rule 23(c)(4) to the Extent the Court Deems Class Certification Necessary to Obtain the Preliminary Injunction

Plaintiff may not need class certification to obtain the preliminary injunction sought. Ample authority supports the entry of preliminary injunctions to protect a class prior to class certification. *See Washington v. Reno*, 35 F.3d 1093, 1104 (6th Cir. 1994) (class certification sometimes unnecessary for preliminary injunctions that provide class relief).[1] To the extent

---

[1] *See also Howe v. Varity Corp.*, No. 88-1598, 1989 U.S. Dist. LEXIS 17521, at *52-53 (S.D.

that the requested injunction exceeds the Court's equitable powers as to Plaintiff's individual claims, he seeks class certification for the narrow purpose of effectuating the preliminary injunction. *Cf.* Fed. R. Civ. P. 23(c)(4) (an action may be maintained as a class action "with respect to particular issues"). The instant Motion seeks certification *exclusively* for the purpose of obtaining the injunctive relief sought therein: Lofton has not taken the discovery that typically precedes class certification, and does not wish to try to cut corners on the class certification procedure. When due discovery is taken, Plaintiff will file another motion to certify the Class's claims for permanent relief under Rule 23(b)(3). *Cf.* Fed. R. Civ. P. 23(c)(1)(4) (order on class certification can be "altered or amended before final judgment").

Rule 23(c)(4) provides more than enough flexibility to certify classes "with respect to particular issues" and not other issues. "It is within the discretion of the trial judge, under Rule 23(c)(4), to limit the issues in a class action to those parts of a lawsuit which lend themselves to convenient use of the class action motif." *Soc'y for Individual Rights, Inc. v. Hampton*, 528 F.2d 905, 906 (9th Cir. 1975) (quotation marks, citation omitted, certification of class only for prospective injunctive relief was proper). For instance, "[a] court may certify a Rule 23(b)(3) class for certain claims, allowing class members to opt out, while creating a non-opt-out Rule 23(b)(1) or (b)(2) class for other claims." Manual for Complex Litigation § 21.24 (4th ed. 2004).

> [Rule 23(c)(4)] is particularly helpful in enabling courts to restructure complex cases to meet the . . . requirements for maintaining a class action. . . . [Rule 23(c)(4)] is designed to give the court maximum flexibility in handling class actions, its proper utilization will allow a Rule 23 action to be adjudicated that otherwise might have had to be dismissed or reduced to a nonrepresentative proceeding because it appears to be unmanageable.

*In re Activision Sec. Litig.*, 621 F. Supp. 415, 438 (N.D. Cal. 1985) (certification on single issue related to liability). *See also In re Hanford Nuclear Reservation Litig.*, 292 F.3d 1124, 1139 (9th Cir. 2002) (remanding with recommendation that the trial court consider "[class] certification only for questions of generic causation common to plaintiffs who suffer from the same or a materially similar disease"); *Cent. Wesleyan College v. W.R. Grace & Co.*, 6 F.3d

Iowa July 14, 1989), *rev'd on other grounds*, 896 F.2d 1107 (8th Cir. 1990) (listing cases); *Bowman v. Nat'l Football League*, 402 F. Supp. 754, 755 (D. Minn. 1975).

177, 184-87 (4th Cir. 1993) (certification on certain issues related to asbestos liability); *Santiago v. Philadelphia*, 72 F.R.D. 619, 629 (E.D. Pa. 1976) (deferring certification, but stating "it is possible that a 23(b)(3) class action might be pursued for certain issues" if class could not be certified under Rule 23(b)(2)). Indeed, many courts have already granted the limited certification sought here: certification of a class for injunctive relief now under Rule 23(b)(2), while deferring the certification of a damages class under Rule 23(b)(3).[2]

### A.    Members of the Class Are So Numerous That Joinder Is Impractical

Members of the proposed Class are numerous enough to justify certification under Rule 23(a)(1). Public securities filings documents indicate FIA services at least $78.2 billion worth of credit card receivables with an average principal balance of $1,716 – or around 46.2 million credit card holders. BA Credit Card Trust, Form 424B5, at S-4. The U.S. Census Bureau estimates California contained more than 12% of the U.S. population in 2006. *See* U.S. Census Bureau, *California QuickFacts from the U.S. Census Bureau*, *at* http://quickfacts.census.gov/qfd/states/06000.html (May 7, 2007). Assuming that WorldPoint card holders are distributed evenly across the US population, there are approximately 5.5 million WorldPoint card holders residing in California. If even five percent of this population of potential Class members were wrongfully charged "fuel-related" fees by the Defendants,

