1  Martin R. Lueck (MN Bar No.155548)
   Emmett J. McMahon (Admitted *pro hac vice*)
2  **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
   2800 LaSalle Plaza
3  800 LaSalle Avenue
   Minneapolis, MN 55402
4  Telephone:     612-349-8500
   Facsimile:      612-339-4181
5  E-mail:         mrlueck@rkmc.com
                   ejmcmahon@rkmc.com
6
   Elizabeth D. Le (CA Bar No. 216182)
7  **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
   2049 Century Park East, Suite 3400
8  Los Angeles, CA  90067-3208
   Telephone:     310-552-0130
9  Facsimile:      310-229-5800
   E-mail:         edle@rkmc.com
10
   Attorneys for Defendant
11 CARLSON COMPANIES, INC.

12

13                  UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                   SAN FRANCISCO DIVISION

16

17 JOHN LOFTON, an individual, on his own        Case No.  CV 07-05892 SI
   behalf and on behalf of all others similarly
18 situated,                                      [Assigned to the Hon. Susan Illston]

19              Plaintiff,                        **NOTICE OF MOTION AND MOTION OF
                                                  DEFENDANT CARLSON COMPANIES
20 v.                                             INC. TO DISMISS CLASS ACTION
                                                  COMPLAINT FOR LACK OF PERSONAL
21 BANK OF AMERICA CORPORATION,                   JURISDICTION;  MEMORANDUM OF
   FIA CARD SERVICES, N.A., a national            POINTS AND AUTHORITIES**
22 banking association, CARLSON
   COMPANIES, INC., a Minnesota                   **[Fed. R. Civ. Proc. 12(b)(2)]**
23 corporation, CARLSON TRAVEL
   NETWORK ASSOCIATES, INC., a                    Date:        March 28, 2008
24 Minnesota corporation, and CARLSON             Time:        9:00 a.m.
   TRAVEL GROUP, INC., a California               Crtrm:       10
25 corporation, and DOES 1 to 100,
                                                  [Filed Concurrently With:  (1) Declaration of
26              Defendants.                       Wanda K. Cahill; (2) Declaration of Scott
                                                  Grinde; (3) Appendix of Non-Federal
27                                                Authorities; and (4) Proposed Order]

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................................................... 1

II.  FACTUAL BACKGROUND ............................................................................................. 2

    A.   Plaintiff's Class Action Claims .............................................................................. 2

    B.   CCI Is Not Involved In Any Travel Transactions Under the WorldPoints
        Travel Rewards Program And Does No Business in California. ........................... 3

        1.   CCI has Never Directed, Managed or Handled any Travel
             Arrangements on behalf of WorldPoints Card Holders ............................. 3

        2.   CCI has no Corporate Presence In California ............................................. 4

        3.   CCI, CTNA AND CTG are Separate and Distinct Companies ................. 5

III. THIS ACTION SHOULD BE DISMISSED BECAUSE THIS COURT DOES
    NOT HAVE PERSONAL JURISDICTION OVER CCI ................................................. 5

    A.   CCI Is Not Subject To General Jurisdiction In California Because It Does
        Not Have Substantial, Continuous Or Systematic Contacts With The State ......... 6

    B.   This Court Does Not Have Personal Jurisdiction Over CCI Because Any
        Alleged Contacts of CTG Or CTNA With The State of California Cannot
        Be Attributed To CCI ............................................................................................ 8

        1.   Plaintiff has not Pled that CCI, CTG or CTNA are Alter Egos of
             One Another .................................................................................................. 9

        2.   Plaintiff has not Pled a Prima Facie Case that Defendants CTG or
             CTNA are Agents of CCI ........................................................................... 11

    C.   This Court Does Not Have Limited Jurisdiction Over CCI Because CCI
        Has Not Purposefully Availed Itself Of Any Benefits Of Doing Business In
        California, Plaintiff's Claims Do Not Arise From Any Activities Of CCI In
        California, And Subjecting CCI To Limited Jurisdiction Is Unreasonable
        And Does Not Comport With Concepts Of Fair Play And Justice. ...................... 13

        1.   CCI Has Not Purposefully Availed Itself of the Benefits of Doing
             Business in California ................................................................................. 13

             a.   CCI's status as the registered owner of a non-interactive
                 website is not sufficient purposeful availment to establish
                 jurisdiction ...................................................................................... 14

             b.   CCI's status as a parental guarantor to CTG's contract with
                 Bank of America is not sufficient purposeful availment to
                 establish personal jurisdiction ....................................................... 16

        2.   Plaintiff's Claims Do Not Arise From Any Activities of CCI in
             California ...................................................................................................... 17

1

**TABLE OF CONTENTS**
(continued)

2

Page

3        3.      Subjecting CCI to Limited Jurisdiction Is Unreasonable and Does
                Not Comport With Concepts of Fair Play and Substantial Justice .......... 17

4

        D.      To The Extent That The Court Is Court Is Uncertain Of The Propriety Of
5               Exercising Jurisdiction Over CCI, The Court Should Order Limited
                Discovery Solely On This Jurisdictional Issue While Staying All Discovery
6               In The Interest of Judicial Economy .................................................................. 18

7  IV.   CONCLUSION .............................................................................................................. 19

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4

*Akzona, Inc. v. E.I. Du Pont De Nemours and Co.,*
    607 F. Supp. 227 (D. Del. 1984)...................................................................... 10

5

*American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert,*
    94 F.3d 586 (9th Cir. 1996)...................................................................... 9, 10

6

*Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.,*
    197 F.3d 1070 (11th Cir. 1999)...................................................................... 6

7

8

*Ballard v. Savage,*
    65 F.3d 1495 (9th Cir. 1995)...................................................................... 17

9

*Bancroft & Masters, Inc. v. Augusta National Inc.,*
    223 F.3d 1082 (9th Cir. 2000)...................................................................... 6, 8

10

11

*Burger King v. Rudzewicz,*
    471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985) ...................................... 13

12

*Calder v. Jones,*
    465 U.S. 783, 104 S. Ct. 1482; 79 L. Ed. 2d 804 (1984) ...................................... 13

13

14

*Calvert v. Huckins,*
    875 F.Supp. 674 (E.D. Cal. 1995)...................................................................... 9

15

*Chan v. Society Expeditions, Inc.,*
    39 F.3d 1398 (9th Cir. 1994)...................................................................... 11

16

17

*Congoleum Corp. v. DLW Aktiengesellschaft,*
    729 F.2d 1240 (9th Cir. 1984)...................................................................... 7, 8

18

*Core-Vent Corp. v. Nobel Industries AB,*
    11 F.3d 1482 (9th Cir. 1993)...................................................................... 18

19

20

*Cybersell, Inc. v. Cyerbsell, Inc.,*
    130 F.3d 414 (9th Cir. 1997)...................................................................... 14, 15

21

*Defensive Instruments, Inc. v. RCA Corp.,*
    385 F. Supp. 1053 (D.C.Pa.1974) ...................................................................... 19

22

23

*Del Monte Corp. v. Everett Steamship Corp.,*
    402 F. Supp. 237 (N.D. Cal. 1973) ...................................................................... 7

24

*Doe v. Unocal Corp.,*
    248 F.3d 915 (9th Cir. 2001)...................................... 6, 8, 9, 10, 11, 12, 13, 17, 18

25

26

*El-Fadl v. Central Bank of Jordan,*
    316 U.S. App. D.C. 86, 75 F.3d 668, 676 (D.C. Cir. 1996)...................................... 9

