# TAB 1

Westlaw.

216 Cal.Rptr. 443                                                                                                           Page 1
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)

▷

Supreme Court of California,
In Bank.
Wesley G. MESLER, Plaintiff and Appellant,
v.
BRAGG MANAGEMENT COMPANY, Defendant and Respondent.
L.A. 31996.

Aug. 1, 1985.

Plaintiff brought personal injury action. The Superior Court, Los Angeles County, John A. Shidler, J., granted defendant's motion for summary judgment, and plaintiff appealed. The Supreme Court, Mosk, J., held that: (1) trial court should have allowed plaintiff to amend pleading to plead alter-ego theory, and (2) plaintiff's settlement with corporation did not bar plaintiff from proceeding against alter ego of corporation.

Reversed.

Lucas, J., filed a dissenting opinion.

West Headnotes

**[1] Pleading ⚷233.1**
302k233.1 Most Cited Cases
    (Formerly 302k233)
Unfair surprise to opposing party is to be considered in determining whether trial court may allow party to amend his pleadings. West's Ann.Cal.C.C.P. § 473.

**[2] Judgment ⚷185.3(7)**
228k185.3(7) Most Cited Cases
In personal injury action, trial court did not abuse its discretion by granting summary judgment on agency issue, although plaintiff contended trial court should not have granted summary judgment because issues of fact remained, since agency theory was not argued or supported by affidavit.

**[3] Pleading ⚷246(3)**
302k246(3) Most Cited Cases
In personal injury action, trial court should have permitted plaintiff to amend pleading to plead alter ego theory since defendant could hardly have been surprised by plaintiff's reliance on alter-ego theory, there having already been much discovery on issue, and plaintiff was prejudiced by ruling since his entire theory opposing summary judgment revolved around relationship between defendant and another.

**[4] Corporations ⚷1.4(1)**
101k1.4(1) Most Cited Cases
There is no litmus test to determine when corporate veil will be pierced; rather, result will depend on circumstances of each particular case.

**[5] Corporations ⚷1.4(2)**
101k1.4(2) Most Cited Cases

**[5] Corporations ⚷1.4(5)**
101k1.4(5) Most Cited Cases
Two general requirements for piercing the corporate veil are that there be such unity of interest and ownership that separate personalities of corporation and individual no longer exist, and if acts are treated as those of corporation alone, inequitable result will follow.

**[6] Corporations ⚷1.4(1)**
101k1.4(1) Most Cited Cases
When a court disregards a corporate entity, it does not dissolve the corporation.

**[7] Corporations ⚷1.4(1)**
101k1.4(1) Most Cited Cases

**[7] Corporations ⚷1.4(2)**
101k1.4(2) Most Cited Cases
Corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice are required.

**[8] Corporations ⚷1.5(3)**
101k1.5(3) Most Cited Cases
When it is claimed that parent corporation should be liable because it is alter ego of subsidiary, equity commands that corporate wall be breached, yet wall remains and parent is liable through acts of subsidiary but as a separate entity.

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-05892-SI    Document 40-2    Filed 02/21/2008    Page 3 of 13

216 Cal.Rptr. 443                                                                  Page 2
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
**(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)**

**[9] Corporations** 🗝️1.6(3)
101k1.6(3)Most Cited Cases

**[9] Corporations** 🗝️1.6(9)
101k1.6(9)Most Cited Cases
A judgment obtained against corporation and its alter ego is enforceable against both separately; thus, when a plaintiff settles with only subsidiary, parent's liability continues.

**[10] Compromise and Settlement** 🗝️16(1)
89k16(1)Most Cited Cases
Statutes [West's Ann.Cal.C.C.P. §§ 881-883] governing contribution among other judgment debtors deals only with judgment debtors and their rights to obtain contribution from other tort-feasors and is not applicable to cases involving prejudgment settlements.

**[11] Compromise and Settlement** 🗝️16(1)
89k16(1)Most Cited Cases
Statute [West's Ann.Cal.C.C.P. § 877] abrogating common-law rule that settlement with one alleged tort-feasor bars action against any others claimed liable for same injury applies to principal-agent liability.

**[12] Compromise and Settlement** 🗝️16(1)
89k16(1)Most Cited Cases
When a plaintiff in a tort action sues one party as alter ego of another, plaintiff is not barred from proceeding against former after settlement with alter ego.

**[13] Compromise and Settlement** 🗝️16(1)
89k16(1)Most Cited Cases
Personal injury plaintiff's settlement with corporation did not bar plaintiff from proceeding against corporation's alter ego. West's Ann.Cal.C.C.P. §877.
***444**602*294 John C. Adams, III, Law Offices of Wylie A. Aitken, Santa Ana, for plaintiff and appellant.

Jay H. Picking, Law Offices of Pray, Price, Williams & Russell, Long Beach, for defendant and respondent.

MOSK, Justice.

We consider whether a plaintiff may pursue a tort action against a parent corporation on the theory that it is the alter ego of its subsidiary, the alleged tortfeasor, after entering into a settlement and release agreement with the subsidiary. At issue is the applicability of Code of Civil Procedure section 877, [FN1] which abrogates the common law rule that settlement *295 with one alleged tortfeasor bars action against any others claimed liable for the same injury. We conclude that the statute does apply, and thus release of an alleged tortfeasor under these circumstances does not preclude suit against its claimed alter ego.

> FN1. All statutory references are to the Code of Civil Procedure.

The relevant facts, as alleged by plaintiff, are as follows. One night in the summer of 1979, plaintiff was operating a Caterpillar D-9 Dozer atop a 30-foot coke pile. Because he had some difficulty raising the front blade of the dozer, he exited the cab to inspect the vehicle but left the engine running. While moving along the tread of the dozer he stumbled in the darkness. As he slipped, his right arm was thrust into the dozer's engine fan, and approximately one-third of the arm was amputated.

