Daniel J. Bergeson, Bar No. 105439
dbergeson@be-law.com
Donald P. Gagliardi, Bar No. 138979
dgagliardi@be-law.com
Colin McCarthy, Bar No. 191410
cmccarthy@be-law.com
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA 95110-2712
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Edward Sarskas, Esq., *Pro Hac Vice*
sesarskas@michaelbest.com
Michael Best & Friedrich, LLP
100 E. Wisconsin Ave., Ste. 3300
Milwaukee, WI 53202-4108
Telephone:    (414) 271-6560
Facsimile:    (414) 277-0656

Attorneys for Defendant
CARLSON TRAVEL GROUP, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA CORPORATION, FIA CARD SERVICES, N.A., a national banking association, CARLSON COMPANIES, INC., a Minnesota corporation, CARLSON TRAVEL NETWORK ASSOCIATES, INC., a Minnesota corporation, and CARLSON TRAVEL GROUP, INC., a California corporation,<br><br>Defendants. | Case No. C07-05892 SI<br><br>**CTG'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL SUPPLEMENTAL DISCOVERY RESPONSES**<br><br>Date: April 29, 2008<br>Time: 9 am<br>Courtroom: 10<br>Hon. Susan Illston<br><br>Complaint filed: November 20, 2007<br>Trial Date: TBD |

TABLE OF CONTENTS

I.   INTRODUCTION SUMMARY OF ARGUMENT ............................................................... 1

II.  BACKGROUND ................................................................................................................ 2

III. ARGUMENT ...................................................................................................................... 5

    A.   CTG's INTERROGATORY RESPONSES ARE ADEQUATE. ........................... 5

        1.   CTG's Responses to Interrogatories Nos. 1-3 are Not Incomplete. ............. 5

        2.   CTG's Response to Interrogatory No. 5 is Appropriate. .............................. 7

    B.   CTG'S RESPONSES TO PRODUCTION REQUEST NO. 3 IS ADEQUATE. ................................................................................................................. 8

    C.   CTG SHOULD NOT BE COMPELLED TO PRODUCE RESPONSIVE DOCUMENTS PRIOR TO ENTRY OF AN APPROPRIATE PROTECTIVE ORDER AND AGREEMENT ON AN ELECTRONIC DISCOVERY PLAN. .... 8

IV.  CONCLUSION ................................................................................................................... 9

Defendant Carlson Travel Group, Inc. ("CTG") respectfully submits the following memorandum of points and authorities in opposition to the motion brought by plaintiff John Lofton ("Plaintiff" or "Lofton") to compel supplemental responses to its first sets of written discovery propounded to CTG.

I.  **INTRODUCTION SUMMARY OF ARGUMENT**

Plaintiff John Lofton, an Oakland lawyer and disgruntled holder of a WorldPoints Rewards Program credit card issued by defendant Bank of America Corporation ("BofA"), complains in this lawsuit of a $45 fuel-related fee charged to him by BofA as part of a transaction in October 2007 whereby Lofton redeemed 25,000 WorldPoints for $400 credit toward domestic coach class roundtrip airline tickets on Continental Airlines. Defendant Carlson Travel Group, Inc. ("CTG"), which provides fulfillment services to BofA for the travel-related benefits of the WorldPoints Rewards Program, booked Lofton's tickets. Lofton contends that the fuel related fee violated representations made to, and relied on by him, in maintaining and using a BofA WorldPoints Rewards Program credit card.

Lofton has presently moved to compel supplemental responses to his first sets of interrogatories and requests for production of documents propounded to CTG. Although the notice of motion is itself unclear, it appears Lofton seeks supplemental responses to interrogatories Nos. 1-3 and 5, and production of documents responsive to requests for production Nos. 1-10. (*See*, Motion, at p.11).

Lofton's motion is grossly premature and made in unseemly haste. No trial date has been set, and consequently there is no discovery deadline. Indeed, the initial case management conference, scheduled for April 25, 2008. No protective order has been entered nor a protocol for production of electronic information.

Further, CTG has *not* failed or refused to respond to Lofton's first set of discovery requests. Lofton is merely dissatisfied with CTG's responses because CTG answered the questions actually posed rather than the ones Lofton intended. Likewise, CTG has *not* refused to produce responsive documents. Instead, CTG has taken the reasonable position that it will produce responsive documents following the entry of an appropriate protective order.

