Alan Himmelfarb (Cal. Bar. No. 90480)
KAMBEREDELSON LLC
2757 Leonis Blvd.
Los Angeles, CA 90058
(323) 585-8696
ahimmelfarb@kamberedelson.com

Jay Edelson
Ethan Preston
KAMBEREDELSON LLC
53 West Jackson Ave., Suite 550
Chicago, IL 60604
312-589-6370
jedelson@kamberedelson.com
epreston@kamberedelson.com

*Attorneys for John Lofton*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff<br><br>v.<br><br>BANK OF AMERICA CORPORATION, FIA CARD SERVICES, N.A., a national banking association, CARLSON COMPANIES, INC., a Minnesota corporation, CARLSON TRAVEL NETWORK ASSOCIATES, INC., a Minnesota corporation, and CARLSON TRAVEL GROUP, INC., a California corporation, and DOES 1 to 100,<br><br>Defendants. | No. 07-05892 (SI)<br><br>Judge Susan Illston<br><br>**PLAINTIFF JOHN LOFTON'S REPLY FOR HIS MOTION TO COMPEL DISCOVERY RESPONSES FROM CARLSON TRAVEL GROUP, INC.**<br><br>Date: May 14, 2008<br>Time: 9:00 a.m.<br>Location: Courtroom 10, 19th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

Over the course of its nine page screed, Carlson Travel Group, Inc. ("CTG") dismisses Lofton as "disgruntled" and "dissatisfied," and paints his counsel as "shrill," "uncivil, vexatious, and harassing," "ironic," lacking "courtesy," and litigating in a "random" "seriatim" fashion with "inefficiency and artifice." CTG calls the instant motion "unclear," "absurd," "unfair," and "grossly premature," and asserts it was filed "preemptively" and "in unseemly haste" to get "a sneak peak" and a "ridiculously early preview." Lofton concedes defeat in this war of pejoratives, and respectfully suggests a return to the law and facts that demonstrate CTG should be compelled to answer the outstanding discovery.

Nothing requires Lofton to remain naïve or passive in the face of CTG's dilatory tactics, especially as his July 11, 2008 deadline to oppose Carlson Companies, Inc.'s ("CCI") Motion to Dismiss looms.[1] Notably absent from CTG's brief is any discussion of CCI's Motion to Dismiss, or that Lofton will need CTG's discovery responses to adequately respond to that Motion. Also absent is CTG's acknowledgment that Lofton emphatically communicated his need for the requested discovery prior to the filing of this motion and that CTG wasted several opportunities to substantiate its position that it does not have the requested information. Only after the instant Motion was filed did CTG begin to determine the scope of documentation currently available to it. (*See* Korlath Decl.) CTG's evasive initial answers have resulted in the escalation of attorneys' fees and have forced Lofton to engage the Court's assistance in obtaining proper discovery responses.

CTG tacitly concedes that there are legitimate disputes over the proper scope of discovery and that it was, and remains unwilling to resolve these issues without the Court's intervention. CTG has conveniently forgotten that when Lofton was pressing for a Rule 37 conference on March 11, 2008 – the same week CTG provided its inadequate responses – that CCI's Motion for Reconsideration was pending. Had CCI received the relief that it sought in the motion, Lofton would have potentially had less than a week to gather discovery to support

---

[1] Carlson Companies Inc.'s ("CCI's") Motion to Dismiss raises a jurisdictional objection that Lofton seeks to rebut under the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). Determining the propriety of the *Calder* effects test requires an examination of the underlying merits of Lofton's case, meaning the discovery sought from CTG is crucial to Lofton being able to formulate a well-informed opposition.

his Opposition. Lofton still needs CTG's responses to oppose CCI's jurisdictional challenge and to prepare for the parties' upcoming mediation. CTG's professed need for a protective order was a self-imposed roadblock to CCI and CTG's document production – Lofton's counsel's repeatedly assured CTG that it hold all documents as "attorney eyes only" until an appropriate order could be entered. Until Lofton actually receives CTG's documents, this Motion has not achieved its intended purpose, nor is it moot. Finally, CTG's failure to rebut arguments that refute its boilerplate objections is testament to the objections' invalidity, and suggests their insertion is designed merely to prolong the discovery process.

