**KamberEdelson, LLC**
53 West Jackson Blvd., Suite 550, Chicago, IL 60604
t 312.589.6370 f 312.589.6378

www.kamberedelson.com

Hon. Susan Illston
United States District Court for the Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

May 7, 2008

Re: *Lofton v. Bank of America Corp. et al.*, No. 07-05892 (SI)

Dear Judge Illston:

We are in receipt of an email from the clerk of the Court dated May 6 which inquires whether the entry of the parties' stipulated protective order on April 14 resolved any of the issues in Lofton's pending Motion to Compel. As Lofton's reply indicated, the entry of the stipulated protective order did not clear the roadblocks to document production placed by Defendant Carlson Travel Group, Inc. ("CTG"). Despite a May 7 conference between counsel for Plaintiff John Lofton and Defendants CTG and Carlson Companies, Inc. ("CTG"), the parties did not resolve their continued disputes. Lofton moves *instanter* for leave to submit this supplement to the Motion to Compel to update the Court on intervening developments, as his full response to the Court's inquiry. In the alternative, Lofton submits this letter as an independent motion to compel pursuant to Paragraph 2 of the Court's Standing Order.

**CTG Represented It Would Produce Documents**

Lofton served his first set of discovery on January 8. In addition to requesting documents, Lofton's first set of discovery asked Defendants CTG and Carlson Companies, Inc. ("CCI") to identify different sets of tickets purchased through the WorldPoint program. Specifically, Interrogatories Nos. 2 and 3 asked CTG to identify those tickets whose purchase price included 1) "any fee which was designated as fuel-related" and 2) "any fee that was not imposed by the airline."

In its March 10 response, CTG stated that the answer to Interrogatories Nos. 2 and 3 might be "determined by examining Bank of America's [("BofA")] business records . . . [t]he pertinent records would include [BofA] individual cardholder files and CTG's files of weekly billings to [BofA]." CTG committed to producing these weekly billing files to Lofton, as well as documents responsive to Lofton's Requests for Production of Documents ("RPDs") – *after* a stipulated protective order had been entered. On March 28, Lofton filed Motions to Compel CTG and CCI which, inter alia, noted that CTG's demand for a stipulated protective order *after* the deadline for its document production had passed is improper.[1]

While CTG initially proposed the inclusion of an ESI stipulation into the parties' Joint CMC Statement on April 9, the parties ultimately agreed to the Joint CMC Statement without the ESI Stipulation and CTG did not condition its document production agreement to the ESI Stipulation at that time. (Dkt. No. 97.) Thus, while CTG knew or should have known that many of the ESI Stipulation's provisions were unacceptable, Lofton had no occasion to confront CTG.

In its April 11 Opposition to Lofton's Motion to Compel, CTG contended that the Motion to Compel was "moot, because the parties have stipulated to a form of protective order which awaits the Court's approval." (CTG Opp'n 9.) Noting that it "contemplate[d] a stipulated protocol for the exchange of electronic discovery prior to the hearing on this motion," CTG committed to "thereafter

---

[1] *See* Lofton Mot. Compel CTG 6-7, citing *Lexington Ins. Co. v. Swanson*, No. 05-1614, 2007 WL 1287938, at *2 (W.D. Wash. May 1, 2007); *Brittain v. Stroh Brewery Co.*, 136 F.R.D. 408, 413 (M.D.N.C. 1991).

Illinois / New York / California

expeditiously produc[ing] non-privileged, responsive documents in accordance with its formal responses." (*Id*.) Likewise, CTG reaffirmed its assertion that "the answers to interrogatories Nos. 2 and 3, to the extent determinable, could be determined from [BofA] records, including '[BofA's] individual cardholder files and CTG's files of weekly billings to [BofA].'" (*Id*. 5.)

### After the Conclusion of the Parties' Briefing, CTG Demanded that Lofton Bear Needless Costs Before It Would Produce Documents

Despite its representations to the Court and to Lofton, CTG has to date produced exactly one document – a "sample" of its Rule 33(d) response to Interrogatories Nos. 1 to 3 whose substantive deficiencies are discussed below. CTG refuses to produce any other documents absent an unwarranted and unprecedented agreement to shift costs to Lofton.