---

[2] *Fraser v. Major League Soccer, LLC*, 180 F.R.D. 178, 182 (D. Mass. 1998) (certification of only claims for injunctive and declaratory relief is "an appropriate limitation"); *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 326 n. 17 (D. Mass. 1997); *Schreiber v. NCAA*, 167 F.R.D. 169, 176-77 (D. Kan. 1996) (where plaintiffs did not have sufficient evidence to support certification under Rule 23(b)(3) because of defendants failure to comply with discovery deadlines, class certification nonetheless appropriate for injunctive relief only under Rule 23(b)(2)), *amended by Law v. NCAA*, No. 94-205, 1998 U.S. Dist. LEXIS 6608 (D. Kan. Apr. 17, 1998) (class certification under 23(b)(3) ultimately granted, motion to decertify denied); *Morgan v. UPS of Am.*, 169 F.R.D. 349, 358 (E.D. Mo. 1996) (certification under Rule 23(b)(2) only on liability and injunctive relief, certification for damages remedy under Rule 23(b)(3) deferred until liability established); *Wakefield v. Monsanto Co.*, 120 F.R.D. 112, 117-18 (E.D. Mo. 1988) ("recommended procedure" in employment cases is to certify a class on liability issues and injunctive relief, and if liability is found, "to certify the damage phase as a Rule 23(b)(3) class action"). *See also Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1200-01 (6th Cir. 1974) ("even if a plaintiff may be unable to state a sub-class for monetary damages with the proper specificity, it may be possible to specify a class for injunctive relief," citing *Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972)); *Cason v. Nissan Motor Acceptance Corp.*, 212 F.R.D. 518, 520-23 (M.D. Tenn. 2002) (denying class certification under Rule 23(b)(2) for disgorgement remedy, but granting certification on purely injunctive and declaratory relief).

there would still over a quarter million Class members. Lofton has presented sufficient evidence for the Court to infer numerosity. *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n.5 (9th Cir. 1977) (with respect to numerosity determinations "a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings"); *Lynch v. Rank*, 604 F. Supp. 30, 36 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984) ("a court may draw a reasonable inference of class size from the facts before it"). *Cf. L.H. v. Schwarzenegger*, No. 06-2042, 2007 U.S. Dist. LEXIS 18728, at *28-29 (E.D. Cal. Feb. 28, 2007) (class of learning disabled parolees sufficiently numerous, where population of parolees was 4,000, a DOJ study indicated that 50% of parolees were learning disabled, and 25% percent of parolees "registered with Special Education"); *Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986), *rev'd on other grounds sub nom., Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305 (1985) (class of disability claimants drawn from population of 233,000 veterans exposed to radiation was numerous, despite "no way to determine the number of future claimants" and "long latency period of many radiation-related diseases").

Lofton does not have to prove numerosity with absolute certainty, but only needs to present "sufficient material to allow [the Court to make an] informed judgment" that the Class is sufficiently "numerous that joinder of all members is impracticable" under Rule 23(a)(1). *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir. 1975). Lofton does not need "to state the exact number of potential class members, nor is a specific number of class members required for numerosity. . . . A court may make common sense assumptions to support a finding that joinder would be impracticable." *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005) (citation, quotation omitted). *See also Sweet v. Pfizer*, 232 F.R.D. 360, 366 (C.D. Cal. 2005) ("where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied") (citation, quotation omitted); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004) (same). This is especially true in light of Rule 23(a)'s minimal requirements for numerosity. *See Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other*

1

2    *grounds*, 459 U.S. 810 (1982) (classes with 39, 64, and 71 members sufficiently numerous).

3    **B.    The General Application of the "Fuel Related" Fee to Plaintiff and the
         Other Members of the Class Establishes Commonality, Typicality, and
         Class Cohesion**

4

5    The commonality and the typicality elements of Rule 23(a), as well as the common

6    policy requirement of Rule 23(b)(2), are satisfied by the generally applicability of the

7    Defendants' practice of assessing "fuel related" fees on airline tickets which were not assessed

8    by the airlines issuing the tickets. Each of the Defendants participated in the WorldPoints

9    Program in a manner generally applicable to the entire Class, subject to common

10   representations regarding the price of airline tickets purchased through the WorldPoints

11   Program.

12   "Although common issues must predominate for class certification under Rule 23(b)

13   (3), no such requirement exists under 23(b)(2)." *Walters*, 145 F.3d at 1047. Under Rule 23(b)

14   (2), it is sufficient that there is "a pattern or practice that is generally applicable to the class as

15   a whole. Even if some class members have not been injured by the challenged practice, a class

16   may nevertheless be appropriate." *Id*. A class can be certified under Rule 23(b)(2) where it is

17   "composed of those who have not yet been injured by the allegedly defective policies, but that

18   are or will in the future be exposed to a risk of harm as a result of the policies," provided the

19   class definition provides "definite boundar[ies]" between class members and non-class

20   members. *Caroline C. v. Johnson*, 174 F.R.D. 452, 459-61 (D. Neb. 1996). *See also Barnes v.

21   Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) (class claims under Rule 23(b)(2) "must

22   be cohesive," cited by *Sweet*, 232 F.R.D. at 374 ("a class under Rule 23(b)(2) must not be

23   overrun with individual issues")).

24   Commonality exists where there are "shared legal issues with divergent factual

25   predicates" or "a common core of salient facts coupled with disparate legal remedies within

26   the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). *See also Blackie*,

27   524 F.2d at 904 (commonality only requires "a common issue of law or fact"); *O'Connor v.