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

2

### TABLE OF AUTHORITIES
#### (continued)

Page

3

*Enplanar, Inc. v. Marsh*,
   11 F.3d 1284 (5th Cir.1994).................................................................. 18

4

*Gallagher v. Mazda Motor of America, Inc.*,
   781 F.Supp. 1079 (E.D. Pa. 1992) ...................................................... 11

5

6

*Gates Learjet Corp. v. Hensen*,
   743 F.2d 1325 (9th Cir. 1984)................................................................ 8

7

*Gator.com Corp. v. L.L. Bean, Inc.*,
   341 F.3d 1072 (9th Cir. 2003)........................................................ 13, 14

8

9

*Hanson v. Denckla*,
   357 U.S. 235 (1958)............................................................................ 13

10

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
   466 U.S. 408 (1984).............................................................................. 6

11

*Hillsborough Holdings Corp.*,
   166 B.R. 461 (Bankr. M.D. Fla. 1994) ............................................... 10

12

13

*International Shoe Co. v. Washington*,
   326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ........................... 5, 17

14

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
   628 F. 2d 1175 (1980)..................................................... 9, 10, 11, 16

15

16

*Kulko v. Superior Court*,
   436 U.S. 84, 98 S. Ct. 1690; 56 L. Ed. 2d 132 (1978) ...................... 13

17

*Mesler v. Bragg Management Co.*,
   39 Cal.3d 290, 215 Cal. Rptr. 443, 448, (1985) .................................. 9

18

19

*Moore v. Webster*,
   932 F.2d 1229 (9th Cir. 1991)............................................................. 18

20

*Nichols v. G.D. Searle & Co.*,
   991 F.2d 1195 (4th Cir. 1993)............................................................... 7

21

22

*Orchid Biosciences, Inc. v. St. Louis University*,
   198 F.R.D. 670 (S.D.Cal.2001)........................................................... 18

23

*Pacific Atlantic Trading Co., Inc. v. M/V Main Exp.*,
   758 F.2d 1325 (9th Cir., 1985)............................................................ 16

24

25

*River Plate Corp. v. Forestal Land, Timber & Ry. Co.*,
   185 F. Supp. 832 (D.C.N.Y.1960) ...................................................... 19

26

*Shaffer v. Heitner*,
   433 U.S. 186 (1977)............................................................................. 6

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Sher v. Johnson,*
   911 F.2d 1357 (9th Cir. 1990) ............................................................. 13

*Sibley v. Superior Court,*
   16 Cal. 3d 442, 546 P.2d 322, 128 Cal. Rptr. 34 (Cal., 1976) ................... 16

*Transure, Inc. v. Marsh and McLennan, Inc.,*
   766 F.2d 1297 (9th Cir. 1985) ................................................................ 8

*Tuazon v. R.J. Reynolds Tobacco Co.,*
   433 F.3d 1163 (9th Cir. 2006) ................................................................ 6

*United States v. Bestfoods,*
   524 U.S. 51, 141 L. Ed. 2d 43, 118 S. Ct. 1876 (1998) ...................... 8, 10

*World-Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) ...................... 5, 13

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,*
   952 F.Supp. 1119 (W.D. Pa. 1997) ...................................................... 14

**Statutes**

CAL. CODE CIV. PROC. § 410.10 .................................................................. 5

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on March 28, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Susan Illston in Courtroom 10 of the above-entitled court, located at U.S. Courthouse, 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, Defendant Carlson Companies, Inc. ("CCI") will and hereby does move pursuant to Federal Rule of Civil Procedure 12(b)(2) for an order dismissing this action on the ground that the court lacks personal jurisdiction over this defendant since CCI has not purposefully availed itself of the benefits of doing business in the State of California and does not have any contacts with the State of California which would satisfy general or limited jurisdiction over it.

CCI's Motion is based on this Notice of Motion of Motion, the following Memorandum of Points and Authorities, the concurrently filed Declarations of Wanda K. Cahill and Scott Grinde, the papers and pleadings on file in this matter, and other such material as may come before this Court upon hearing this matter.

DATED: February 20, 2008               **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**


By:    /S/ Elizabeth D. Le
       Martin R. Lueck
       Emmett J. McMahon
       Elizabeth D. Le

*Attorneys for Defendant Carlson Companies, Inc.*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2

**I.    <u>INTRODUCTION</u>**

3     This Court lacks personal jurisdiction over Defendant Carlson Companies, Inc. ("CCI").

4   CCI has not purposefully availed itself of the benefits of doing business in the California and does

5   not have any ongoing, substantial contacts with this state such that general or limited jurisdiction

6   may be exercised.  Indeed, CCI maintains no corporate presence in California.  A domicile of

7   Minnesota, CCI is not registered to do business in California and does not engage in any business

8   activities in this state.  It does not solicit business in California and does direct any of its

9   corporate activities at California residents.  It holds no offices, property, bank accounts, addresses

10  or telephone numbers in this state, and targets no advertising towards California.  It does not file

11  any tax returns here and does not even have a registered agent for service of process in California.

12     Plaintiff offers no basis for personal jurisdiction over CCI in his Complaint.  Rather,

13  Plaintiff admits that he is ignorant of CCI's involvement, if any, in the alleged transactions.

14  Perhaps Plaintiff is ignorant because CCI had no involvement in the transactions at issue or in any

15  other travel transactions related to the WorldPoints Travel Rewards Program (the "Program").  In

16  fact, CCI has never directed, managed, or handled any travel arrangements on behalf of

17  WorldPoints credit card holders through the Program.  It has never purchased airline tickets or

18  imposed any fuel related fees upon card holders under the Program.  CCI's only involvement with

19  the Program was in the limited capacity as Carlson Travel Group, Inc.'s ("CTG") guarantor on

20  CTG's contract with Bank of America Corporation relating to the Program for a period of one

21  year, prior to the time that Plaintiff's alleged transaction occurred.  CCI's guarantor status alone,

22  however, is not sufficient to subject it to California's jurisdiction.  CCI never directed CTG to

23  conduct any activities related to the Program on CCI's behalf.

24     The only allegation specific to CCI in the Complaint is that CCI is the registered owner of

25  the domain name of a non-interactive website to where Plaintiff is referred for questions

26  concerning charges on his credit card.  This fact alone, however, is not sufficient to establish

27  jurisdiction over CCI, especially since CCI does not even operate this website and does not

28

NOTICE OF MOTION AND MOTION TO DISMISS
CLASS ACTION COMPLAINT
CV 07-05892 SI

1    benefit in anyway from it.  Moreover, this passive website does not conduct any business and is

2    not specifically directed toward California residents.

3           Any attempt by Plaintiff to confer jurisdiction over CCI on an agency basis, by simply

4    claiming that CCI is somehow an alter ego or agent of its former subsidiaries CTG and/or Carlson

5    Network Associates, Inc. ("CTNA"), will undoubtedly fail.  There is no evidence that CTG or

6    CTNA performed any services relating to the Program on behalf of CCI.  Likewise, there is no

7    evidence that CCI disregarded corporate formalities or had anything other than a typical

8    parent/subsidiary relationship with CTG and CTNA.  To the contrary, CCI maintained separate

9    offices, accounting procedures, books and records from CTG and CTNA during the period in

10   which they were subsidiaries of CCI.  It never directed, managed or handled any travel

11   transactions for WorldPoints card holders through CTG or CTNA nor had any involvement in the

12   CTG's administration and management of the Program.

13          Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(2), this action should be

14   dismissed for lack of personal jurisdiction.  If after considering this motion, this Court is

15   uncertain of the propriety of exercising jurisdiction CCI, CCI asks this Court order limited

16   discovery solely on this jurisdictional issue, while staying all other discovery in the interest of

17   judicial economy.