Plaintiff filed a claim for personal injuries against Crescent Cranes, Inc. dba **603 Crescent Coke Handlers, Inc. (hereafter Crescent Coke), plaintiff's employer at the ***445 time of the accident; [FN2] Mobil Oil Corporation, on whose premises the accident occurred; Great Lakes Carbon Corporation, owner of the coke pile; M.P. McCaffrey's, Inc., a corporation that had sold the used dozer to Crescent Coke; Caterpillar Tractor Company, manufacturer of the dozer; Bragg Crane Services, Inc. (hereafter Bragg Crane), a company that had owned the dozer before Crescent Coke; and Does. Plaintiff alleged strict products liability and negligence in design, manufacture, marketing, distribution, installation, inspection, purchase, maintenance, and handling of the dozer by Crescent Coke, McCaffrey, Caterpillar, Bragg Crane, and Does. Plaintiff further claimed that Mobil, Great Lakes Carbon, Crescent Coke, Bragg Crane and Does were negligent in the maintenance of the workplace. The complaint included a paragraph reciting that "each of the defendants was the agent and employee of each of the remaining defendants and was at all times herein mentioned acting within

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-05892-SI    Document 40-2    Filed 02/21/2008    Page 4 of 13

216 Cal.Rptr. 443                                                                 Page 3
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
**(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)**

the scope of said agency and employment."

> FN2. Plaintiff's suit against Crescent Coke was dismissed because of a pending workers' compensation proceeding.

Defendants filed various cross-complaints and motions for summary judgment. Relevant to the present action was a motion for summary judgment by Bragg Crane. It claimed to have no connection with the workplace or with plaintiff, and alleged it had had no contact with the dozer since it sold the machine to Crescent Coke in 1976. Plaintiff opposed the motion by asserting inter alia that Crescent Coke and Bragg Crane were alter egos, and thus Bragg Crane could be held responsible for Crescent Coke's negligence. The motion for summary judgment was denied.

Over two years after plaintiff filed his complaint, following discovery that revealed both Crescent Coke and Bragg Crane to be wholly owned subsidiaries *296 of another entity, Bragg Management Co. (hereafter sometimes called defendant), plaintiff substituted the latter as Doe I. Bragg Management moved for summary judgment on the ground that it had no connection whatever with the dozer, the workplace, or plaintiff. The trial court stated that plaintiff appeared to rely on an alter ego theory to hold Bragg Management liable, and that although much discovery had been conducted on the issue an alter ego theory had not been pleaded. Despite plaintiff's request to amend the pleadings, the court granted defendant's motion. Plaintiff appeals from the judgment entered on this ruling.

Plaintiff contends there were triable issues of fact as to both alter ego and agency theories, that it is not necessary to specifically plead alter ego, and that the determination whether an alter ego relationship exists is for the trier of fact. Defendant responds that there were no triable issues of fact. Further, it argues that the point is moot because during the pendency of the appeal, plaintiff settled with Bragg Crane. Defendant claims that by dismissing with prejudice his suit against Bragg Crane plaintiff removed the basis of his action against Bragg Crane's alter ego. Plaintiff replies that section 877 governs this situation, and thus settlement with one defendant does not release the other.

I.

We first address the question whether summary judgment was proper in light of the posture of the case at the time the court ruled--that is, before plaintiff's settlement with Bragg Crane. The judge's reason for granting the motion is apparent from the transcript of the hearing. He stated he would probably grant plaintiff's request to amend the pleadings to include an alter ego allegation, and deny the summary judgment motion. Counsel for the defense then reminded him that the trial date was only six weeks away. The judge, remarking that to permit the new allegation would "destroy the plaintiff's time of **604 trial" then declared he would not allow plaintiff to amend. Plaintiff's counsel ***446 urged that plaintiff would rather include Bragg Management and have trial postponed than retain the trial date as set, and that trial would be postponed in any event because an important party would be missing. These pleas fell on deaf ears, however, and the summary judgment motion was granted.

[1][2]Section 473 provides that "in furtherance of justice" a court may allow a party to amend its pleadings. When a request to amend has been denied, an appellate court is confronted by two conflicting policies. On the one hand, the trial court's discretion should not be disturbed unless it has been clearly abused; on the other, there is a strong policy in favor of liberal allowance of amendments. This conflict "is often resolved in favor of the *297 privilege of amending, and reversals are common where the appellant makes a reasonable showing of prejudice from the ruling." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 1042, pp. 2620-2621.) Unfair surprise to the opposing party is also to be considered. (Id., § 1048, p. 2623.) [FN3]

> FN3. Plaintiff argues that the court should not have granted summary judgment because issues of fact remained as to his agency theory. However, although agency was alleged in the pleadings, it was not argued below or supported by affidavits. "Since the object of the [summary judgment] proceeding is to discover *proof,* the adverse party must file an affidavit in opposition to the motion; he cannot rely on a verified pleading alone." (4 Witkin, Cal.Procedure (2d ed. 1971), italics in

Case 3:07-cv-05892-SI    Document 40-2    Filed 02/21/2008    Page 5 of 13

216 Cal.Rptr. 443                                                                                             Page 4
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
**(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)**

original), Proceedings Without Trial, § 188, p. 2837; *Hayward, etc. School Dist. v. Madrid* (1965) 234 Cal.App.2d 100, 120, 44 Cal.Rptr. 268.) Thus the court did not abuse its discretion by granting summary judgment on the agency issue.