Moreover, the documentation Lofton seeks relating to the identities of similarly-situated California residents is possessed by Bank of America, *not* CTG. (*See,* Declaration of Maryann Korlath ("Korlath Decl."), ¶¶ 2, 6-7 & 10). Bank of America has yet to produce responsive documents. Lofton should be required to seek this information, if it all, from Bank of America, if it has not done so already.

For these reasons, as more fully discussed below, Lofton's motion should be denied.

## II.     BACKGROUND

On January 8, 2008, plaintiff John Lofton propounded to CTG his first sets of interrogatories (Nos. 1-6) and first set of requests for production of documents (Nos. 1-11). (*See,* Declaration of Ethan Preston in Support of Motion to Compel from CTG ("Preston Decl.") (Docket No. 72-2), ¶ 2 and Exs. 1 & 2 (copies of first sets of interrogatories and requests for production of documents to CTG).)

On March 10, 2008, following extensions to respond granted by Lofton's counsel, CTG timely responded to both the first sets of interrogatories and the requests for production of documents. (*See,* Preston Decl., ¶¶ 3-6 and Exs. 3 & 4 (copies of CTG's responses to first sets of interrogatories and requests for production of documents).)

*The very next day*, March 11, 2008, Lofton's counsel, Ethan Preston, Esq., sent an email to CTG's counsel, Don Gagliardi, Esq. at about 2:25 pm PST (4:25 pm CST in Preston's Chicago offices), complaining about the sufficiency of the responses. When a response was not immediately forthcoming, Mr. Preston sent Mr. Gagliardi a second email the same day at about 8:48 pm PST (10: 48 pm CST in Chicago). In his emails, Mr. Preston insisted on an immediate telephone meet-and-confer session. (*See,* Declaration of Donald P. Gagliardi in Opposition to Motion to Compel Discovery Responses ("Gagliardi Decl."), ¶ 2 and Ex. A) (copies of March 11 emails from Preston to Gagliardi.)

CTG's counsel, Mr. Gagliardi sent Mr. Preston a letter the following day, March 12, 2008, advising:

> Notwithstanding your insistence on an immediate telephonic meet-and-confer session, made within 24 hours of receiving CTG's responses and reiterated six hours later, there is no particular urgency to this process. This lawsuit is newly

2

CTG'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL SUPPL. DISCOVERY RESPONSES          Case No. C07-05892 SI

> underway. The initial case management conference has not yet occurred, nor have the parties finalized a discovery plan. . . . And needless to say, there is no trial date or discovery deadline set. Under the circumstances, the shrill tone of your meet-and confer correspondence and insistence on an immediate reply is uncivil, vexatious and harassing, especially considering that CTG has been incredibly cooperative and forthcoming in providing information.

(Preston Decl., ¶ 13 and Ex. 5 (copy of letter from Gagliardi to Preston, dated March 12, 2008).) Mr. Gagliardi advised that he and his co-counsel could be available for a call on March 18 and proceeded to address in his letter, point-by-point, matters raised by Mr. Preston in his emails. (*Id*.)

       The parties held a meet-and-confer call the following week, on March 18, 2008. Steven Lezell, Esq. participated on behalf of plaintiff Lofton. Mr. Gagliardi, his colleague Colin McCarthy, Esq., and CTG co-counsel Ed Sarskas, participated on behalf of CTG. Mr. Lezelle purported to memorialize the conversation in a letter dated March 19, 2008. (Preston Decl., ¶ 15 and Ex. 6 (copy of letter from Lezelle to Gagliardi and Sarskas, dated March 19, 2008).) During the call, Mr. Gagliardi agreed to speak with his client and advise by March 25 whether CTG would provide a supplemental response to certain reformulated interrogatories. (Gagliardi Decl., ¶ 3). Unfortunately, however, Mr. Gagliardi was unable to speak with his client within the time frame and so did not report on March 25. (*Id.*).[1]

       Rather than extending the courtesy of inquiring of CTG's counsel as to the lapsed date and as to where things stood, Lofton's counsel preemptively brought the instant motion to compel three days later, on March 28, 2008.