## I. CTG's Interrogatory Answers Are Inadequate and Fail in Attempting to Force Lofton to Answer His Own Discovery

CTG argues that its responses to Interrogatories Nos. 1 to 3 are not incomplete because those answers stated the requested information could be obtained from Defendants Bank of America Corp. and/or FIA Card Services, N.A. (collectively, "BofA") and that CTG did not "maintain business records that will *necessarily* identify the residency of a Bank of America cardholder that has purchased airline tickets with redeemed WorldPoints." (Preston Decl. ¶ 6, Docket No. 72-2; Exs. 3, 4 to Preston Decl., Docket No. 72-2) (hereinafter, "Mar. 28 Decl.") (emphasis supplied). (*Cf.* CTG Opp'n 5-6.) CTG's argument does not change the simple fact that its initial answers were evasive. CTG's initial answers beg the question of what information in CTG's weekly billing records *might* indicate which WorldPoints cardholders were California residents, and how Lofton could use those records to obtain the requested information as readily as CTG (who regularly uses both sets of records in its business). "If a party is unable to give a complete answer to an interrogatory, it should furnish any relevant information that is available." 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2177 (2d ed. 2008). "Parties must provide true, explicit, responsive, complete, and candid answers to interrogatories." *Wolk v. Green*, No. 06-5025, 2008 WL 298757 (N.D. Cal. Feb. 1, 2008) (citation, punctuation omitted). Rule 33 required CTG to provide Lofton with explicit answers to his Interrogatories using all the information it had available.

Acknowledging its answers to Interrogatories Nos. 1 to 3 are deficient, CTG now tries to supplement these shortcomings in its Opposition with the Korlath Declaration. (CTG Opp'n at 4). At the outset, CTG's initial, equivocal answer to Interrogatory No. 1 is not consistent with the categorical denial in the Korlath Declaration. (Korlath Decl. ¶ 10 ("CTG cannot identify, produce or generate records showing any California resident from any system over which it has possession, custody, or control.")) Clearly, the information in the Korlath Declaration was available to CTG at the time it made its initial answers. CTG had plenty of opportunity to apprise Lofton of the information in the Korlath Declaration before this Motion was filed. Indeed, CTG received extensions of time on February 19, 2008 (31 days after the second Rule 26(f) conference), on March 4, and on March 7, and did not provide its initial answers until March 10, 2008. (Mar. 28 Decl. ¶¶ 3-5, 13; Exs. 3, 4 to Mar. 28 Decl.)[2] If CTG had made a reasonable inquiry into its initial answers as required under Rule 26(g), part of this Motion could have been avoided.[3]

After receiving CTG's discovery responses on March 10, 2008, Lofton immediately emailed CTG's counsel identifying the defects in discovery and requesting a Rule 37 conference.[4] (Mar. 28 Decl. ¶¶ 6, 12.) Neither in its response to the email nor in the Rule 37 conference did CTG bother to "corroborate" its responses to Interrogatories Nos. 1 to 3; instead, CTG promised to inform Lofton of any change in their position by March 25, 2008. (Mar. 28 Decl. ¶ 14.) On March 25, 2008, CTG had apparently failed to contact its client regarding the discovery and therefore chose not deliver on its promise to alert Lofton's counsel as to any change in its position or to apprise Lofton of its limited access to responsive

---

[2] At present, Lofton has been unable to confirm the accuracy of the statements contained in the Korlath Declaration, but for the purposes of this Reply shall assume their truth.

[3] Back on February 7, 2008, Lofton proposed an electronic discovery track which was intended to resolve, *inter alia*, which parties had access to what categories of data relevant to this case. (Preston April 18, 2008 Decl. ¶ 2; Exhibit 1 to Preston April 18, 2008 Decl.) None of the Defendants have responded to that proposal. CTG's tardiness in producing the Korlath Declaration is especially frustrating, given that it produced precisely the kind of needless costs and delay that Lofton sought to avoid.