On April 21, CTG indicated for the first time that it would not produce its weekly billing files in response to Interrogatories Nos. 1 to 3 absent an agreement that Lofton, as the party "seeking the production, pay the costs of such production, which [CTG claimed were] 11 cents per Bates-stamped image." (Preston Decl. ¶ 3, Ex. 2.) CTG's position at odds with the relevant case law. "[T]he presumption is that ***the responding party must bear the expense of complying with discovery requests***." *OpenTV v. Liberate Techns.*, 219 F.R.D. 474, 476 (N.D. Cal. 2003) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)) (emphasis supplied). Consistent with the exception regarding legitimate expenses of copying and shipping documents, Lofton offered to pay for the optical media (i.e., CD/DVD discs) containing copies of electronic documents produced by CTG.[2] However, relevant authority clearly provides that CTG must bear the "expenses associated with . . . *labeling* responsive documents." *Williams v. Taser Int'l, Inc.*, No. 06-0051, 2006 WL 1835437, at *6 (N.D. Ga. June 30, 2006) (emphasis supplied). Bates-numbering "is not a necessary cost of copying the documents" in discovery. *Baxter Int'l, Inc. v. McGaw, Inc.*, No. 95-2723, 1998 WL 102668, at *3 (N.D. Ill. Mar. 3,1998) . CTG has not offered any justification for this cost-shifting.[3] The applicable law makes clear that cost-shifting is not appropriate for accessible data.[4] Absent a justification why Lofton should share CTG's costs in discovery, Lofton stands on the presumptive rule that CTG bears the expense of complying with Lofton's discovery requests.

CTG refused Lofton's offer to pay for the optical media, and has made it clear that CTG would not produce *any* documents absent Lofton's agreement to pick up CTG's production costs:

> If you will not agree to our proposal [that Lofton pay for Bates-stamping], then we will need to await an agreed protocol among all the parties regarding electronic discovery. Further, CTG will not stipulate to a protocol that involves production of documents in a form that does not involve individualized identification of documents and pages of documents, i.e., Bates-numbering.

(Preston Decl. ¶ 4, Ex. 3.) CTG also refused to provide a "bottom-line bulk estimate" of the cost of producing the weekly files at 11 cents/page: "[i]t could anywhere from 1700 pages to 5,000 or 10,000 pages. " (Preston Decl. ¶ 5, Ex. 4.) Lofton then asked CTG to produce the original files, with the understanding that Lofton would arrange for the Bates-stamping of those files Lofton found to be usable. In its May 1 correspondence, CTG stands on its position that it will not produce these

---

[2] *Cf. Brown v. Castillo*, No. 02-6018, 2006 WL 1408452, 1 (E.D. Cal. May 22, 2006) ("producing party bears the costs of reviewing and gathering such documents but the requesting party must pay for the costs of copying the documents"). *See also Williams v. Taser Int'l, Inc.*, No. 06-0051, 2006 WL 1835437, at *6 (N.D. Ga. June 30, 2006); *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 619-20 (D. Kan. 2005).

[3] CTG bears the burden of demonstrating sufficient burden to trigger cost-shifting. *See* Fed. R. Civ. P. 26(b)(2)(B) ("the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost").

[4] *See OpenTV v. Liberate Techns.*, 219 F.R.D. 474, 476 (N.D. Cal. 2003) (quoting *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003)).

weekly billing files unless Lofton agreed to pay the costs.[5] (CTG did provide a sample weekly billing file. (Preston Decl. ¶ 6, Ex. 5.) As Lofton explained to CTG in the parties' May 7 conference, there are any number of workable document management methods that provide the same functionality CTG is demanding for much lower costs (including Adobe Acrobat, which Bates-stamps .pdf printouts automatically).[6] (Preston Decl. ¶ 9.) CTG has not backed away from its position that Lofton pay for Bates-stamping its documents. (*Id.*)

As the case law above states, there is no authority supporting CTG's demand that Lofton pay for Bates-stamping its documents. CTG's counsel has served as a special master in discovery disputes in this District; there is little question CTG understands the controlling legal principles here. "The problem, one senses, is *not* that the requirements [discovery] imposes are too subtle. Rather, the problem is more likely to be that counsel are less interested in satisfying [discovery's] requirements than in seeking tactical advantages . . . [I]t appears that the root evil in complex civil litigation continues to be the pervasiveness of gaming." *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985). Here, delaying discovery provides Defendants a specific tactical advantage, as Lofton needs discovery to have a fair opportunity to oppose CCI's Motion to Dismiss – and the July 11 deadline is just over two months away. The timing of CTG's demands betrays its gamesmanship: CTG delayed demanding the costs of production until April 21 – three days after Lofton filing his reply briefs and concluded the briefing on his Motion to Compel. This delay ensured Lofton could not raise the issue in his reply brief.