28   Boeing North Am., Inc.*, 180 F.R.D. 359, 370 (C.D. Cal. 1997) (sufficient commonality for

     class certification where relief "turn[s] on questions of law applicable in the same manner to

each member of the class"). This does not require class members to be identical and interchangeable: it tolerates "divergent factual predicates" where there are "shared legal issues," as well as "a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019.

Typicality and commonality share many "underlying issue[s]." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001); *Smith v. Univ. of Wa. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998) ("Typicality turns on the defendant's actions toward the plaintiff class, not particularized defenses against individual class members."). Under Rule 23(a)(3)'s "permissive standards," Plaintiff is typical of his Class because his claims are "reasonably co-extensive with those of absent class members; [the claims] need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Rule 23(a)(3) only requires "that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong*, 275 F.3d at 869.[3]

Certification of the Class is appropriate because each member of the Class (and each Plaintiff) was potentially affected by the billing/fee assessment practices that this Motion seeks to address.

**C.    Class Representatives And Their Counsel Are Adequate to Represent the Class**

Lastly, Rule 23(a)(4) requires that Plaintiff and his counsel fairly and adequately protect the class's interests. The adequacy test has two elements: (1) are there conflicts between the Class representatives or their counsel and the other Class members, and (2) will the Class representatives and their counsel vigorously prosecute the class action? *See Hanlon*,

---

[3] Indeed, typicality under Rule 23(a)(3) lends class representatives enough flexibility to even borrow absent class members' standing. *See Gratz v. Bollinger*, 539 U.S. 244, 262-68 (2003) (class representative denied undergraduate admission as freshman could represent class of applicants denied undergraduate admission as transfers; use of race in transfer admissions [did] not "implicate a significantly different set of concerns" than use of race in freshman admissions); *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2003 U.S. Dist. LEXIS 11972, at *23 (S.D.N.Y. July 16, 2003) (analyzing *Gratz* and concluding that typicality requirement in Rule 23(a)(3) sufficiently flexible that class representation with section 12 Securities Act claim could represent class of section 11 claimants, citing 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 2:9 (4th ed. 2002))); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 283 (S.D.N.Y. 2003) (similar).

150 F.3d at 1020. *See also Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003) (adequacy "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive"). Plaintiff's counsel are well qualified and highly experienced in litigating consumer fraud actions. (Preston Decl. ¶ 8.) Counsel will advance the costs of litigation and will represent the Class on a contingent fee basis, and will provide representation to the Class adequate pursuant to Rule 23(a)(4). Likewise, no potential conflicts exist here: Lofton shares the precise same claims as the Class, and has an acute interest in the issuance of the preliminary injunction. "[C]ourts have generally declined to consider conflicts . . . sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." *Blackie*, 524 F.2d at 909. The burden is on the party opposing certification to show that the named plaintiff will be an inadequate representative. *In re Data Access Systems Sec. Litig.*, 103 F.R.D. 130, 140 (D.N.J. 1984).

**V.     Conclusion**

Plaintiff is entitled to the preliminary injunction sought in the attached Motion to protect their rights under California law. Further the injunction is required to ameliorate the harm to consumer confidence in commercial representations caused by Defendants' deceptive billing/fee assessment practices. The benefits of the relief sought will greatly outweigh any potential harms to Defendants, so the Court should grant the relief requested.

1  Dated: December 6, 2007

2                                        By: s/Alan Himmelfarb

3                                        Alan Himmelfarb (Cal. Bar. No. 90480)
                                         KAMBEREDELSON LLC
4                                        2757 Leonis Blvd.
                                         Los Angeles, CA 90058
5                                        (323) 585-8696
                                         ahimmelfarb@kamberedelson.com
6
                                         Jay Edelson
7                                        Ethan Preston
                                         KAMBEREDELSON LLC
8                                        53 West Jackson Ave., Suite 1530
                                         Chicago, IL 60604
9                                        312-589-6370
                                         jedelson@kamberedelson.com
10                                       epreston@kamberedelson.com

11                                       *Attorneys for John Lofton*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

Pursuant to 28 U.S.C.§ 1746, I hereby certify that a copy of the foregoing Motion for Preliminary Injunction and accompanying supporting documents was this date served upon the parties below Fed. R. Civ. P. 5(b) by causing a copy of the same to be placed in the United States Mail, postage prepaid, and sent to their last known address as follows:

FIA Card Services, National Association
1100 North King Street
Wilmington, Delaware 19801

Carlson Companies, Inc.
12755 State Highway 55
Minneapolis, Minnesota 55441

Bank of America Corp.
Bank of America Corporate Center
100 North Tryon Street
Charlotte, North Carolina 28255

Carlson Travel Network Associates, Inc.
701 Carlson Parkway
Minnetonka, Minnesota 55305

Carlson Travel Group, Inc.
701 Carlson Parkway
Minnetonka, Minnesota 55305

Date:          December 6, 2007

By: s/Alan Himmelfarb
     ALAN HIMMELFARB

Certificate of Service                                              No. 07-05892 (EDL)