18   **II.    FACTUAL BACKGROUND**

19          **A.    Plaintiff's Class Action Claims**

20          This lawsuit concerns transactions related to Bank of America's WorldPoints Travel

21   Rewards Program.  (Complaint ¶ 1.)  Plaintiff John Lofton ("Plaintiff") allegedly holds a

22   WorldPoints credit card issued by Defendant Bank of America ("BofA").  (*Id.* at ¶ 7.)  According

23   to Plaintiff, points earned through credit card purchases under the WorldPoints program can be

24   redeemed for airline tickets, which are purchased through the WorldPoints independent travel

25   agency.  (*Id.* at ¶¶ 1, 2.)  Plaintiff claims that CCI, CTG and/or CTNA is the independent travel

26   agency.  (*Id.* at ¶ 13.)  Plaintiff alleges that Defendants make the following two representations

27   about the Program: (1) "the Program purchases coach class tickets for 'the lowest fare available

28   through the travel provider a the time of booking' (unless a card holder redeems WorldPoints for

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   a first-class or business-class ticket)"; and (2) the credit obtained from the redemption of

2   WorldPoints applies to 'all taxes and destination fees except the September 11 Security Fee and

3   any airline-imposed surcharges, including but not limited to fuel related surcharges and/or

4   additional security fees deemed necessary by the individual carrier.'"  (*Id.* at ¶ 3.)

5           Plaintiff claims that the airline tickets that he purchased through the Program on October

6   22, 2007 were more expensive than what he would have paid had he bought the same tickets

7   online through Expedia.com, Orbitz, Travelocity, or Continental.com.  (*Id.* at ¶¶ 24- 31.)  On that

8   basis, Plaintiff concludes that either the travel provider failed to obtain the lowest fare available

9   or the Defendants assessed a $45 fuel-related fee that was not imposed by Continental Airlines

10  (the issuing airline.)  (*Id.* at ¶ 32.)  Accordingly, Plaintiff filed this suit against BofA, FIA Card

11  Services, N.A., CCI, CTNA, and CTG on behalf of himself and all California residents who

12  allegedly purchased airline tickets through the WorldPoints Travel Rewards Program and were

13  purportedly charged a fuel-related fee that was not imposed by the issuing airline.  (*Id.* at ¶ 38.)

**B.    CCI Is Not Involved In Any Travel Transactions Under the WorldPoints Travel Rewards Program And Does No Business in California.**

**1.    CCI has Never Directed, Managed or Handled any Travel Arrangements on behalf of WorldPoints Card Holders.**

17          CCI has never directed, managed or handled any travel arrangements on behalf of

18  WorldPoints credit card holders through the Program.  (Declaration of Scott Grinde ("Grinde

19  Dec.") at ¶ 4; Declaration of Wanda K. Cahill ("Cahill Dec.") at ¶¶ 27, 28.)  It certainly has never

20  purchased any airline tickets or assessed any fuel related fees on Word Points card holders.

21  (Grinde Dec. at ¶ 4; Cahill Dec. at ¶¶ 27, 28.)  Nor has CCI ever directed its former subsidiaries,

22  CTG and CTNA, to make any transactions under the Program on its behalf.  (Grinde Dec. at ¶ 5;

23  Cahill Dec. at ¶ 29.)  Even as a parental guarantor for CTG on its contract with BofA for the

24  Program, from July 1, 2006 to June 30, 2007, CCI did not perform any services relating to the

25  Program.  (Cahill Dec. at ¶ 27.)  Needless to say, CCI did  not have any involvement in the

26  transactions alleged in the Complaint.  (Grinde Dec. at ¶ 6.)

27          CCI's lack of involvement in the Program and transactions at issue is confirmed by

28  Plaintiff's own admission that he is ignorant of CCI's role, if any, therein.  (Complaint ¶ 13.)  As

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

discussed, the only forum-related activity Plaintiff specifically attributes to CCI is its registration of a website, www.tripcharges.com. (*Id.* at ¶ 26.) This website is a non-interactive website that does not transfer money between parties, collect information from consumers, or accept any electronic transmissions. (Grinde Dec. at ¶ 7.) It is not a platform through which California WorldPoints credit card holders can convert their points into airline tickets or manage their Travel Rewards accounts. (*Id.*) The website's content wholly consists of a one page explanation of why a consumer's credit card statement reflects a charge from Trip Charges, a description of what services the company provides, an explanation of the charges, and an Idaho phone number to call if the consumer wants more information. (*Id.* & Ex. 1 attached thereto.) This website is not specifically directed to California consumers and CCI does not transact any business through this website. (*Id.*)

**2.    CCI has no Corporate Presence In California.**

CCI is a Minnesota corporation with its principal place of business in Minnetonka, Minnesota. (Cahill Dec. at ¶ 4.) It does not do or solicit business in California and does not direct its business operations from any facility in California. (*Id.* at ¶ 14.) CCI is not registered or qualified to do business in California. (*Id.* at ¶ 5.) It has no place of business, no sales representatives, no distributors, and no agents in California. (*Id.* at ¶ 6.) It has no offices, addresses, bank accounts or corporate books or records within this state. (*Id.* at ¶¶ 7-13.) CCI does not file any tax returns in California. (*Id.* at ¶ 12.) It does not advertise for business in California, does not have any interest in or posses any real property herein, does not contract to supply services or things to residents in California and does not derive substantial revenues from goods used or consumed or services rendered in California. (*Id.* at ¶¶ 15-18.) Other than one part time employee that CCI employed from February 2005 to March 2007, CCI does not have any employees in California. (*Id.* at ¶¶ 19, 20.)

**3.    CCI, CTNA AND CTG are Separate and Distinct Companies.**

CCI is a distinct and independent entity from CTG and CTNA. (Cahill Dec. at ¶ 21.) CCI is a holding company for various entities, which at one time included CTG and CTNA. (*Id.*) As a parent corporation, CCI has always operated as a separate corporate entity from its subsidiaries,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

including CTG and CTNA.  (*Id.* at ¶ 22.)  While CCI is involved in its subsidiaries' acquisitions, divestments and capital expenditures, and its officers and directors hold seats on its subsidiaries' boards, as a general policy and practice CCI does involve itself in the daily operations of its subsidiaries.  (*Id.*)  At all times while CCI was a parent corporation of CTNA and CTG, CCI had no direct involvement in operating the day-to-day affairs or facilities of CTG or CTNA.  (*Id.*)  As subsidiaries of CCI, CTG and CTNA each operated their own offices and facilities, maintained their separate books, bank accounts, financial statements, and accounting procedures and employed their own personnel.  (*Id.*)  Both CTG and CTNA make their own day to day operational business decisions.  (*Id.* at ¶ 21.)  At all times that CTG and CTNA were subsidiaries of CCI, CCI ensured that CTG and CTNA were adequately capitalized to maintain their separate holdings.  (*Id.* at ¶ 22.)  CCI did not contemplate that it would have any effect whatsoever in California by and through its former subsidiaries CTG and/or CTNA. (*Id.*)  As of January 28, 2008, CCI is no longer the parent company for CTG and CTNA. (*Id.*)  CCI's divestment of CTG and CTNA was completely unrelated to this litigation.  (*Id.* at ¶ 21.)