[3] In the case at bar the court should have permitted plaintiff to plead the alter ego issue. It apparently based its ruling on its reluctance to "destroy the plaintiff's time of trial," yet it was plaintiff who desired to amend regardless of any resulting postponement. Additionally, defendant could hardly have been surprised by plaintiff's reliance on the alter ego theory. As the court stated, there had been much discovery on the issue before defendant's and Bragg Crane's motions for summary judgment. Agency, a related concept, had been alleged in plaintiff's original complaint, to which defendant had been substituted as a Doe. And plaintiff had argued the alter ego theory in its opposition to defendant's motion. Finally, plaintiff was clearly prejudiced by this ruling, since his entire theory opposing summary judgment revolved around the relationship between defendant, Bragg Crane and Crescent Coke.

II.

We turn to the key question whether plaintiff's settlement with Bragg Crane operated to release its alter ego, Bragg Management. For this purpose we examine the history and policies underlying section 877.

At common law if a plaintiff sued two or more tortfeasors and settled with one, the others were released. The rationale for this rule was that the plaintiff had suffered only one injury, for which there could be only one satisfaction. As each tortfeasor was jointly and severally liable for the entire injury, a settlement with any of them fully compensated the plaintiff. To permit the plaintiff to proceed against the others would sanction double recovery. (*Lamoreux v. San Diego etc. Ry. Co.* (1957) 48 Cal.2d 617, 624, 311 P.2d 1;*Chetwood v. California National Bank* (1896) 113 Cal. 414, 426, 45 P. 704; Thaxter, *Joint Tortfeasors: Legislative Changes in the \*298 Rules Regarding Releases and Contribution* (1958) 9 Hastings L.J. 180, 182.)

The rule was thus based on the misconception, as Dean Prosser suggested, that a "satisfaction" is the equivalent of a "release." (Prosser, *Joint Torts and Several Liability* (1937) 25 Cal.L.Rev. 413, 423.) However, while "[a] satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration." (*Ibid.*) Even if it could be said that any sum the plaintiff received in settlement was a compensation **605 for the joint wrong (*Lamoreux, supra,* 48 Cal.2d at p. 624, 311 P.2d 1), the ***447 rule produced unfair results. For example, a plaintiff who settled with a defendant of modest resources for an amount below the value of his damages did not have his claim fully satisfied; nevertheless, under the common law rule he could not seek further compensation from other defendants.

In order to avoid this harsh rule, the covenant not to sue was developed. These covenants were not releases, but rather promises not to prosecute a lawsuit against the covenantee. Since the "language is of covenant and indemnity, not of release" (*Kincheloe v. Retail Credit Co., Inc.* (1935) 4 Cal.2d 21, 23, 46 P.2d 971), it would not preclude suit against other tortfeasors. (*Ibid.*) The problem then became whether an instrument should be interpreted as a release or a covenant not to sue. As this court recognized, "the distinction between a release and a covenant not to sue is entirely artificial. As between the parties to the agreement, the final result is the same in both cases, namely, that there is no further recovery from the defendant who makes the settlement, and the difference in the effect as to third parties is based mainly, if not entirely, on the fact that in one case, there is an immediate release, whereas in the other there is an agreement not to prosecute a suit." (*Pellett v. Sonotone Corp.* (1945) 26 Cal.2d 705, 711, 160 P.2d 783.)

In 1957 the Legislature responded to the problem by adopting section 877: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort-- [¶] (a) It shall not discharge any other such tortfeasor from liability unless its terms so provide, but it shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever is the greater; and [¶] (b) It shall

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-05892-SI    Document 40-2    Filed 02/21/2008    Page 6 of 13

216 Cal.Rptr. 443
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
**(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)**

Page 5

discharge the tortfeasor to whom it is given from all liability for any contribution to any other tortfeasor."

Section 877 is but one part of a package of legislation entitled "Releases From and Contribution Among Joint Tortfeasors." Included therein is a *299 section providing for contribution among joint judgment debtors (§ 875), a provision for the determination of each judgment debtor's pro rata share (§ 876), section 877 which abrogates the common law release rule, a section added in 1977 to deal with sliding scale agreements (§ 877.5), a section enacted after _American Motorcycle Association v. Superior Court_ (1978) 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899, establishing procedures for determining whether a settlement is in good faith (§ 877.6), and a provision detailing the procedure a judgment debtor may follow to obtain contribution from another tortfeasor (§ 878).

It is clear that if section 877 applies to the case before us, it would allow plaintiff to pursue his action against defendant Bragg Management despite his settlement with Bragg Crane. Defendant argues, however, that section 877 does not apply to alter ego situations. It maintains that an alter ego claim rests on the theory that two distinct entities are really one, and thus settlement with one must ipso facto encompass the other. Section 877, defendant asserts, applies only to joint tortfeasors, not to a parent corporation held liable for the torts of its subsidiary on an alter ego rationale.

Defendant cites as controlling a federal district court case, _Fuls v. Shastina Properties, Inc._ (N.D.Cal.1978) 448 F.Supp. 983. That case arose from the defendants' alleged fraud in selling certain property to the plaintiffs. The plaintiffs sued Shastina Properties, its sales agents, and its alleged alter ego, Beverly Enterprises. Subsequently, the plaintiffs entered a settlement and release agreement with the sales agents, which the court found to include by its express language Shastina Properties. (_Id._ at p. 989.) The court dispensed with the plaintiffs' claim against Beverly Enterprises in one brief paragraph: "Beverly is **606 alleged to have been the alter ego of Shastina Properties. Under California law, a ***448 corporation is treated as being the alter ego of another corporation only if there is 'such a unity of interest and ownership that the individuality of such corporation and the owner or owners of its stock has ceased.' [Citation.] Where the alter ego doctrine applies, therefore, the two corporations are treated as one for purposes of determining liability. It follows that where the one corporation is released from liability, so too is the other. Thus, it is unnecessary to consider whether Beverly was in fact the alter ego of Shastina Properties in this case. If it were, it would also be released by the Agreement." (_Ibid.;_ see also _M/V American Queen v. San Diego Marine Construction Corp._ (9th Cir.1983) 708 F.2d 1483, 1490 (citing and relying on _Fuls_).)