       Subsequently, following the filing of the instant motion on March 28, Mr. Gagliardi was

---

[1] During the same call with Mr. Lezell on March 18, Mr. Gagliardi invited Mr. Lezell to wait in pursuing a motion to compel discovery against CTG until after determining what discovery would be forthcoming from defendant Bank of America. Mr. Gagliardi told Mr. Lezell (1) that Bank of America was likely the best source of certain of the information sought by plaintiff Lofton (namely the identities of putative class members) and (2) that Mr. Gagliardi understood that Bank of America's responses to plaintiff Lofton's first sets of written discovery were not yet due. When asked when these were expected, Mr. Lezell told Mr. Gagliardi that he was unaware of the timing for responses related to the discovery propounded to Bank of America. Mr. Lezell further told Mr. Gagliardi that Lofton was uninterested in tying together the discovery propounded to defendants CTG and Bank of America. (Gagliardi Decl., ¶ 4).

able to speak with his client, and in the process he learned facts about the limited scope of documentation currently available to CTG, which facts are related in the Declaration of Maryann Korlath served and filed herewith:

> 2. Except for its weekly billing files, which CTG intends shortly to produce to plaintiff John Lofton in this litigation, CTG does not have custody, control, or possession of any documents reflecting information relating to Bank of America cardholders for whom CTG fulfills travel rewards on behalf of Bank of America pursuant to its WorldPoints program. On information and belief, Bank of America retains custody, control and possession of such information. CTG's access to Bank of America's records concerning its cardholders is temporary, limited and duration, and for the limited purpose of booking rewards travel for qualified WorldPoints cardholders.
>
> * * * * *
>
> 6. CTG enjoys only a "real time" connection with Bank of America's database for a given customer seeking to redeem WorldPoint travel rewards. The Bank of America database, as mentioned, remains in the possession, and under the custody and control, of Bank of America. The process is deliberately structured so that CTG has only limited access to Bank of America cardholder information as necessary to process the reward travel. All of this information as received from a cardholder seeking to redeem WorldPoints for a travel reward and Bank of America concerning such cardholder are available to CTG for only 72 hours following the telephone call from the cardholder. After 72 hours, CTG no longer has access to such information. CTG thus cannot further access or use this information.
>
> 7. In fulfilling a Bank of America cardholder's WorldPoints travel reward for air travel, CTG enters the passenger name, cardholder's name, and cardholder's address into its travel reservation system. This travel reservation system is a GDS-Worldspan system which is a service provider that CTG contracts with via a service agreement. The information is entered for the purposes of completing the individual's travel reservation with the airline from whom the ticket was purchased. A "draw date" is established for retention of the reservation information in the GDS-Worldspan system past the last date of travel. Typically that date is 325 days from the date the original reservation was made. Once the draw date occurs, the information is automatically deleted. Thus, after the draw date, CTG no longer has access to such information. CTG cannot further access or use this information.
>
> * * * * *
>
> 10. CTG cannot identify, produce or generate records showing any California resident from any system over which it has possession, custody, or control. It cannot do this from its weekly billing records. It cannot do this from its back office accounting system. It obviously cannot do this from its temporary and limited access to Bank of America's customer database.

(Korlath Decl., ¶¶ 2, 6-7 & 10).

1  III.   ARGUMENT

2     A.   CTG's INTERROGATORY RESPONSES ARE ADEQUATE.

3        1.   CTG's Responses to Interrogatories Nos. 1-3 are Not Incomplete.

Plaintiff John Lofton contends that "CTG's answers to interrogatories Nos. 1 to 3 are incomplete." (Motion, at p.1). They are not incomplete.

Interrogatory No. 1 asks CTG identify "each ticket which *a California resident* purchased (in whole or in part) with redeemed WorldPoints through [CTG]." (*See,* Preston Decl., ¶ 2 and Ex.1) (emphasis added). Interrogatories Nos. 2 and 3 are both expressly derivative of Interrogatory No. 1, seeking "for every ticket identified in the answer to Interrogatory No. 1" the identities, respectively, of those tickets for a fuel-related fee was charged and those whose purchase price included a fee not imposed by the airline. (*Id*). CTG responded:

> CTG responds that the answer to this interrogatory, to the extent determinable, may be determined by examining Bank of America's business records (including electronically stored information), and the burden of deriving or ascertaining the answer will be substantially the same or less for plaintiff John Lofton as for CTG. *CTG does not maintain business records that will necessarily identify the residency of a Bank of America cardholder that has purchased airline tickets with redeemed WorldPoints.*

(*See,* Preston Decl., ¶ 6 and Ex. 3) (emphasis added). Likewise, CTG referenced that the answers to interrogatories Nos. 2 and 3, to the extent determinable, could be determined from Bank of America records, including "Bank of America's individual cardholder files and CTG's files of weekly billings to Bank of America." (*Id.*).