[4] At the time CTG was emailed on March 11, 2008, CCI's motion for reconsideration was pending. Had CCI received the relief that it sought in the motion, Lofton would have potentially had less than a week to gather discovery to support his opposition to CCI's motion to dismiss. Given the potential immediate need for CTG's discovery responses, Lofton's persistence was more than reasonable.

information. (Gagliardi Decl. ¶ 3; Mar. 28 Decl. ¶¶ 17-18.) Substantial time and effort could have been saved had CTG simply provided complete interrogatory answers or seasonably informed Lofton of the information which they now provide only after Lofton was forced to move to compel their answers.

In addition to waiting until a motion to compel was filed before attempting to complete its discovery responses, CTG relies on Rule 33(d) asserting that Lofton should be forced to answer his own Interrogatories Nos. 1 to 3 by examining BofA and CTG's own billing records because the burden of doing so would be the same or less for Lofton. (CTG Opp'n at 6.) CTG cannot shift the burden to Lofton to answer his own discovery. While Rule 33(d) gives the party responding to an interrogatory the option of producing business records in lieu of an answer where the interrogatory can be answered by reviewing the records, this option is not available unless "the burden of deriving or ascertaining the answer will be substantially the same for either party." Here, it is CTG who must demonstrate that its burden would be equivalent to that of Lofton. This CTG has failed to do. *See T.N. Taube Corp. v. Marine Midland Mortg. Corp.*, 136 F.R.D. 449, 453 (W.D.N.C. 1991) (cited by, e.g., *O'Connor v. Boeing N. Am., Inc.*, 185 F.R.D. 272, 277 (C.D. Cal. 1999)). "An important – often key – factor in weighing the respective burdens on the parties is the interrogated party's familiarity with its own documents." *Id*. at 454. Where an interrogated party is "more familiar with [its] bookkeeping methods and records than" the requesting party, it "amply supports the finding that the burdens [are] not substantially the same." *Al Barnett & Son, Inc. v. Outboard Marine Corp.*, 611 F.2d 32, 35 (3d Cir. 1979).

CTG's Opposition, much like its answers to Interrogatories 1 to 3, contains nothing more than a bare, unsubstantiated assertion that Lofton can easily determine the information he seeks from CTG's own billing records and BofA's cardholder files. (CTG Opp'n 6, 7.) The facts do not support this assertion. Both CTG and their counsel have acknowledged that CTG has access to BofA's database and that CTG's agents assigned to WorldPoints program use this database. (Mar. 28 Decl. ¶ 14(d); Ex. 3 to Mar. 28 Decl.) In addition, it is axiomatic that CTG is more familiar with its own billing records than Lofton. In the absence of any

1  justification from CTG as to how Lofton, who has never seen either BofA's database nor
2  CTG's own billing, could just as easily answer his own Interrogatories, CTG has failed to
3  meet its burden under Rule 33(d).

**II.  CTG Cannot Withold Discovery Responses Because Its Answers Might be Used to Support Its Opposition to Lofton's Motion for Preliminary Injunction**

CTG argues that it need not respond to Lofton RPD No. 3 and Interrogatory No. 5 seeking facts and documents relating to CTG's opposition to Lofton's pending Motion for Preliminary Injunction because their response is not yet due, and allowing Lofton a "sneak peak" would infringe on CTG's counsel's work product. CTG cites no authority supporting this contention because none exists. To the contrary, "[m]odern instruments of discovery serve [to] make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *U. S. v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). This is no less true for hearings on preliminary injunctions than full trials. Rule 26(d)(1) only restricts discovery "before the parties have conferred as required by Rule 26(f)." Once the parties have conferred, a party should provide the facts and documents that it currently possesses and later supplement those responses when additional information becomes available. *See Cardenas v. Dorel Juvenile Group, Inc.*, 231 F.R.D. 616, 620 (D. Kan. 2005) (citing Fed. R. Civ. P. 26(e)); *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005).