**CTG Cannot Use Its Weekly Billing Files to Answer Interrogatories Nos. 2 and 3 Under Rule 33(d)**

CTG has consistently asserted that "the answers to interrogatories Nos. 2 and 3, to the extent determinable, could be determined from [BofA] records, including '[BofA's] individual cardholder files and CTG's files of weekly billings to [BofA].'" (CTG Opp'n 5.) CTG has indicated it cannot identify the address of individual cardholders from its files. (Korlath Decl. ¶¶ 2-6, 10.) Later, CTG indicated that one could not "derive answers to Lofton's Interrogatories Nos. 1-3 propounded to CTG from the weekly billing files alone but that you may be able to do so by cross-referencing information within the weekly billing files against the cardholder records held by [BofA]." (Preston Decl. ¶ 7, Ex. 6.)

When Lofton arranged for a Rule 37 conference on May 7, he specifically requested that CTG's counsel be prepared to discuss the basis for CTG's assertions that BofA maintained records which could identify those portions of a charge for a WorldPoints airline ticket that constituted fees 1) designated as fuel-related and/or 2) which were not imposed by the airline from CTG's total charge to a cardholder. At the conference, CTG's counsel was not prepared to confirm whether or not CTG has specific knowledge supporting this assertion. Thus, it is an open question whether counsel made a "reasonable inquiry" into CTG's responses to Interrogatories Nos. 1 to 3, as required under Rule 26(g).

Instead, CTG's counsel indicated that the responses only represented that the answers to

---

[5] The logic behind the exception that the requesting party bear copying costs stems from Rule 34's language, which technically only allows the requesting party to inspect the requested documents and select which documents it wishes to copy, but does not mandate that the producing party actually copy those documents. *See Cardenas*, 230 F.R.D. at 619-20. In practice, parties do not require their respective counsel to travel to their premises to inspect the responsive documents to be copied but simply pay the costs of copying responsive documents. Hence, CTG's position would effectively deny Lofton the opportunity to select which documents he would copy.

[6] *Cf.* United States District Court for the District of Maryland, *Suggested Protocol for Discovery of Electronically Stored Information*, at 20-21, http://www.mdd.uscourts.gov/news/news/ESIProtocol.pdf.

Interrogatories Nos. 2 and 3 *might* be found in BofA's records. This confirms that CTG's response was inadequate under Rule 33(d). A party producing documents under Rule 33(d) "must show that the named documents contain all of the information requested by the interrogatories." *S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002). The phrase "may be determined" in Rule 33(d) "does not shift to the [requesting] party the [duty] to find out *whether* [the answer can be found in] the files tendered, but only permits a shift of the burden to dig it out once the respondents have specified the records from 'where the answer' can be derived or ascertained." *In re Master Key Antitrust Litig.*, 53 F.R.D. 87, 90 (D. Conn. 1971) (emphasis in original).

CTG's counsel also indicated that CTG would consider amending its response to indicate that CTG cannot answer Interrogatories Nos. 1 to 3. (Preston Decl. ¶ 10.) However, CTG "has an obligation to make a reasonable effort to locate all responsive documents and information necessary to fully respond to [Lofton's] interrogatories." *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 657 (N.D. Cal. 2004). There are good reasons to believe that CTG does have records which can answer Lofton's Interrogatories. The remarks section in the itinerary for Lofton's airline tickets itemized the charges against his credit card, including the separate charge for a "fuel-related" fees. (Lofton Decl., Dkt. No. 3-2, Ex. A.) In its responses to Lofton's Requests for Admissions Nos. 4 and 5, CTG admitted it generated the remarks section. Thus, CTG likely has (or controls) documents recording these remarks which are responsive to Interrogatory No. 2. It is also likely CTG documents recording how much CTG paid a relevant airline for a particular ticket. In conjunction with CTG's billing files, such records would be responsive to Interrogatory No. 3. *Cf. id.* (where there is "good cause to believe" responding party "has not complied with [its] duty to locate all responsive information," responding party is ordered to "detail its search efforts in a declaration signed under penalty of perjury").