### III.     THIS ACTION SHOULD BE DISMISSED BECAUSE THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER CCI.

This Court does not have personal jurisdiction over CCI.  Under California's long arm statute, this court may exercise personal jurisdiction over a party to the extent permitted by the Due Process Clause of the United States Constitution.  CAL. CODE CIV. PROC. § 410.10.  Due process requires Plaintiff to establish that CCI has minimum contacts with California such that the maintenance of a suit against CCI does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).  Plaintiff must also establish that CCI personally availed itself of the laws of California such that it could "reasonably anticipate being haled into court there." *World-wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed. 2d 490 (1980).

It is unclear whether Plaintiff contends that this Court has general or limited jurisdiction over CCI.  Regardless, Plaintiff offers no basis for personal jurisdiction over CCI.  As discussed below, Plaintiff alleges no facts and offers no evidence of CCI's contacts with California.  Indeed,

1  the paucity of contacts between CCI and the State of California precludes the exercise of either

2  general or limited jurisdiction over CCI.

3        **A.**      **CCI Is Not Subject To General Jurisdiction In California Because It Does Not**
            **Have Substantial, Continuous Or Systematic Contacts With The State.**

4

5        For general jurisdiction to exist over a non-resident defendant, the defendant must have

6  "substantial, continuous and systematic" contacts with the forum state.  *Doe v. Unocal Corp.*,

7  248 F.3d 915, 923 (9th Cir. 2001).  The nature and extent of the contacts determines whether they

8  are "substantial" or "continuous and systematic."  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d

9  1163, 1172 (9th Cir. 2006).  "Longevity, continuity, volume, economic impact, physical presence,

10 and integration into the state's regulatory or economic markets are among the indicia of such a

11 presence."  *Id*.  A defendant's economic activities in the state must be nothing short of pervasive

12 to support the exercise of general personal jurisdiction.  *Associated Transport Line, Inc. v.*

13 *Productos Fitosanitarios Proficol El Carmen, S.A.,* 197 F.3d 1070, 1075 (11th Cir. 1999).

14 Isolated or occasional transactions by a foreign corporation are not enough to establish general

15 jurisdiction.  *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 416-17 (1984).

16 For example, mere ownership of property within the state is insufficient to establish general

17 jurisdiction.  *Shaffer v. Heitner,* 433 U.S. 186, 213-24 (1977).  Purchasing or selling products

18 within the state does not by itself subject a company to general jurisdiction.  *Helicopteros*, 466

19 U.S. at 418; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 772 (1984) (sale of 15,000

20 magazines each month within forum state may not be sufficient to support general jurisdiction).

21       In particular, the Ninth Circuit considers, among other factors, whether the defendant

22 makes sales, solicits or engages in business in the state, serves the state's markets, designates an

23 agent for service of process, holds a license, or is incorporated in the state.  *Tuazon,* 433 F. 3d at

24 1172.  "The standard for establishing general jurisdiction is 'fairly high,' and requires that the

25 defendant's contacts be of the sort that approximate physical presence."  *Bancroft & Masters, Inc.*

26 *v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal marks and citations

27 omitted).  Even having employees within the forum state, without more, is insufficient to

28 establish personal jurisdiction.  *Del Monte Corp. v. Everett Steamship Corp.,* 402 F. Supp. 237,

*ROBINS, KAPLAN, MILLER & CIRESI L.L.P.*
ATTORNEYS AT LAW
LOS ANGELES

1   241 (N.D. Cal. 1973) (employment of executive officer in California "fell short" of establishing

2   general jurisdiction); *see also, Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242

3   (9th Cir. 1984) ("[N]o court has ever held that the maintenance of even a substantial sales force

4   within the state is a sufficient contact to assert jurisdiction in an unrelated cause of action.");

5   *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993) (manufacturer lacked

6   sufficient minimum contacts to support general jurisdiction in products liability suit even though

7   it employed 17 to 21 sales representatives and two supervisors within the state).

8          In *Del Monte*, for example, the defendant corporations employed an executive officer in

9   California who, from his California office, engaged in "internal communications and internal

10  activities" relating to the corporations.  402 F. Supp. at 241.  Even though the office in California

11  was advertised as the defendants' "agency office," the fact that the "defendants enjoy having an

12  executive officer residing and working in this state," the court explained, "falls short" of

13  establishing the type of "substantial commercial activity in [the] state" that "might justify this

14  court's exercising personal jurisdiction over a cause of action not related to the activity."  *Id.* at

15  242.

16         By comparison, CCI has virtually no contacts with California, and certainly none that

17  would approach what is required by these yardsticks to sustain general personal jurisdiction over

18  it.  As discussed above and further outlined in the Declaration of Wanda K. Cahill, CCI has no

19  corporate presence in California.   (Cahill Dec. at ¶¶ 4-20.)   Moreover, CCI has only ever

20  employed one person in California, on a part time basis nonetheless.  (*Id.* at ¶ 20.)  This part time

21  employee worked from her home from February 2005 to March 2007.  She previously worked for

22  Carlson Marketing Worldwide, Inc., a subsidiary of CCI.  (*Id.*)  When her job has made redundant

23  by Carlson Marketing Worldwide, Inc., CCI on hired her on a limited basis to help with      the

24  transition.   (*Id.*)   She did not in any way solicit business or generate revenue for CCI in

25  California.  (*Id.*)  She certainly did not have any responsibilities related to the Program and was

26  not involved in any of the transactions alleged in the Complaint.  (*Id.*)

27         Certainly, CCI's limited contacts with California is insufficient to subject it to personal

28  jurisdiction.  Indeed, the Ninth Circuit has regularly declined to find general jurisdiction even

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   when the contacts were much more extensive then any alleged contacts between CCI and

2   California.  *See Bancroft*, 223 F.3d 1082, 1086 (no general jurisdiction where defendant had

3   license agreement with California businesses, "these agreements constitute doing business with

4   California, but do not constitute doing business in California.");  *Gates Learjet Corp. v. Hensen*,

5   743 F.2d 1325, 1330 (9th Cir. 1984) (no general jurisdiction even though defendant solicited a

6   distributorship agreement, visited the state several times, sent many letters, and made numerous

7   telephone calls to the state);  *Congoleum Corp.*, 729 F.2d at 1241, 1243.  Indeed, the many federal

8   court decisions rejecting the exercise of general jurisdiction where the defendants had, not just

9   employees, but regular and substantial purchases and sales within the forum state only highlights

10  the total absence of any arguable basis to assert general jurisdiction here.

**B.    This Court Does Not Have Personal Jurisdiction Over CCI Because Any Alleged Contacts of CTG Or CTNA With The State of California Cannot Be Attributed To CCI.**

13      When a non-resident defendant's alleged contacts are through its corporate subsidiaries,

14  the Ninth Circuit considers whether the subsidiaries' contacts may be properly attributed to the

15  defendant parent-corporation to determine whether the parent may be subject to personal

16  jurisdiction.  *Unocal*, 248 F.3d at 925.  "The existence of a relationship between a parent

17  company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on

18  the basis of the subsidiaries' minimum contacts with the forum."  *Id.* (citing *Transure, Inc. v.*

19  *Marsh and McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985).  Indeed, the Supreme Court has

20  found that in the context of assessing corporate separateness for purposes of liability:

> It is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts. This recognition that the corporate personalities remain distinct has its corollary in the well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do "change hats" to represent the two corporations separately, despite their common ownership.