These cases do not settle the matter. To begin with, of course, decisions of the federal courts interpreting California law are persuasive but not binding. Second, the cursory reasoning of _Fuls_ would not be controlling in any event, for it contains no discussion whatever of section 877 or the cases *300 interpreting it. Further, the decision is based on a misinterpretation of the alter ego doctrine in California.

The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. (6 Witkin, Summary of Cal.Law (8th ed. 1974) Corporations, § 5, p. 4318.) In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation: "As the separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted. When it is abused it will be disregarded and the corporation looked at as a collection or association of individuals, so that the corporation will be liable for acts of the stockholders or the stockholders liable for acts done in the name of the corporation." (Comment, _Corporations: Disregarding Corporate Entity: One Man Company_ (1925) 13 Cal.L.Rev. 235, 237.)

[4][5] There is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case. There are, nevertheless, two general requirements: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." (_Automotriz_

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-05892-SI    Document 40-2    Filed 02/21/2008    Page 7 of 13

216 Cal.Rptr. 443                                                                                                Page 6
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
**(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)**

*etc. de California v. Resnick* (1957) 47 Cal.2d 792, 796, 306 P.2d 1.) And "only a difference in wording is used in stating the same concept where the entity sought to be held liable is another corporation instead of an individual." (*McLoughlin v. L. Bloom Sons Co., Inc.* (1962) 206 Cal.App.2d 848, 851, 24 Cal.Rptr. 311.)

[6] However--and this is where the court in *Fuls* went astray--when a court disregards the corporate entity, it does not dissolve the corporation. "It is often said that the court will disregard the 'fiction' of the corporate entity, or will 'pierce the corporate veil.' Some writers have criticized this statement, contending that the corporate entity is not a fiction, and that the doctrine merely limits the exercise of the corporate privilege to prevent its abuse." (6 Witkin, op. cit. supra, § 5, at p. 4317; see, e.g., Comment, supra, 13 Cal.L.Rev. at p. 237.)

In *Kohn v. Kohn* (1950) 95 Cal.App.2d 708, 214 P.2d 71, a marriage dissolution case, the question was whether the husband's corporation was the alter ego of the husband so that its income should have been included in the determination of his liability. The court explained the alter ego doctrine: "The issue is not so much whether, for all purposes, the corporation is the 'alter ego' of its stockholders or officers, nor whether the very purpose *301 of the organization of the corporation was to defraud the individual who is now in court complaining, as it is an issue of whether in the particular case presented and for the purposes **607 of such case justice and equity can best be accomplished and fraud and unfairness ***449 defeated by a disregard of the distinct entity of the corporate form." (*Id.* at p. 718, 214 P.2d 71.) "In the instant case there may well have been various business reasons sufficient to justify and support the formation or continuation of the corporation on the part of defendant. For such purposes the [corporation] still stands." (*Id.* at p. 719, 214 P.2d 71.) However, to the extent the purpose of the corporation was to fraudulently deprive the wife of a fair property settlement, the corporate entity would be disregarded: "The law of this state is that the separate corporate entity will not be honored where to do so would be to defeat the rights and equities of third persons." (*Id.* at p. 720, 214 P.2d 71; see also *McLoughlin v. L. Bloom Sons Co., Inc.*, supra, 206 Cal.App.2d 848, 854, 24 Cal.Rptr. 311 [bypassing the corporate entity to reach an alter ego corporation for the sole purpose of avoiding an injustice, otherwise the corporations remain separate].)

[7] The essence of the alter ego doctrine is that justice be done. "What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result." (Latty, Subsidiaries and Affiliated Corporations (1936) p. 191.) Thus the corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require.

[8][9] To apply the alter ego theory as the federal district court did in *Fuls* misinterprets the doctrine and ignores the policies behind it. It is not that a corporation will be held liable for the acts of another corporation because there is really only one corporation. Rather, it is that under certain circumstances a hole will be drilled in the wall of limited liability erected by the corporate form; for all purposes other than that for which the hole was drilled, the wall still stands. When it is claimed that a parent corporation should be liable because it is the alter ego of its subsidiary, equity commands that the corporate wall be breached. Yet the wall remains: the parent is liable through the acts of the subsidiary, but as a separate entity. A judgment obtained against a corporation and its alter ego is enforceable against both separately. Thus, when the plaintiff settles with only the subsidiary, the parent's liability continues. To hold otherwise would be to defeat the policy of promoting justice that lies behind the alter ego doctrine.

Nevertheless the alter ego corporation would be dismissed together with the subsidiary under the common law release rule, unless section 877 applies. Defendant maintains that this section is applicable only to joint tortfeasors and cannot control when alter ego is alleged as the basis for the nonsettlor's liability. The point is untenable. In 1982 the Legislature amended*302 the contribution statute, changing its title to "Contribution Among Joint Judgment Debtors" and dividing it into two chapters. The first chapter, consisting of sections 875 to 880, retains the old denomination, "Releases From and Contribution Among Joint Tortfeasors." The sections remain unchanged. The second chapter, consisting of sections 881 to 883, is entitled

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

"Contribution Among Other Judgment Debtors." It has been argued that section 877 covers only joint tortfeasors, while the fate of parties other than joint tortfeasors must be determined by chapter 2. (*Mayhugh v. County of Orange* (1983) 141 Cal.App.3d 763, 774, 190 Cal.Rptr. 537 (dis. opn. of McDaniel, J.).)