These responses are perfectly adequate. As CTG's response to Interrogatory No. 1 points out, CTG does *not* keep records that enable it to determine who among Bank of America's cardholders is "a California resident" and who is not.[2] The fact that Lofton is unhappy with the response does *not* make it inadequate. During the parties' meet-and-confer teleconference on March 18, there was discussion about Lofton re-formulating the question to concern those WorldPoints cardholders supplying California addresses rather than those who were California

---

[2]   This response is corroborated by the Declaration of Maryann Korlath served and filed herewith.

5

1 residents. However, as reflected in the Korlath Decl. served and filed herewith, even as re-

2 formulated CTG still cannot answer the interrogatory because it lacks the relevant records.

3 Instead, this line of questioning is most appropriately directed to defendant Bank of America.

4       Similarly, the references in the responses to all three interrogatories, Nos. 1 through 3, that

5 answers, to the extent determinable, can be determined from Bank of America customer files and

6 CTG weekly billing files, are adequate under the circumstances.

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed.R.Civ.P. 33(d). Here, CTG reasonably specified the data: Bank of America's cardholder files and CTG's files of weekly billings to Bank of America.[3] Further, CTG has made clear that it will produce such files within its possession, custody and control – namely the weekly billing files – subject to entry of an appropriate protective order, thereby giving Lofton a reasonable opportunity to examine and audit them.[4] Further, because the burden is substantially the same, Lofton should be required to bear the burden of determining its own answers from the records supplied. Certainly, Lofton can as readily as CTG extract information from Bank of America's cardholder

---

[3] CTG's weekly billing files to Bank of America, which CTG will be producing, are of only limited value in responding to the interrogatories posed. (*See,* Korlath Decl., ¶¶2, 8 & 10).

[4] Lofton asserts that, "During a March 27 conference with Lofton's counsel regarding pending discovery, the Bank Defendant's counsel indicated that their position was that customers' financial reports are privileged under California law, that it would not provide such records absent an order from the Court compelling it to do so, and that it not expect the Court would grant any such order." (Motion, at p.4). This is, of course, news to CTG's counsel, which was not privy to the discussions between counsel for Lofton and Bank of America. Further, the relevance of this private discussion among Lofton's counsel and another party's counsel is not apparent. Lofton has, notably, *not* sought to compel discovery from Bank of America in the face of Bank of America's anticipated refusal to produce responsive information. This is *not* CTG's fault *nor* CTG's problem.

6

CTG'S MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION TO COMPEL SUPPL. DISCOVERY RESPONSES    Case No. C07-05892 SI

files. Also, CTG will make its files of weekly billings to Bank of America available to Lofton. (Korlath Decl., ¶ 2).

As counsel for CTG has repeatedly explained to Lofton's counsel, this can occur as soon as a protective order *among all the parties* is entered and a protocol for exchange of electronic information *among all the parties* is agreed upon. Yet, in unseemly haste, Lofton's counsel preemptively filed the instant motion to compel, cutting off further discussions. Lofton's motion should be denied. Lofton should be directed to obtain the relevant records answering its questions about the identities of putative class members from defendant Bank of America.

### 2. CTG's Response to Interrogatory No. 5 is Appropriate.

Lofton's Interrogatory No. 5 asks CTG to "[s]pecifically describe every fact which [CTG] believe[s] may support or contradict [its] opposition to the Plaintiff's Motion for Preliminary Injunction." (*See,* Preston Decl., ¶ 2 and Ex. 1). CTG pertinently responds, subject to its objections, that "the claims asserted against CTG are without basis in law or fact, and accordingly plaintiff John Lofton is not entitled to the provisional or permanent relief he seeks, either generally, or specifically as it relates to CTG." (*Id.,* ¶ 6 and Ex. 3).

Lofton contends that this response is inadequately detailed and that "Lofton is entitled to take discovery to fully test the factual assertions on which CTG's Opposition relies." (Motion, at p.5). Lofton's argument is absurd, and unfairly impinges on CTG's counsel's work product. There is no "Opposition" as yet, and accordingly there is nothing on which it "relies."

Essentially, Lofton is demanding a *sneak-peak* of CTG's opposition to Lofton's pending motion. Moreover, Lofton wants a *ridiculously early* preview. Lofton's motion for preliminary injunction is not set to be heard until September 5, 2008 – more than four months from now. CTG's opposition is not due until August 15. As a result, there is no opposition yet drafted and, as such, no document to juxtapose against "facts" which may "support or contradict" such non-existent opposition. All that exist are counsel's inchoate – and privileged – thought processes. In short, Lofton is asking, "what are your preliminary thoughts about our case?" To pose the question is to answer it: "none of your business." Lofton will get the rationale for the opposition when it becomes due. Lofton has no right to know what CTG's view is as to "facts" which may or

1  may not contradict arguments not yet fully formulated, let alone committed to writing.