The parties have conferred and Lofton has granted CTG several discovery extensions. The facts and documents are, therefore, discoverable now. CTG points to no authority whatsoever in support of its argument that the information and documents sought should not be produced merely because they have not yet drafted their opposition to Lofton's Motion for Preliminary Injunction. (CTG Opp'n 7.) In fact, CTG has taken the position that the claims against it have no basis in law or fact and that Lofton is not entitled to the preliminary or permanent relief sought. (Mar. 28 Decl. ¶ 6; Ex. 3 to Mar. 28 Decl.) As CTG has provided its position, it is required to provide those facts and documents it currently possesses that support this position and to seasonably supplement those responses as more information becomes

available. CTG may not be happy that the discovery rules require the production of this information prior to the drafting of their opposition, but this does not render these items undiscoverable.

Equally unavailing is CTG's argument that facts and documents which putatively support its opposition to Lofton's claims are somehow protected by the work product doctrine. The work product doctrine "as embodied in Rule 26(b)(3), protects against disclosure, by its own terms, only 'documents and tangible things.'" *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 335 n.20 (N.D. Cal. 1985). The work product doctrine does not apply to discovery seeking the factual bases for a party's contention. *E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 433-35 (D. Nev. 2006). Even if the work product doctrine applied, CTG has not properly raised it. To properly raise a work product doctrine objection, CTG had to "describe the nature of the documents . . . not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). CTG had to substantiate its objection, "at the latest, before Rule 34's 30-day time limit ha[d] expired." *Burlington N. & Santa Fe Ry. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1149 n.3 (9th Cir. 2005). CTG has still failed to provide a privilege log in either its answers to discovery or with its opposition to the present motion: any proper work product objections (to the extent they exist) must be deemed to be waived.

### III. CTG Cannot Continue to Delay or Condition Document Production on the Entry of a Protective Order or an Electronic Discovery Plan

Conceding it has violated the "formal rules," CTG argues that this Court follow what it deems to be the "ordinary practice" in the Northern District of California – which (according to CTG) requires waiting for the entry of a protective order. (CTG Opp'n 8.) CTG's "ordinary" practice not only violates the Federal Rules, it has practical consequences of engendering improper and prejudicial delays. *See Brittain v. Stroh Brewing Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991). The Federal Rules require CTG to seek the entry of a protective order prior to the expiration of its deadline under Rule 34. Despite its insistence on following the "normal practice," CTG sought to alter the standard stipulated protective order for this

District which Lofton circulated on March 11, 2008, in ways that CTG knew or should have known would be objectionable to other Defendants and would cause continued delay. (Mar. 28 Decl. ¶¶ 7-9.)

As of the date of this Reply, Lofton's counsel has not received CTG's documents. Until Lofton actually receives these documents and has had an opportunity to inspect them and confirm that CTG has complied with his Requests, this Motion is not moot. CTG's foot-dragging and delay forced Lofton to account for the possibility that CTG will not produce these documents before they are needed for Lofton's Opposition to CCI's Motion to Dismiss on July 11, 2008, and for his Reply in support of his Motion for Preliminary Injunction due August 22, 2008. However, to the extent Lofton receives a complete set of responsive documents from CTG, this Motion will have achieved its purpose and can be withdrawn.

## IV.   CTG's Opposition Fails to Provide Any Support for Its Remaining Objections

CTG fails to even address Lofton's assertion that the remaining boilerplate objections are without merit. Absent any defense of these objections by CTG, there appears to be little room to question that they were interposed "to . . . cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii). For the reasons stated in Lofton's Motion to Compel, this Court should overrule those objections and CTG should be compelled to provide adequate responses to Interrogatories Nos. 1 to 3, and 5, and to produce all responsive documents to Lofton's RPDs Nos. 1 to 10 (as modified), within 15 days of the Court's order.

Dated: April 18, 2008

By: s/Ethan Preston

Jay Edelson
Ethan Preston
KAMBEREDELSON LLC
53 West Jackson Ave., Suite 550
Chicago, IL 60604

Alan Himmelfarb
KAMBEREDELSON LLC
2757 Leonis Blvd.
Los Angeles, CA 90058

*Attorneys for John Lofton*