CTG was not prepared to commit to a position as to whether it had these records or controlled these records in the May 7 conference. (Preston Decl. ¶ 11.) Citing the Korlath Declaration, CTG's counsel indicated that it was likely that these records were in the sole possession of a third-party contractor (Worldspan).[7] The Korlath Declaration indicates that ticket itineraries are automatically deleted on a "draw date" after the last date of travel – typically 325 days. (Korlath Decl. ¶ 7.) Since April 29, Lofton has asked CTG to confirm that Worldspan is no longer deleting WorldPoints itineraries.[8] CTG's counsel was not prepared to make that confirmation at the May 7 conference. (Preston Decl. ¶ 11.)

**The Sample File Produced By CTG Indicates Serious Defects In CTG's Document Production**

CTG did ultimately produce a "sample" file so that Lofton could determine whether the weekly billing files could be used to answer his Interrogatories. If the file received by Lofton's counsel representative, there are serious problems in CTG's document production. The sample file is an Excel file that appears to have been converted from original database output, and stripped of critical metadata that would ordinarily exist in either an original Excel file or the native database output.

---

[7] CTG's counsel did contest the notion that CTG's legal right to demand documents from Worldspan would be sufficient "control" to require it to produce these documents from Worldspan under Rule 34. *Cf. United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (the definition of "control" under Rule 34 is "the legal right to obtain documents upon demand").

[8] "The obligation to retain discoverable materials is an affirmative one; it requires that . . . corporate officers having notice of discovery obligations communicate those obligations" to the corporation's employees and agents. *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987). Even if CTG does not have a legal right to demand Worldspan stop deleting this evidence, it "still [had] an obligation to give [Lofton] notice of . . . the possible destruction of the evidence." *In re WRT Energy Sec. Litig.*, 246 F.R.D. 185, 195 (S.D.N.Y. 2007).

Along with CTG's billing files, it is readily apparent that most (if not all) of the other documents relevant to this case will be electronically stored information. All of Lofton's Requests for Production of Documents ("RPDs") specified that they should be produced "in a form that precisely replicates all the original documents' data and metadata." Lofton's third set of RPDs was served March 10: in that set and every subsequent set of RPDs, Lofton "specifically and categorically reject[ed] documents have have been converted into a .tiff format from another file format." CTG never objected to the format of production set forth in Lofton's RPDs[9] and thus waived any objections it had to the same.[10] The 2006 amendments to Federal Rule 34 firmly placed the choice of the format in which CTG produces electronic documents in Lofton's hands. *Cf.* Fed. R. Civ. P. 34(b)(1)(C) (the requesting party "may specify the form or forms in which electronically stored information is to be produced").

> Rule 34(b) permits the requesting party to designate the form or forms in which it wants electronically stored information produced. . . . Specification of the desired form or forms may facilitate the orderly, efficient, and cost-effective discovery of electronically stored information.

Fed. R. Civ. P. 34 advisory committee notes on 2006 amendments. In particular, the production of electronic documents converted to .tiff format have a number of particular deficiencies compared with original files.[11] These principles apply with equal force to documents produced under Rule 33(d) as to documents produced under Rule 34.[12] Moreover, Lofton directly requested CTG's Rule 33(d) production under Rule 34 under RPD No. 2, which sought documents that CTG "believe[s] may support or contradict [its] answers to Plaintiff's First Set of Interrogatories."

During the May 7 conference, CTG's counsel expressed some surprise or incredulity that a litigant would demand original electronic documents with their metadata intact outside of trade secret litigation. Lofton is well within his rights under Rule 34 to demand native or original electronic documents. *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 646-54 (D. Kan. 2005) (even before 2006 amendments, requesting party had right to metadata).

**Conclusion**
Lofton respectfully asks the Court to order CTG to 1) request Worldspan to stop deleting WorldPoint itineraries, 2) immediately produce all electronic discovery in original format, absent individualized showing that cost-shifting should apply, and 3) answer as much of Interrogatories Nos. 1 to 3 as it can (even if it cannot identify which tickets were purchased by California residents).

Sincerely,

Ethan Preston

---

[9] *Cf.* Fed. R. Civ. P. 34(b)(2)(D) (response to request may "object[] to a requested form for producing electronically stored information").
[10] *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("failure to object to discovery requests within the time required constitutes a waiver of any objection").
[11] For a catelogue of these deficiencies, see *Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.*, No. 04-3109, 2006 WL 665005, *1-4 (N.D. Ill. Mar. 4, 2006).
[12] *See* Fed. R. Civ. P. 33 advisory committee notes on 2006 amendments ("Rule 33(d) is amended to parallel Rule 34(a) by recognizing the importance of electronically stored information").