26  *United States v. Bestfoods*, 524 U.S. 51, 69, 141 L. Ed. 2d 43, 118 S. Ct. 1876 (1998) (internal

27  marks and citations omitted); *see also Unocal*, 248 F.3d at 926 (adopting *Bestfoods* language).

28  The Supreme Court further articulated the generally applicable principle that a parent corporation

NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT CV 07-05892 SI

1   may be directly involved in the activities of its subsidiaries without incurring liability so long as

2   that involvement is "consistent with the parent's investor status." *Id*.  Appropriate involvement of

3   a parent corporation includes "monitoring of the subsidiary's performance, supervision of the

4   subsidiary's finance and capital budget decisions, and articulation of general policies and

5   procedures." *Id.*

6        Only "if the parent and subsidiary are not really separate entities, or one acts as an agent

7   of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent

8   corporation." *Unocal*, 248 F.3d at 926 (citing *El-Fadl v. Central Bank of Jordan*, 316 U.S. App.

9   D.C. 86, 75 F.3d 668, 676 (D.C. Cir. 1996)).  "An alter ego or agency relationship is typified by

10  parental control of the subsidiary's internal affairs or daily operations."  *Id.* (citing *Kramer*

11  *Motors*, 628 F.2d at 1177).

### 1.    Plaintiff has not pled that CCI, CTG or CTNA are Alter Egos of One Another.

14       Under California law, in order to prove the existence of an alter ego relationship, plaintiff

15  must show (1) that there be such unity of interest and ownership that the separate personalities of

16  the corporation and the individual no longer exist and (2) that failure to disregard their separate

17  identities would result in fraud or injustice.  *Mesler v. Bragg Management Co.*, 39 Cal.3d 290,

18  300, 215 Cal. Rptr. 443, 448, (1985); *American Telephone & Telegraph Co. v. Compagnie*

19  *Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996).  "The first prong of this test has alternately

20  been stated as requiring a showing that the parent controls the subsidiary 'to such a degree as to

21  render the latter the mere instrumentality of the former.'"  *Unocal*, 248 F.3d at 926 (citing *Calvert*

22  *v. Huckins*, 875 F.Supp. 674, 678 (E.D. Cal. 1995).

23       Here, Plaintiff does not allege ***any*** factual basis for alter ego liability.  In fact, Plaintiff

24  admits he is ignorant of the relationship among CCI, CTG, and CTNA.  (Complaint ¶ 10.)  He

25  further admits he is ignorant of any participation or involvement that CCI had in the alleged

26  conduct.  (*Id.* at ¶ 13.)  Such scant allegations, without more, are insufficient to make a prima

27  facie case for alter ego liability.  Accordingly, CCI is not subject to this Court's personal

28  jurisdiction based on any theory of alter ego liability for its former subsidiaries CTG and CTNA.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

In contrast to Plaintiff's bald and conclusory allegations, CCI affirmatively offers evidence that it has never had any involvement with the transactions of the Program.  (Grinde Dec. at ¶¶ 4-7.)  At all relevant times, CCI did not direct, manage or handle any travel arrangements made through the Program.  (*Id.*; Cahill Dec. at ¶ 28; Answer at ¶¶ 2, 23, 25, 26, 30, 31, 32, 33, 46, 47, 61, 63, 65.)  Nor did CCI ever direct CTG or CTNA to act on its behalf under the Program.  (Grinde Dec. at ¶ 5; Cahill Dec. at ¶¶ 27, 28.)  While CCI has had overlapping directors and officers with its former subsidiaries CTG and CTNA and been involved in its subsidiaries' acquisitions, divestments and capital expenditures, CCI has not been involved in the daily operations of its subsidiaries.  (Cahill Dec. at ¶¶ 21-22.)  At all relevant times during which CTG and CTNA were subsidiaries of CCI, CCI has ensured that CTG and CTNA were adequately capitalized to maintain their separate holdings.  (*Id.* at ¶ 22.)

Even assuming *arguendo* that CCI has been involved in some management of its former subsidiaries CTG and/or CTNA in regards to the Program, which CCI denies, no liability would attach so long as that involvement is "consistent with the parent's investor status." *Bestfoods*, 524 U.S. at 69.  A parent corporation may be directly involved in financing and macro-management of its subsidiaries, without exposing itself to a charge that each subsidiary is merely its alter ego. *Unocal*, 248 F.3d at 927;  *see also, American Telephone*, 94 F.3d at 591 (no alter ego liability or personal jurisdiction existed in regards to parent corporation that held majority of seats on its subsidiary's board and directed the filing of consolidated tax returns);  *Kramer Motors*, 628 F.2d at 1177 (no alter ego liability or personal jurisdiction existed in regards to parent corporation that guaranteed loans for its subsidiary, reviewed and approved subsidiary's major decisions, and was closely involved in subsidiary's pricing decisions);  *Akzona, Inc. v. E.I. Du Pont De Nemours and Co.*, 607 F. Supp. 227, 238 (D. Del. 1984) (overlap of boards of directors, parental approval of large capital expenditures, and parental guaranty of third-party loans to subsidiary insufficient to establish alter ego relationship); *In re Hillsborough Holdings Corp.*, 166 B.R. 461, 473-74 (Bankr. M.D. Fla. 1994) (proper for parent to provide all financing to a subsidiary), *aff'd* 176 B.R. 223 (M.D. Fla. 1994).

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

CCI's relationship to CTG and CTNA has at all times reflected no more than a normal parent-subsidiary relationship.  As discussed below in Section C(1)(b), the fact that CCI acted as a guarantor on CTG's contract with BofA regarding the WorldPoints Program alone is not sufficient establish personal jurisdiction over CCI.  *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F. 2d 1175, 1177 (1980).  CCI did not act in a manner so as to avail itself of the forum; in its capacity as CTG's guarantor, CCI still did not have any involvement in the services performed by CTG under the Program.  Accordingly, any alleged misconduct by CTG or CTNA cannot be attributed to CCI based on an alter-ego theory.

### 2.    Plaintiff has not Pled a Prima Facie Case that Defendants CTG or CTNA are Agents of CCI.

Plaintiff admits that he is "ignorant of the particular roles CTNA, CTG, and/or CCI...have played in the misconduct alleged [in the Complaint.]"  (Complaint ¶ 13.)  To establish that a subsidiary is the agent of a corporation, Plaintiff must show that "the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.'"  *Unocal*, 248 F.3d at 928 (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)).  "The general agency test requires that the agent perform some service or engage in some meaningful activity in the forum state on behalf of its principal such that its "presence substitutes for presence of the principal.'"  *Id.* at 930 (quoting *Gallagher v. Mazda Motor of America, Inc.*, 781 F.Supp. 1079, 1084 (E.D. Pa. 1992)).

In *Unocal*, the Ninth Circuit approved the decision of a California district court to dismiss a non-resident parent corporation for lack of personal jurisdiction in regards to a lawsuit involving its subsidiaries' petrochemical operations in the forum state.  *Id.*  The court found that the plaintiffs failed to meet their burden of showing that the subsidiaries with substantial California contacts should be treated as general agents of the parent corporation for the purposes of establishing jurisdiction:

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

> Here, plaintiffs do not make out a prima facie case that Total's operational subsidiaries in California are its agents for purposes of personal jurisdiction. There is no evidence that in the absence of Total's California subsidiaries involved in petrochemical and chemical operations, Total would conduct and control those operations. . . . .