[10] The short answer to this argument is that chapter 2 deals only with judgment debtors and their rights to obtain contribution from other tortfeasors, and thus is not applicable to cases involving prejudgment settlements. [FN4] More to the point, the language of section 877 is significant--its drafters did not use the narrow term "joint tortfeasors," they used the broad term **608 "tortfeasors claimed to be liable for the same tort." This language was meant to ***450 eliminate the distinction between joint tortfeasors and concurrent or successive tortfeasors (4 Witkin, Summary of Cal.Law (8th ed. 1974) Torts, § 39, p. 2338), and to permit broad application of the statute. (*City of Sacramento v. Gemsch Inv. Co.* (1981) 115 Cal.App.3d 869, 877, 171 Cal.Rptr. 764;*Ritter v. Technicolor Corp.* (1972) 27 Cal.App.3d 152, 154, 103 Cal.Rptr. 686.) Further, another section in chapter 1 expressly extends beyond application to joint tortfeasors: section 876, subdivision (b), applies to "one or more persons ... liable solely for the tort of one of them or of another, as in the case of the liability of a master for the tort of his servant."

> FN4. While the settlement in this case occurred after the court granted summary judgment, an appeal was pending. Also, the named defendants were not "judgment debtors," as judgment had been rendered in their favor.

Analogous to the issue before us is the question whether a principal alleged to be vicariously liable in tort for the acts of its agent is subject to suit following settlement with the agent. The principal is held vicariously liable not because it was necessarily at fault, but because justice requires that the enterprise be responsible for the risks of conducting its business. (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 959-960, 88 Cal.Rptr. 188, 471 P.2d 988;*Rodgers v. Kemper Const. Co.* (1975) 50 Cal.App.3d 608, 618, 124 Cal.Rptr. 143.) Similarly, the parent corporation is liable for the acts of its subsidiary under the alter ego doctrine because justice requires that the corporate wall be breached. "Although the subsidiary may not be an agent in any true sense, the justification for a parent's or affiliate's liability is analogous to the justification of the liability *303 of a principal for acts of a general agent. The principal himself may have done nothing to mislead the third party, but may still be bound by a contract made by the agent within the general scope of his authority.... Although a parent or affiliate corporation has done nothing affirmative to prejudice the third party, it may similarly be just to hold it liable, but only if the creditor can show the kind of hardship which seems to be assumed as a matter of law in the general-agency situation.... An involuntary creditor who has had foisted upon him a subsidiary unable to respond in damages has a greater equity." (Note, *Liability of a Corporation for Acts of a Subsidiary or Affiliate* (1958) 71 Harv.L.Rev. 1122, 1130.)

[11] The rule is clear in California that section 877 applies to principal-agent liability. In *Ritter v. Technicolor Corp.,* supra, 27 Cal.App.3d 152, 103 Cal.Rptr. 686, the plaintiff sued the defendant film distribution corporation, another corporation, and two agents of the latter. The plaintiff and all but the defendant entered a settlement and release, and the latter then sought a dismissal with prejudice. Proclaiming that the wording of the statute was broad enough to apply to situations involving parties that could not be considered "true" joint tortfeasors, the court found "inescapable the conclusion that under section 877, the liability of a principal for the tortious acts of his agent, even though wholly vicarious, survives the release of the agent." (*Id.* at p. 154, 103 Cal.Rptr. 686.) In *Mayhugh v. County of Orange,* supra, 141 Cal.App.3d 763, 766, 190 Cal.Rptr. 537, the Court of Appeal reaffirmed *Ritter.* It emphasized that the Legislature, while enacting section 877.6 in 1980, did not modify or overturn *Ritter.* (*Ibid.*) Since the Legislature is presumed to be aware of existing judicial decisions (*Estate of McDill* (1975) 14 Cal.3d 831, 839, 122 Cal.Rptr. 754, 537 P.2d 874), we can presume that it acquiesced in the application of section 877 to parties alleged to be vicariously liable. [FN5]

> FN5. Most states with legislation similar to section 877 hold that release of an agent does not preclude suit against the principal. (See, e.g., *Harris v. Aluminum Co. of*

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-05892-SI    Document 40-2    Filed 02/21/2008    Page 9 of 13

216 Cal.Rptr. 443
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
**(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)**

Page 8

*America* (W.D.Va.1982) 550 F.Supp. 1024, 1030;*Alaska Airlines, Inc. v. Sweat* (Alaska 1977) 568 P.2d 916, 929- 930;*Holve v. Draper* (1973) 95 Idaho 193, 196-197, 505 P.2d 1265;*Smith v. Raparot* (1967) 101 R.I. 565, 567-568, 225 A.2d 666.) However, there is opposing authority. (See, e.g., *Craven v. Lawson* (Tenn.1976) 534 S.W.2d 653, 656; see also Annot., Release of, or Covenant not to Sue, One Primarily Liable for Tort, but Expressly Reserving Rights Against One Secondarily Liable, as Bar to Recovery Against Latter (1983) 24 A.L.R. 4 th 547.)