2  **B.    CTG'S RESPONSES TO PRODUCTION REQUEST NO. 3 IS ADEQUATE.**

3  Lofton's motion complains about the sufficiency of only one of CTG's requests for production of documents, namely Request for Production No. 3, which is the counter-part to Interrogatory No. 5 (discussed above).

6  Request for Production No. 3 seeks all documents CTG "believe[s] may support or contradict [its] opposition to Plaintiff's Motion for Preliminary Injunction." (*See,* Preston Decl., ¶ 2 and Ex. 2). CTG responds, subject to its objections, that "CTG will produce any responsive, non-privileged documents within its possession, custody or control, after the entry of an appropriate protective order. CTG is not aware of any documents contradicting its anticipated opposition to the pending motion for preliminary injunction brought by plaintiff John Lofton." (*Id.,* ¶ 6 and Ex. 4).

13  Obviously, there is nothing insufficient about this response. CTG agreed to produce responsive documents and pointed out that it lacked some but not all responsive documents.

15  **C.    CTG SHOULD NOT BE COMPELLED TO PRODUCE RESPONSIVE DOCUMENTS PRIOR TO ENTRY OF AN APPROPRIATE PROTECTIVE ORDER AND AGREEMENT ON AN ELECTRONIC DISCOVERY PLAN.**

17  As mentioned, CTG has formally stated its intention to produce responsive, non-privileged documents following entry of an appropriate protective order. (*See*, Preston Decl., ¶ 6 and Ex. 4). Whatever the formal rules, this is ordinary practice in the Northern District of California, and as noted, there is no particular urgency to the parties exchanging documents immediately in advance of the *initial* case management conference and before any pretrial schedule has been arrived upon.

22  Lofton contends, however, that CTG cannot delay or condition document production on a stipulated protective order. (Motion, at p.6). Lofton suggests that "[p]recisely because negotiations over the stipulated protective order have taken so much time in this case, Lofton has concern that CTG['s] failure to produce documents absent a protective order is another gambit for delay." (*Id.,* at p.7). Yet, as Lofton admits, CTG that has been most proactive among the defendants in circulating a proposed protective order to all parties (on March 19), and that Lofton's counsel only thereafter, on March 28, had a conversation – to which CTG's counsel was

not privy – in which Bank of America suggested it would like a different form of protective order. (*See id.*).[5]

Regardless, the issue is moot, because the parties have stipulated to a form of protective order which awaits the Court's approval. We also contemplate a stipulated protocol for the exchange of electronic discovery prior to the hearing on this motion. CTG will thereafter expeditiously produce non-privileged, responsive documents in accordance with its formal responses. Accordingly, there is nothing to be compelled.

**IV.   CONCLUSION**

For the foregoing reasons, CTG respectfully requests that the Court deny plaintiff John Lofton's motion to compel supplemental discovery responses. Lofton should be directed to seek from defendant Bank of America information regarding the identities of putative class members.

Respectfully submitted,

Date:  April 11, 2008

BERGESON, LLP

MICHAEL BEST & FRIEDRICH, LLP

_____/s/_____
Donald P. Gagliardi

Attorneys for Defendants
CARLSON TRAVEL GROUP, INC.

---

[5]   The reality is that Lofton's counsel random and seriatim discussions with *individual* defense counsel, instead of coordinated discussions with *all* defense counsel on a given topic, that has occasioned delays in this matter. As Lofton admits, his counsel first proposed a draft protective order to CTG's counsel in February but not to all counsel until more than a month later, on March 11. (*See,* Preston Decl., ¶¶ 7-8). Even after circulating the draft to all counsel, Lofton's counsel continued to seek comments from respective defense counsel privately and seriatim and, for instance, did not share the comments of Bank of America's counsel with CTG's counsel except by filing the papers on this motion, wherein this nugget of information is gleaned. This sort of thing, which is incredibly frustrating in a multi-party action, explains the failure of the parties to expeditiously arrive at a stipulated protective order or a protocol for electronic discovery. Of course, the delay has been tolerable, to date, because, indeed, there is no particular urgency. But it is ironic that Lofton's counsel can ascribe a "gambit for delay" to defense counsel when it is Lofton's counsel own inefficiency and artifice that accounts for the unnecessary delays.