5

6

7

> . . . . the fact that Total indirectly owns or holds the stock of HSC and CSAI does not, without more, convert these two corporations into general agents for Total for jurisdictional purposes under the Ninth Circuit's agency test articulated in *Wells Fargo* and *Chan*. . . . Under these circumstances, it simply can not be said that CSAI or HSC are Total's general agents for jurisdictional purposes.

8

*Id.* at 929-930.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

   As in *Unocal*, Plaintiff here does not and cannot meet his burden of showing that CTG and CTNA are general agents of their former parent CCI for the purposes of establishing jurisdiction. While professing that he is ignorant of the facts, at the same time Plaintiff makes no claims that CCI ever controlled the operations of CTG and/or CTNA, that CTG and/or CTNA performs services, if any, that are sufficiently important to CCI's own business, or that CCI would have to perform any activities of CTG or CTNA if they were unavailable to act as its representative.   As previously stated, CCI has never directed, managed or administered travel arrangements on behalf of credit card holders through the WorldPoints Travel Rewards Program. (Grinde Dec. at ¶ 4.)  It has never purchased any airline tickets under the Program on behalf of WorldPoints card holders.  (*Id.*; Answer at ¶ 2.)  It has never directed CTG and/or CTNA in regards to any of their alleged WorldPoints Travel Rewards Program services.  (Grinde Dec. at ¶ 5; Cahill Dec. at ¶¶ 27, 28.)  CTG and CTNA did not perform any services relating to the WorldPoints Travel Rewards Program as agents of CCI.  (*Id.*)  Plaintiff cannot establish that CTG and/or CTNA are agents of CCI for the purpose of conferring personal jurisdiction over CCI.

23

24

25

   **C.**    **This Court Does Not Have Limited Jurisdiction Over CCI Because CCI Has Not Purposefully Availed Itself Of Any Benefits Of Doing Business In California, Plaintiff's Claims Do Not Arise From Any Activities Of CCI In California, And Subjecting CCI To Limited Jurisdiction Is Unreasonable And Does Not Comport With Concepts Of Fair Play And Justice.**

26

27

28

   In the absence of general jurisdiction, federal courts may exercise limited jurisdiction if the case arises out of certain forum-related acts.  Courts employ a three-part test for analyzing a claim of specific jurisdiction:  (1) the non-resident defendant must purposefully avail itself of the

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    privilege of conducting business in the forum, thereby invoking the benefits and protections of its

2    laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related

3    activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice,

4    *i.e.*, it must be reasonable. *Unocal,* 248 F.3d at 923. As shown below, all of these considerations

5    weigh in favor of CCI and no limited jurisdiction may be found.

6           **1.    CCI Has Not Purposefully Availed Itself of the Benefits of Doing**
               **Business in California.**

7

8            To establish limited jurisdiction, a nonresident must have purposefully directed its

9    activities at forum residents, or purposely availed itself of the privilege of conducting activities

10   within the forum state, thus invoking the benefits and protections of local law. *Kulko v. Superior*

11   *Court*, 436 U.S. 84, 94, 98 S. Ct. 1690; 56 L. Ed. 2d 132 (1978); *Hanson v. Denckla*, 357 U.S.

12   235, 253-254 (1958). Purposeful availment requires a finding that the defendant "has performed

13   some type of affirmative conduct which allows or promotes the transaction of business within the

14   forum state." *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). For example, the courts

15   have found purposeful activity where a nonresident defendant purposefully directed its activities

16   toward forum residents; a nonresident manufacturer placed its products in the stream of

17   commerce with expectation that they will be sold to consumers in the forum state, or a

18   nonresident operates an interactive website through which it conducts electronic commerce. *See*

19   *e.g.*, *Calder v. Jones*, 465 U.S. 783, 790, 104 S. Ct. 1482; 79 L. Ed. 2d 804 (1984), *World-Wide*

20   *Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-298, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490

21   (1980), *Gator.com Corp. v. L.L. Bean, Inc*., 341 F.3d 1072 (9th Cir. 2003). The requirement of

22   purposeful availment "ensures that a defendant will not be hailed into a jurisdiction solely as a

23   result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party of

24   a third person." *Burger King v. Rudzewicz*, 471 U.S. 462, 478-479, 85 L. Ed. 2d 528, 105 S. Ct.

25   2174 (1985).

26           As demonstrated herein, CCI does not do business in California and has not purposely

27   availed itself of any of the benefits of California. (Cahill Dec. at ¶¶ 4-20.) Plaintiff cannot point

28   to any commercial activity of CCI that is directed toward California consumers. Instead, Plaintiff

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    unsuccessfully attempts to impute the alleged misconduct of CTG and CTNA to CCI on alter-ego

2    and/or agency theories.  Any establishment of specific jurisdiction based on CCI's contact with

3    California through its former subsidiaries' alleged conduct would hail CCI into a jurisdiction

4    solely as the result of the type of random and attenuated contact prohibited by the *Burger King*

5    court.

6           **a.**    ***CCI's status as the registered owner of a non-interactive website is not sufficient purposeful availment to establish jurisdiction.***

7          Plaintiff's only allegation specific to CCI is that it is the registered owner of the domain

8    name for a non-interactive website that is operated by CTG and accessible to California residents.

9    (Complaint ¶ 26.)   A non-interactive website alone, however, is insufficient to establish

10   purposeful availment.  Rather, limited jurisdiction can be exercised over defendants who operate

11   "interactive" websites in a manner "directly proportionate to the nature and quality of the

12   commercial activity that an entity conducts over the Internet." *Cybersell, Inc. v. Cyerbsell, Inc.*,

13   130 F.3d 414, 419 (9th Cir. 1997) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp.

14   1119, 1124 (W.D. Pa. 1997).   The Ninth Circuit applies a sliding-scale analysis of internet

15   business activity to determine jurisdiction:

16           At one end of the spectrum are situations where a defendant clearly
     does business over the Internet.  If the defendant enters into the

17           contracts with the residents of a foreign jurisdiction that involve the
     knowing and repeated transmission of computer files over the

18           Internet, personal jurisdiction is proper.  At the opposite end . . . a
     defendant has simply posted information on an Internet Web Site

19           which is accessible to [forum resident] users . . . .

20   *Gator.com*, 341 F.3d at 1079, fn. 8 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp.

21   1119, 1124 (W.D. Pa. 1997)).

22         Here, CCI does not even operate the alleged website.  (Grinde Dec. at ¶ 7.)  Plaintiff

23   admits that CCI is merely listed as the website registrant and that CTG is the listed operator.

24   (Complaint ¶ 26.)   Moreover, the website is a non-interactive or passive site so that no

25   commercial activity can or does occur.  (Grinde Dec. at ¶ 7.)  As discussed above, the website's

26   content consists of a one-page explanation of why the consumer's credit card statement reflects a

27   charge from Trip Charges, a description of what services the company provides, an explanation of

28   the charges, and an Idaho phone number to call if the consumer wants more information.  (*Id.*)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   This website does not transfer money between parties, collect information from consumers, or

2   accept any electronic transmissions.  (*Id.*)  It is not a platform through which consumers can

3   convert points into airline tickets or other rewards, and is not specifically directed toward

4   California residents.  (*Id.*)

5          The Ninth Circuit has similarly declined jurisdiction over corporations with passive

6   websites.  In *Cybersell Inc.*, a foreign company's operation of a passive website did not constitute

7   sufficient contacts with the forum state to establish "purposeful availment" by the company.

8   *Cybersell Inc.*, 130 F.3d at 420.  The company did nothing to encourage people to access its

9   website and did not conduct commercial activity over the internet in the forum state.  *Id.* at 419.