**609 It has been argued that because liability of the principal is wholly dependent on liability of the agent, dismissal of the agent ***451 removes the basis of the principal's responsibility. (*Mayhugh v. County of Orange,* supra, 141 Cal.App.3d 763, 770, 190 Cal.Rptr. 537 (dis. opn. by McDaniel, J.).) However, it does not follow that because *judgment* in favor of the agent exonerates the principal (*Will v. Southern Pacific Co.* (1941) 18 Cal.2d 468, 472-473, 116 P.2d 44),*release* of the agent has the same effect. A judgment in favor of the *304 agent means that under our system of law the plaintiff should not recover under the circumstances presented. A settlement has no such implication; it means simply that the parties have agreed to resolve their problems outside the courtroom. Thus liability of the principal--or parent corporation in the alter ego situation--has not been disproved. (See *Sampay v. Morton Salt* (La.1981) 395 So.2d 326, 328 ["Although the employer and employee are not joint tortfeasors, they are nonetheless each obligated for the same thing--total reparation of the damages to the victim. The derivative nature of the employer's liability is of no concern to the victim, and he can compel either the employer or the employee to compensate him for the whole of his damages"].) The liability of the principal (or parent) is not affected by the route the agent (or subsidiary) chooses to take in disposing of the action.

An examination of the various policies underlying the contribution legislation further supports the rule that release of the subsidiary does not release its alter ego. In *Sears, Roebuck & Co. v. International Harvester Co.* (1978) 82 Cal.App.3d 492, 496, 147 Cal.Rptr. 262, the court recognized three interests at work in section 877: "First ... is maximization of recovery to the injured party for the amount of his injury to the extent fault of others has contributed to it.... Second is encouragement of settlement of the injured party's claim.... Third is the equitable apportionment of liability among the tortfeasors."

The statute must be interpreted to allow the plaintiff full recovery to the extent that others are responsible for his injuries. (See *Thornton v. Luce* (1962) 209 Cal.App.2d 542, 552, 26 Cal.Rptr. 393.) This policy would be violated if a corporation alleged to be liable as the alter ego of its subsidiary were to be dismissed because the subsidiary has settled with the plaintiff, especially if the plaintiff has accepted a modest settlement because the subsidiary is undercapitalized. The court held, in *Mayhugh v. County of Orange,* supra, 141 Cal.App.3d 763, 766, 190 Cal.Rptr. 537: "[Sections 877 and 877.6] were designed to clarify the liability of tortfeasors and to benefit the negligently injured plaintiff. The Legislature could not have intended that a settlement with one defendant which partially compensates the plaintiff for injuries sustained would effectively block the road to complete recovery. Release of the employer after settlement with the employee would accomplish such a road block and frustrate the purposes of the statute." [FN6]

> FN6. See also *American Motorcycle Assn. v. Superior Court,* supra, 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899, upholding the joint and several liability rule in the face of the adoption of the doctrine of comparative negligence, and proclaiming that "from a realistic standpoint, we think that AMA's suggested abandonment of the joint and several liability rule would work a serious and unwarranted deleterious effect on the practical ability of negligently injured persons to receive adequate compensation for their injuries. One of the principal by-products of the joint and several liability rule is that it frequently permits an injured person to obtain full recovery for his injuries even when one or more of the responsible parties do not have the financial resources to cover their liability." (*Id.* at p. 590, 146 Cal.Rptr. 182, 578 P.2d 899.)

*305 A second goal of the contribution statute is the

Case 3:07-cv-05892-SI    Document 40-2    Filed 02/21/2008    Page 10 of 13

216 Cal.Rptr. 443                                                                                          Page 9
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
**(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)**

early and final settlement of claims. A potential problem could arise in vicarious liability situations because the contribution statutes preserve the right of full indemnity. Section 875, subdivision (f), would seem to permit a secondarily liable defendant that has had judgment entered against it to seek indemnification from the primary tortfeasor. This threat of indemnification could keep a primarily liable defendant from settling. This court has not yet addressed **610 the question whether an employer-judgment debtor has a right to obtain indemnification from an employee who has ***452 settled with the plaintiff. However, to the extent such a right exists, "In light of the clear legislative expression, ... we must assume that this contingency was foreseen, and that this result was felt desirable." (_Ritter v. Technicolor Corp.,_ supra, 27 Cal.App.3d 152, 155, 103 Cal.Rptr. 686.) Moreover, in the alter ego arena, where the corporations involved have comparable control, it is unlikely that the parent will sue the subsidiary for indemnity unless to do so would be in the best interests of both corporations. Finally, it should be noted that in many cases the parent and subsidiary will be represented by the same counsel, as is the situation in the case at bar, or by separate counsel working in close collaboration. Thus the easiest method for avoiding indemnity problems is to include both corporations in the settlement.

The third policy to be vindicated by the contribution legislation is equity among the defendants. Section 877, subdivision (a), provides that the plaintiff's recovery will be reduced by the amount of consideration paid by the settling defendant, not by the proportion of that defendant's liability. If the subsidiary is allowed to settle for a modest share of the plaintiff's liability and this settlement covers the parent as well, the remaining defendants will have a proportionately greater sum to pay. The low settlement, not made in bad faith because, for example, the subsidiary is undercapitalized, may indeed be unfair if the more affluent parent corporation is included in its terms. Since the remaining defendants cannot attack a settlement unless it was made in bad faith, the rule would be inequitable to the nonsettlors.

It should be added that allowing the plaintiff to proceed against the nonsettling parent would reflect the parties' intent. When, as here alleged, the terms of settlement and release expressly include only the subsidiary and no other party, the parent should not magically benefit from the agreement. If it could do so, results unfair to plaintiffs might follow: not realizing that the parent would also be part of the agreement, the plaintiff would base his settlement on the financial capabilities of the only other party to the agreement, the subsidiary. The amount the plaintiff would receive would likely *306 be disproportionately low if the settlement discharged the parent as well as the subsidiary. And as for the protection of the corporations, the solution is simple: both parties could and should participate in the negotiations. In this way, with every party's identity fully disclosed, an agreement fair to all can be reached.