10  There was no evidence that any forum resident signed up for the company's services through its

11  website or any part of the company's business was sought or achieved through its website in the

12  forum state.  *Id.*  Additionally, the company had no contracts, made no sales, received no phone

13  calls, and earned no income in the forum state.  *Id.*  The Ninth Circuit determined:

14          While there is no question that anyone, anywhere could access that
            home page and thereby learn about the services offered, we cannot
15          see how from that fact alone it can be inferred that Cybersell FL
            deliberately directed its merchandising efforts toward Arizona
16          residents.

17          . . . The interactivity of its web page is limited to receiving the
            browser's name and address and an indication of interest-signing up
18          for the service is not an option, nor did anyone from Arizona do so.
            No money changed hands on the Internet from (or through)
19          Arizona. In short, Cybersell FL has done no act and has
            consummated no transaction, nor has it performed any act by which
20          it purposefully availed itself of the privilege of conducting
            activities, in Arizona, thereby invoking the benefits and protections
21          of Arizona law.

22  *Id.*

23                 **b.      *CCI's status as a parental guarantor to CTG's contract with Bank
                            of America is not sufficient purposeful availment to establish
24                          personal jurisdiction.***

25         The fact that CCI acted as a guarantor for CTG from July 2006 through June 2007, prior

26  to the time Plaintiff's purported transactions took place, in CTG's contract with BofA relating to

27  the Program alone is inadequate contacts with the forum state to establish jurisdiction.  It is well

28  settled that a parent corporation's status as a guarantor does not constitute the kind of deliberate

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1  forum-protection invoking act which the law requires to subject a nonresident to in personam

2  jurisdiction. *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F. 2d 1175, 1177 (1980) (parent

3  corporation's guarantee of personal loans for subsidiary is not sufficient to establish personal

4  jurisdiction); *Pacific Atlantic Trading Co., Inc. v. M/V Main Exp.*, 758 F.2d 1325, 1330 (9th Cir.,

5  1985) ("A finding that the execution of an indemnity agreement subjects a foreign guarantor to

6  personal jurisdiction, particularly when the site of the contract is a foreign country, may not be in

7  the best economic interests of the United States."); *Sibley v. Superior Court*, 16 Cal. 3d 442, 448,

8  546 P.2d 322, 326, 128 Cal. Rptr. 34, 38 (Cal., 1976) (asserting jurisdiction over a nonresident

9  solely because he executed a guarantee agreement regarding payment of money owing to a

10  California corporation was unreasonable and unconstitutional). In order for the nonresident

11  guarantor to avail itself of the jurisdiction of the forum state, the guarantor "must have done some

12  act by which it purposefully avails itself of the benefits and protections of forum law." *Kramer*,

13  628 F.2d at 1177. As demonstrated, CCI did not act any manner, in its capacity as CTG's

14  guarantor or otherwise, so as subject itself to California's jurisdiction.

15  During the short period in which it was CTG's guarantor, CCI did not perform any

16  services relating to the WorldPoints Travel Rewards Program. (Cahill Dec. at ¶¶ 27, 28.) CCI

17  never managed the Program. (*Id.*) It did not direct, manage or handle any travel arrangements

18  under the Program, nor did CCI direct CTG to do so on its behalf. (*Id.*) It never purchased

19  tickets or imposed/charged a fuel related fee on card holders under the Program. (*Id.*) Moreover,

20  CCI never directed CTG to purchase tickets for card holders or impose any fuel related fees on

21  card holders through the Program on CCI's behalf. (*Id.* at ¶ 28.)

22  Based on the foregoing, limited jurisdiction cannot be established over CCI. None of

23  CCI's alleged actions, including its registered website, are directly aimed at California residents.

24  CCI has neither consummated any transactions by or through the Program nor has performed any

25  act by which it has purposefully availed itself of the privileges, benefits and protections of

26  California law.

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

### 2.   Plaintiff's Claims Do Not Arise From Any Activities of CCI in California.

The Ninth Circuit applies a "but for" test to determine whether a claim "arises out of" a nonresident's forum-related activities; specifically, if plaintiff would not have suffered the loss but for defendant's activities, this element is satisfied.  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

The only forum-related activity Plaintiff specifically attributes to CCI is its registration of the www.tripcharges.com website.  (Complaint ¶ 26).  Thus, in applying the "but for" test, Plaintiff must demonstrate that he would not have been charged the additional $45 fee but for CCI's registration and/or alleged ownership of the website.  There is no nexus, however, between this website and the Plaintiff's alleged loss because he admits that he contacted an 800 number provided by the Bank of America WorldPoints Travel Rewards Program, not the number listed on the Trip Charges website.  (Complaint ¶¶ 24-25.)  There is no evidence that the information on this website prompted Plaintiff to choose an airline ticket over a different reward.  In fact, the Complaint alludes that Plaintiff was not even aware of the website until after the charge appeared on his credit card statement.  (*Id.* ¶¶ 24-27.)  Thus, CCI's registration of the "passive" website could not have played a role in Plaintiff's decision to redeem his credit card points for an airline ticket.  There is simply no evidence to establish that the tripcharges.com website is the primary and likely cause of Plaintiff's alleged injury, i.e. incurring the $45 fuel-related fee.

### 3.   Subjecting CCI to Limited Jurisdiction Is Unreasonable and Does Not Comport With Concepts of Fair Play and Substantial Justice

A court must determine whether the assertion of personal jurisdiction would comport with traditional notions of "fair play and substantial justice," or in other words, whether it would be reasonable for the court to exercise jurisdiction over a foreign defendant.  *Unocal*, 248 F.3d at 925 (citing *International Shoe*, 326 U.S. at 326.)  The Ninth Circuit applies the following seven-factor balancing test to determine whether the exercise of personal jurisdiction over a foreign defendant is reasonable:  (a) the extent of defendant's "purposeful" interjection; (b) the burden on defendant in defending in the forum; (c) the extent of conflict with the sovereignty of the

defendant's state; (d) the forum state's interest in adjudicating the dispute; (e) the most efficient judicial resolution of the controversy; (f) the importance of the forum to plaintiff's interest in convenient and effective relief; and (g) the existence of an alternative forum. *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1487-1488 (9th Cir. 1993). No one factor is dispositive; rather, the court must balance all seven. *Id.* at 1488. However, if minimum contacts do not exist, as here, the court does not even reach this analysis. *Unocal*, 248 F.3d at 925.

As shown above, CCI does not have minimum contact with California sufficient to satisfy the first or second factors of the jurisdictional analysis, thus it is not necessary to address this last factor in depth. CCI was neither directly nor indirectly involved in any of the activities alleged to have injured Plaintiff. No employees or agents of CCI visited California in connection with the events at issue in this case. (Cahill Dec. at ¶ 19.) CCI did not perform or direct the performance of CTG or CTNA in regards to any alleged services provided as part of the Program and did not contemplate that it would have any effect whatsoever in California by and through its former subsidiaries CTG and/or CTNA. (*Id.* at ¶¶ 21-23, 27-28.) Indeed, to subject CCI to this Court's limited jurisdiction on such tenuous, if not chimerical, bases, would offend traditional notions of "fair play and substantial justice."