[12][13] We hold that when a plaintiff in a tort action sues one party as the alter ego of another, the plaintiff is not barred from proceeding against the former after settlement with its alter ego. In the case at bar the trial court abused its discretion in refusing to allow plaintiff to amend his pleadings for this purpose.

The summary judgment is reversed.

BIRD, C.J., and KAUS, BROUSSARD and REYNOSO, JJ., concur.

LUCAS, Justice, dissenting.

I respectfully dissent. The settlement reached between Wesley Mesler and Bragg Crane Services, Inc. (Bragg Crane) resulting in Mesler's dismissal with prejudice of his action against Bragg Crane must preclude Mesler from continuing against Bragg Management Co. (Bragg Management) on an alter ego theory. Using a confusing meld of incompatible and inapplicable principles, the majority concludes that the corporate veil may be pierced, and one entity deemed the "alter ego" of another for purposes of liability, while simultaneously concluding that the same veil remains intact when considering the effects of a settlement.

This inconsistency appears to be engendered in part by my colleagues' extensive reliance on cases involving principal-agent relationships and vicarious liability. However, plaintiff's action here rested on neither theory. Mesler asserted instead that **611 the two corporate Bragg entities were so overlapping

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-05892-SI    Document 40-2    Filed 02/21/2008    Page 11 of 13

216 Cal.Rptr. 443                                                                                           Page 10
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
**(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)**

and identical that in the context of this action the corporate veil must ***453 be ignored and the two treated as one entity.

Incorporation is specifically utilized to limit liability. When abused, the corporate structure may be ignored, but "The standards for the application of alter ego principles are high, and the imposition of liability notwithstanding the corporate shield is to be exercised reluctantly and cautiously." (1 Fletcher, Cyclopedia Corporations (perm. ed. 1983) § 41.10 at p. 397, fn. omitted [hereinafter *Fletcher*].) As an exception to the usual insulation from liability which incorporation provides to its shareholders, care is required before "alter ego" is found applicable.

The majority indulges in frequent analogies to and reliance upon cases involving agency relationships. "The traditional concept of agency refers *307 to a *special legal relationship between separate legal persons* as a result of which the acts of one are attributed to the other with attendant legal consequences." (Blumberg, The Law of Corporate Groups (1983) § 1.02.02, at p. 21, fn. omitted, emphasis added [hereinafter *Blumberg*].) This special relationship and its concomitant rights and liabilities may be statutorily prescribed: "An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." (Civ.Code, § 2330.) The principal's vicarious liability for the acts of his agent extends only to the limits of the agency and to acts "committed by such agent in and as part of the transaction of" the business of the agency, but not to any other acts unless authorized or ratified by the principal. (*Id.*, §§ 2338, 2339.)

When liability is imposed based on agency relationships, the *separate* legal identity of two or more defendants is acknowledged, but liability nonetheless is imputed under specified conditions. Normally, under general legal principles, a corporation is *not* the agent of its shareholders, nor is a corporate subsidiary automatically considered an agent of a parent corporation. (*Blumberg, supra,* § 1.02.2 at pp. 21-22.) When, rather than an agency relationship, alter ego is asserted, the goal is to ignore the identity of the corporation and to withhold the separate recognition to which, prima facie, it would otherwise be entitled. The corporate veil is pierced to establish that two facially separate legal entities are in fact one and should be treated as such. In other words, "[u]nder the [alter ego] doctrine, the court merely disregards the corporate entity and holds the individual responsible for his acts knowingly and intentionally done in the name of the corporation. [¶] .... A corporation may be the alter ego of another corporation and where this occurs the distinct corporate entity will be disregarded and the two corporations will be treated as one." (*Fletcher, supra,* § 41.10 at pp. 397-398, fns. omitted.)

With this background in mind, I turn to the majority's opinion here. Undoubtedly, a finding that one corporation is alter ego of another for the purpose of a particular action does not mean that the corporate veil will be breached as to all suits or creditors for all purposes. However, the majority utilizes this rule in a unique way: it permits reliance on a finding of alter ego for one part of analyzing a transaction, but adheres to corporate separateness for consideration of the exact *same* transaction. The contradictory pull thus created permeates my colleagues' opinion.

For example, the majority first observes that a finding of alter ego does *not* mean "It is not that a corporation will be held liable for the acts of *308 another corporation because there is really only one corporation." (*Ante,* p. 449 of 216 Cal.Rptr., p. ---- of --- P.2d.) This disclaimer however is directly contrary to the generally accepted characterization of the effect of such a finding: "When a case calls for an exception to the entity view, courts usually construct a common identity for the parent and subsidiary corporations, *thereby treating **612 them as one.*" (*Blumberg, supra,* § 1.02.1 at p. 9; see also 1A Ballantine & Sterling, Cal. Corporation Laws (4th ed. ***454 1984) § 295, at p. 14-32 [hereinafter *Ballantine* ] [courts applying alter ego theory "treat the body of shareholders and the corporation as procedurally synonymous rather than as separate juristic entities"].) In fact, it is because in essence there is functionally but one entity that alter ego is appropriate in a given situation.

The majority opinion then pictures a hole drilled in the "wall of limited liability erected by the corporate form" and concludes that "When it is claimed that a parent corporation should be liable because it is the

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

Case 3:07-cv-05892-SI    Document 40-2    Filed 02/21/2008    Page 12 of 13

216 Cal.Rptr. 443                                                                                   Page 11
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
**(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)**

alter ego of its subsidiary, equity commands that the corporate wall be breached. Yet the wall remains: the parent is liable through the acts of the subsidiary, but as a separate entity." (*Ante,* p. 449 of 216 Cal.Rptr., p. ---- of --- P.2d, italics added.) This confuses the separate legal identity of corporation and shareholder and the difference between agency and alter ego relationships. The opinion continues: "A judgment obtained against a corporation and its alter ego is enforceable against both separately. Thus, when the plaintiff settles with only the subsidiary, the parent's liability continues." (*Ibid.*) There is an unwarranted leap of logic to the conclusion that the parent remains liable which apparently arises out of an assumption of continuing individual legal identity even when liability is based solely on a claim of alter ego identification. Part of the problem may also arise out of my colleagues' reliance on the parent-subsidiary relationship; however, not every alter ego situation arises from corporate connections and the rule established here will affect individual shareholders as well.