**D.      To The Extent That The Court Is Court Is Uncertain Of The Propriety Of Exercising Jurisdiction Over CCI, The Court Should Order Limited Discovery Solely On This Jurisdictional Issue While Staying All Discovery In The Interest of Judicial Economy.**

In the event that this Court is uncertain as to whether personal jurisdiction exists, it is entirely appropriate for the Court to order limited discovery on jurisdictional matters while staying all other discovery. Federal courts have routinely stayed discovery on the merits while challenges to jurisdiction are pending. *Moore v. Webster*, 932 F.2d 1229, 1232 (9th Cir. 1991); *Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 675 (S.D.Cal.2001) (limiting discovery to the issue of jurisdiction while motion to dismiss for lack of personal jurisdiction is pending, because permitting merits-based discovery would unduly burden defendant); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284 (5th Cir.1994) (court did not abuse its discretion in denying merits-related discovery pending ruling non a motion for change of venue); *River Plate Corp. v. Forestal*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1   *Land, Timber & Ry. Co.*, 185 F. Supp. 832 (D.C.N.Y.1960) (where motion to quash service of

2   summons was pending, discovery limited to the issue of jurisdiction); *Defensive Instruments, Inc.*

3   *v. RCA Corp.*, 385 F. Supp. 1053 (D.C.Pa.1974) (where defense of statute of limitations would

4   obviate need for scrutiny of merits, discovery properly limited to preliminary questions as to

5   validity of the defense).

6   **IV.     CONCLUSION**

7          For all the foregoing reasons, this Court does not have personal jurisdiction over CCI and

8   should dismiss CCI from this action.  Alternatively, if the outcome of the Court's analyses is

9   unclear, this Court should permit limited discovery for the purpose of resolving these

10  jurisdictional issues and stay all other discovery with respect to CCI pending resolution of this

11  jurisdictional issue.

12  DATED:  February 20, 2008              **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

13                                          By: ___/S/ Elizabeth D. Le_____

14                                              Martin R. Lueck
                                                Emmett J. McMahon
15                                              Elizabeth D. Le

16                                          *Attorneys for Defendant Carlson Companies, Inc.*

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
ATTORNEYS AT LAW
LOS ANGELES

1

**CERTIFICATE OF SERVICE**

2

Pursuant to 28 U.S.C. § 1746, I hereby certify that a copy of **NOTICE OF MOTION AND**

3

**MOTION OF DEFENDANT CARLSON COMPANIES, INC. TO DISMISS CLASS**

4

**ACTION COMPLAINT FOR LACK OF PERSONAL JURISDICTION;**

5

**MEMORANDUM OF POINTS AND AUTHORITIES; AND [PROPOSED] ORDER**

6

**GRANTING DEFENDANT CARLSON COMPANIES INC. TO DISMISS CLASS**

7

**ACTION COMPLAINT FOR LACK OF PERSONAL JURISDICTION** was served upon the

8

parties below Fed. R. Civ. P. 5(b) by causing a copy of the same to be placed in the United States

9

Mail, postage prepaid, and sent to their last known address as follows:

10

Alan Himmelfarb, Esq.

11

KamberEdelson LLC
2757 Leonis Blvd.
Los Angeles, CA 90058

12

*Attorneys for Plaintiff John Lofton*

13

Jay Edelson, Esq.
Ethan Preston, Esq.

14

KamberEdelson LLC
53 West Jackson Ave., Suite 1530

15

Chicago, IL 60604
*Attorneys for Plaintiff John Lofton*

16

Scott Kamber, Esq.

17

KamberEdelson LLC
11 Broadway, 22nd Floor

18

New York, NY 10004
*Attorneys for Plaintiff John Lofton*

19

Abraham J. Colman, Esq.

20

Felicia Y. Yu, Esq.
Reed Smith LLP

21

355 South Grand Avenue,
Suite 2900

22

Los Angeles, CA 90071
*Attorneys for Defendant Bank of America Corporation and FIA Card Services, N.A.*

23

Daniel J. Bergeson, Esq.

24

Donald P. Gagliardi, Esq.
Bergeson, LLP

25

303 Almaden Blvd., Suite 500
San Jose, CA 95110

26

*Attorneys for Defendant Carlson Travel Network Associates, Inc. and Carlson Travel Group, Inc.*

27

Date: February 20, 2008          By:    /S/ Elizabeth D. Le
                                        ELIZABETH D. LE

28

LA 60153869.4

- 20 -

NOTICE OF MOTION AND MOTION TO
DISMISS CLASS ACTION COMPLAINT
CV 07-05892 SI

1   Martin R. Lueck (MN Bar No.155548)
    Emmett J. McMahon (Admitted *pro hac vice*)
2   **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
    2800 LaSalle Plaza
3   800 LaSalle Avenue
    Minneapolis, MN 55402
4   Telephone:    612-349-8500
    Facsimile:    612-339-4181
5   E-mail:       mrlueck@rkmc.com
                  ejmcmahon@rkmc.com
6
    Elizabeth D. Le (CA Bar No. 216182)
7   **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
    2049 Century Park East, Suite 3400
8   Los Angeles, CA  90067-3208
    Telephone:    310-552-0130
9   Facsimile:    310-229-5800
    E-mail:       edle@rkmc.com
10
    Attorneys for Defendant
11  CARLSON COMPANIES, INC.

12

13               UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16

| | |
|---|---|
| 17  JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly 18  situated, | Case No.  CV 07-05892 SI |
| | [Assigned to the Hon. Susan Illston] |
| 19                    Plaintiff, | **[PROPOSED] ORDER GRANTING** |
| 20  v. | **DEFENDANT CARLSON COMPANIES INC. TO DISMISS CLASS ACTION COMPLAINT FOR LACK OF PERSONAL** |
| 21  BANK OF AMERICA CORPORATION, FIA CARD SERVICES, N.A., a national 22  banking association, CARLSON COMPANIES, INC., a Minnesota 23  corporation, CARLSON TRAVEL NETWORK ASSOCIATES, INC., a 24  Minnesota corporation, and CARLSON TRAVEL GROUP, INC., a California 25  corporation, and DOES 1 to 100, | **JURISDICTION** |
| | **[Fed. R. Civ. Proc. 12(b)(2)]** |
| | Date:      March 28, 2008 |
| | Time:      9:00 a.m. |
| | Crtrm:     10 |
| 26                    Defendants. | [Filed Concurrently With:  (1) Notice of Motion and Motion to Dismiss; (2) Declaration of Wanda K. Cahill; (3) Declaration of Scott Grinde; and (4) Appendix of Non-Federal Authorities] |

27

28

LA 60153869.4

- 1 -

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1    Defendant CARLSON COMPANIES INC.'S ("CCI") Motion to Dismiss Class Action

2    Complaint for Lack of Personal Jurisdiction came on for hearing before this Court on March 28,

3    2008 at 9:00 a.m. before the Honorable Susan Illston, United States District Court, San Francisco,

4    California, with all parties having appeared through counsel.

5    The Court having reviewed the Motion, and after consideration of the opposition and

6    reply papers, arguments of counsel, and all other matters presented to the Court, the Court finds

7    as follows:

8    CCI's motion is granted in its entirety.  This Court lacks personal jurisdiction over CCI.

9    CCI not purposefully availed itself of the benefits of doing business in the State of California and

10    does not have any contacts with the State of California which would satisfy general or limited

11    jurisdiction over it.  Pursuant to Federal Rule of Civil Procedure 12(b)(2), this action is dismissed

12    as against CCI.

13    DATED: _____

14

15    By: _____

16         Hon. Susan Illston
         United States District Court

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

PROPOSED ORDER GRANTING
CCI'S MOTION TO DISMISS
CV 07-05892 SI