Bragg Management's status as the *parent* of Bragg Crane is insignificant once alter ego principles apply. The parent-subsidiary relationship per se is irrelevant except to the extent it bears on the original determination of whether alter ego is appropriate. If, as Mesler asserts, the two corporations are alter egos, they should be treated as one single entity. Once this is understood, it becomes difficult to understand how the majority can hold that the settlement here does not bar further action against Bragg Management. If an action is settled with John Doe, the plaintiff cannot proceed against him as J. Doe for further and separate damages. Nonetheless, that is precisely the effect of the majority's reasoning here.

The United States District Court in *Fuls v. Shastina Properties, Inc.* (N.D. Cal.1978) 448 F.Supp. 983, clearly understood that an alter ego *309 finding must be consistently applied. As it explained, "Where the alter ego doctrine applies, ... the two corporations are treated as one for purposes of determining liability. It follows that where the one corporation is released from liability, so too is the other." (P. 989.) This state of affairs arises, of course, because under the alter ego theory urged by Mesler, Bragg Management can only be liable if Bragg Crane is liable but only because the two entities are viewed as indivisible. (See *M/V American Queen v. San Diego Marine Const.* (9th Cir.1983) 708 F.2d 1483, 1490.)

If Mesler had first sued Bragg Crane, settled and judgment had thereupon been entered in Bragg Crane's favor, Mesler would have been estopped from proceeding further against Bragg Management except to the extent that it might have sought to collect from it any unsatisfied portion of the judgment. Plaintiffs often move postjudgment to amend a judgment in their favor to add a previously unnamed person or entity as a defendant on the ground that it or he is the alter ego of an originally denominated defendant. (See *Alexander v. Abbey of the Chimes* (1980) 104 Cal.App.3d 39, 44-46, 163 Cal.Rptr. 377;Code Civ.Proc., § 187.) However, such amendment is not permitted in the absence of a showing of due diligence on the part of the plaintiff, and of participation in the defense of the underlying action by the claimed alter ego. (*Minton v. Cavaney* (1961) 56 Cal.2d 576, 581, 15 Cal.Rptr. 641, 364 P.2d 473;*Alexander,* supra, 104 Cal.App.3d at pp. 47-48,163 Cal.Rptr. 377;*Ballantine,***613 supra, § 299.04 at pp. 14.45-14.46 [factors considered in permitting amendment of judgment to include new defendant].) ***455 Such restrictions are necessary to protect the newly named entity's constitutional rights. (See *Motores de Mexicali v. Superior Court* (1958) 51 Cal.2d 172, 176, 331 P.2d 1.)

The postjudgment use of alter ego doctrine can serve only to obtain collection based on already established liability. Moreover, its availability serves to counter the majority's claims about unsuspecting plaintiffs improvidently settling with an apparently "undercapitalized" corporation. A plaintiff may settle for full value and seek to collect not only from that corporation but also from any alter ego. Plaintiffs must, as noted, exercise due diligence but this encourages careful and timely investigation of claims and possible defendants. A plaintiff may also expressly reserve the right to seek further recovery from an alter ego when the question of the relationship between defendants remains unsettled. (See, e.g., *Meyer v. Stern* (D.Col.1984) 599 F.Supp. 295, 298.) A plaintiff thus may settle and obtain speedy recovery without foreclosing his options as to other potential sources of recovery.

Plaintiff here did not expressly reserve any rights in

216 Cal.Rptr. 443 Page 12
39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443
**(Cite as: 39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443)**

his settlement. Instead, Mesler's claim against Bragg Management was based on the assertion *310 that it was in fact the alter ego (not the parent or shareholder or superior or principal) of Bragg Crane, and the corporate walls dividing the two entities therefore were illusory. Mesler obviously knew long before his settlement with Bragg Crane of the existence and purported synonymity of Bragg Management, and in fact his motion to amend to add Bragg Management as an alter ego was the original subject of this appeal. It was only during the pendency of the appeal that Mesler settled with Bragg Crane, who, he had been alleging, was the *same* entity as Bragg Management. It is in this context that Mesler's invocation of Code of Civil Procedure section 877 must be rejected.

Section 877 provides in relevant part that where a release, dismissal or covenant not to sue is given to one defendant, "It shall not discharge any *other* tortfeasor from liability unless its terms so provide...." (Italics added.) It does not apply here because, under the theory of liability urged by Mesler, Bragg Management is not *another* tortfeasor but rather it is merely the alias of the tortfeasor with whom Mesler has already reached agreement. The analysis of section 877 by the majority is simply irrelevant.

The basic harm in the majority opinion is the potential erosion it may cause in the concept of limited liability created by use of the corporate form. Incorporation creates defined legal obligations and relationships between corporation and shareholder (corporate or individual). These relationships are distinct from those created in an agency or vicarious liability situation. The majority unfortunately blurs the line.

In summary, my colleagues may well have put the lie to Shakespeare's maxim:
> "What's in a name: That which we call a rose By any other name would smell as sweet." (Romeo and Juliet, Act II, sc. 2.)

I would dismiss the appeal as moot.

GRODIN, J., concurs.

39 Cal.3d 290, 702 P.2d 601, 216 Cal.Rptr. 443

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.