1   Alan Himmelfarb
    KAMBEREDELSON LLC
2   2757 Leonis Blvd.
    Los Angeles, CA 90058
3   (323) 585-8696
    ahimmelfarb@kamberedelson.com
4
    Jay Edelson
5   Ethan Preston
    KAMBEREDELSON LLC
6   53 West Jackson Ave., Suite 1530
    Chicago, IL 60604
7   312-589-6370
    jedelson@kamberedelson.com
8   epreston@kamberedelson.com

9   *Counsel for Plaintiff*

10          **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
11                    **SAN FRANCISCO DIVISION**

12  JOHN LOFTON, an individual, on his own behalf        No. 07-05892 (SI)
    and on behalf of all others similarly situated,
13                                                        Judge Susan Illston
14                  Plaintiff
                                                          **DECLARATION OF ETHAN**
15          v.                                            **PRESTON IN SUPPORT OF**
                                                          **PLAINTIFF JOHN LOFTON'S**
16  BANK OF AMERICA CORPORATION, FIA                      **MAY 7, 2008 MOTION**
    CARD SERVICES, N.A., a national banking
17  association, CARLSON COMPANIES, INC., a
    Minnesota corporation, CARLSON TRAVEL
18  NETWORK ASSOCIATES, INC., a Minnesota
    corporation, and CARLSON TRAVEL GROUP,
19  INC., a California corporation, and DOES 1 to
    100,
20
                    Defendants.
21

22

23

24

25

26

27

28

Declaration of Ethan Preston in support of                          No. 07-05892 (SI)
May 7 Motion

Pursuant to 28 U.S.C.§ 1746, I, Ethan Preston, hereby declare and state as follows:

1.     I am an attorney admitted to practice in the state of Illinois, and represent Plaintiff in the above-titled action. I am entering this declaration pursuant to Federal Rule 37(a)(1) in support of the attached Motion to Compel. I am over the age of eighteen and am fully competent to make this declaration. This declaration is based upon my personal knowledge, except where expressly noted otherwise.

2.     On April 9, counsel for Carlson Travel Group, Inc. ("CTG") sent an email to Lofton's counsel proposing a stipulation for electronic discovery. A true and correct copy of this email and attached proposal are attached as Exhibit 1.

3.     On April 21, CTG's counsel transmitted an email to Lofton's counsel. A true and correct copy of this email is attached as Exhibit 2.

4.     On April 22, CTG's counsel transmitted an email to Lofton's counsel. A true and correct copy of this email is attached as Exhibit 3.

5.     On April 24, CTG's counsel transmitted an email to Lofton's counsel. A true and correct copy of this email is attached as Exhibit 4.

6.     On May 1, CTG's counsel transmitted an email to Lofton's counsel. A true and correct copy of this email is attached as Exhibit 5. Together with a paper version of Exhibit 5, CTG provided Lofton with a "sample" of its weekly billing file which contained the charge against Lofton. This "sample" was produced as a file in Excel format written to a CD, as well as roughly 200 pages of Bates-stamped paper.

7.     On May 6, CTG's counsel transmitted an email to Lofton's counsel. A true and correct copy of this email is attached as Exhibit 6.

8.     Counsel for Lofton, CTG, and Carlson Companies, Inc. ("CCI") held a conference on or about 4:30pm CST on May 7, 2008. The conference lasted for roughly an hour.

9.     During the May 7 conference, Lofton proposed several techniques or methods for managing electronic documents that provide the same (or better) functionality as

printing the documents out and Bates-stamping them, and at substantially lower cost. CTG did not commit to using any of these alternatives.

10. During the May 7 conference, Lofton inquired whether there was any basis for CTG's assertions that Bank of America maintained records which could identify those portions of a charge for a WorldPoints airline ticket that constituted fees 1) designated as fuel-related and/or 2) which were not imposed by the airline from CTG's total charge to a cardholder. CTG's counsel was not prepared to confirm whether or not CTG has specific knowledge supporting this assertion. Rather, CTG's counsel indicated that the responses only represented that the answers to Interrogatories Nos. 2 and 3 *might* be found in Bank of America's records. CTG's counsel also indicated that CTG would consider amending its response to indicate that CTG cannot answer Interrogatories Nos. 1 to 3, if Lofton believed that such amendment would be helpful. Lofton indicated that it would, as it would clarify the issues.

11. During the May 7 conference, Lofton and CTG discussed the remarks section in the itinerary for Lofton's airline tickets, and whether CTG had records recording these remarks. CTG's counsel indicated that it was likely that these records were in the sole possession of a third-party contractor (Worldspan). CTG's counsel was unable to confirm that CTG had requested that Worldspan stopped the automatic deletion of WorldPoints itineraries.

12. I declare under penalty of perjury, that the foregoing is true and correct.

DATE: May 7, 2008

                     s/Ethan Preston
                     ETHAN PRESTON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit 1

**From:** Colin McCarthy <CMcCarthy@be-law.com>

**To:** epreston@kamberedelson.com, Yu, Jordan S. <JSYu@ReedSmith.com>, Le, Elizabeth D. <EDLe@rkmc.com>, Donald P Gagliardi <dgagliardi@be-law.com>, Sarskas, S. Edward (12521) <SESARSKAS@michaelbest.com>

**Cc:** Emma Tofelogo Fernandez <etofelogo@be-law.com>, Virginia Ross <VRoss@be-law.com>

**Subject:** Lofton v. Bank of America: Joint CMC Statement

**Date:** Wed, 9 Apr 2008 16:52:29 -0700 *(18:52 CDT)*

Counsel:

Attached please find a template and exemplar of the joint CMC statement we will need to file with Judge Illston not less than seven (7) days ahead of the conference.  Pursuant to the standing order plaintiff should initiate the process of substantive responses and by circulating to all on this list, the parties can either agree or disagree with Plaintiff's position.

I have also attached a draft of the stipulation for discovery of electronically stored information prepared by defendants pursuant to Rule 26(f)(3) for review by Plaintiff and which should be attached to the Joint CMC statement.

Thank you for your time and attention.  Please do not hesitate to contact me with any questions or concerns.

Colin G. McCarthy, Esq.
Bergeson, LLP
303 Almaden Blvd.
Suite 500
San Jose, CA 95110-2712
Main:  408 291-6200
Direct: 408 291-2764
Fax: 408 297-6000
Email: cmccarthy@be-law.com

_____

The information transmitted in this e-mail (including any attachments) is a private communication for the sole use of the above individual or entity and may contain privileged and/or confidential information that may be exempt from disclosure under law.  If you are not an intended recipient, do not forward this email.  Interception of this message may be a federal crime.  Any unauthorized dissemination, distribution, or copy of this communication (including any attachments) is strictly prohibited.  If this e-mail has been transmitted to you in error, please notify the person listed above immediately, and delete the original message (including any attachments).

_____
IRS Circular 230 Disclosure: To ensure compliance with requirements posed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Bergeson, LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein. 2008 Bergeson, LLP [All Rights Reserved].

| |
|---|
| Word document attachment (Joint CMC Statement 4.8.08. (CGM).doc), "Joint CMC Statement 4.8.08. (CGM).doc" |
| PDF document attachment (Joint CMC filed 12.11.06.pdf), "Joint CMC filed 12.11.06.pdf" |
| Word document attachment (Stipulation on ESI - JD Draft 4.9.08.DOC), "Stipulation on ESI - JD Draft 4.9.08.DOC" |

**STIPULATION FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Pursuant to Rule 26(f)(3) of the Federal Rules of Civil Procedure, the parties to this lawsuit agree that discovery of electronically stored information will be handled as follows:

I.     **FORMAT OF PRODUCTION**

A.     ESI will be produced electronically, in the following format: As black-and-white, single page, 300 DPI, CCITT TIFF Group IV images with an Opticon load file. The parties will accommodate reasonable requests for production of specific images in color. Each TIFF file shall have a unique file name which will be the Bates number of that page. The Bates number must appear on the face of the image (e.g., BATES000001.TIFF). The producing party will provide a document image load file defining document breaks (Concordance.opt file) for each set of images produced. *Extracted text will be provided as document level text files (.txt) and each text file will be named using its corresponding image file (e.g., BATES000001.TXT).*

B.     Databases: Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table. These reports or data tables will be produced in a static image format. To the extent that relevant and responsive reports or data tables derived from a database were also maintained in static form (e.g., as a PDF attachment or a hard copy in a file), those documents will be produced as static images consistent with the specifications for production of paper.

C.     Non-Convertible Files: Certain types of files such as system, program, and sound files may not be amenable to conversion into anything meaningful in TIFF format. These will be produced in the form of a placeholder TIFF image. Other files may not be able to be converted to TIFF due to password protection or

corruption (for example).  If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these will also be accounted for with a placeholder image.  Some examples of file types that may not convert include file types with the following extensions:  *.exp *.ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.mov *.mp3 *.swf *.psp *.chi *.chm *.com *.dll *.exe *.hlp *.ivi *.ivt *.ix *.msi *.nls *.obj *.ocx *.rmi *.sys *.tmp *.ttf *.vbx *.wav *.wpg *.iso *.pdb *.eps *.mpeg *.mpg *.ram *.rm *.psd *.ai *.aif *.bin *.hqx *.snd *.mpe *.wmv *.wma *.xfd *.

**D.**    *Metadata:  The parties will not produce most fields of metadata absent a showing of the need for and relevance of such data with regard to specific documents. However, in the case of all electronic documents custodian and MD5-HASH information will be produced and further in the case of e-mails, the metadata will be produced for the following fields:   TO, FROM, CC:, BCC: DATE and SUBJECT.*

**E.**    Time of Production:  Unless agreed upon otherwise, the responding party shall have up to 30 days from the date of production in which to produce a privilege log and/or redaction log.

**F.**    Costs:  The propounding party shall bear the cost of production.

## II.    ACCESSIBLE AND INACCESSIBLE ESI

Pursuant to Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure, the parties identify the following accessible and inaccessible ESI:

**A.**    Accessible ESI:  Each party represents that it has taken reasonable steps to preserve reasonably accessible sources of ESI, including the prompt implementation of a litigation hold.  Reasonably accessible sources of ESI include active e-mail accounts and archived e-mail accounts stored on computer networks or hard drives, shared network drives, workstation or laptop hard drives, and portable drives/media, CD-ROM and DVD disks. Each party will conduct a

diligent search of those reasonably accessible sources in which it has reason to believe relevant ESI responsive to discovery requests will be found.

**B.**    Inaccessible ESI:  Contingent upon each party's compliance with the obligations set forth in Section II(A), the parties agree that the circumstances of this case do not warrant the preservation, review, or production of ESI that is not reasonably accessible because it is unlikely that significant relevant information would be located in those sources that is not otherwise available in reasonably accessible sources. Moreover, that remote possibility is substantially outweighed by the burden and cost of preservation and/or review and production of ESI from these sources.  The parties agree that the following ESI is not reasonably accessible:

- Backup Tapes;
- Voicemail;
- Instant Messaging;
- Legacy Data;
- Residual, fragmented, damaged, permanently deleted, slack and unallocated data;
- Handheld PDA-type devices.
- USB Flash Drives/JumpDrives, and handheld PDA-type devices that operate independent of and/or are unsynchronized with a network.

## III.    RIGHT TO REQUEST ADDITIONAL INFORMATION

The agreements set forth herein are without prejudice to the right of a requesting party to request additional information about specific ESI, including sources of ESI previously identified as "inaccessible ESI" in Section II(B), if that party can demonstrate that material, relevant, and responsive information that is not otherwise cumulative of information already produced can only be found through such additional efforts.  The parties will negotiate in good faith with regard to whether such additional efforts are reasonably required and, if so, who should bear the cost, with the Court to resolve such disputes if agreement cannot be reached.

IV.   **INADVERTENT PRODUCTION OF DOCUMENTS.**

A.   Inadvertent production of any document produced in response to discovery requests in this action by any party or non-party, that a party or non-party later claims should have been withheld on grounds of a privilege, including the work product doctrine (collectively referred to hereinafter as an "Inadvertently Produced Privileged Document") will not be deemed to waive any privilege or work product protection.

B.   A party or non-party may request through counsel the return of any document ("Notice of Recall") that it inadvertently produced by identifying the Inadvertently Produced Privileged Document and stating the basis for withholding such document from production within ten (10) business days of discovery of the inadvertent production.   Once the Notice of Recall is given by the producing party, the receiving party shall promptly return all copies of the document or confirm in writing that all copies have been destroyed.  The producing party will send a replacement disk containing all non-privileged disk that were contained on the original production disk.    Electronic copies of the Inadvertently Produced Document will be removed from the electronic system of the receiving party. The producing party shall add the subject document to its privilege log and provide the updated Privilege Log to the receiving party.   If the Inadvertently Produced Document requires redaction only, the producing party shall within thirty (30) days of the Notice of Recall, provide to the receiving party a redacted version of the document and an updated privilege log by submitting a replacement disk containing the original production with the redacted documents included. The return of an Inadvertently Produced Document does not preclude the receiving party from disagreeing with the designation of the document as privileged or redacted and re-produced and bringing a Motion to Compel its production pursuant to the Federal Rules of Civil Procedure.

**C.**     If the Notice of Recall is made during or in preparation for a deposition, the examining and defending counsel shall meet and confer at the earliest opportunity to determine appropriate steps under this circumstance and consistent with this Agreement to return the document, redact the document or withdraw the claim of privilege.

**D.**     The parties hereby agree that even though a document may have been exchanged between counsel prior to the commencement of the litigation, the parties will re-produce any such documents in the course of discovery in the litigation.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit 2

**From:** Donald P Gagliardi <dgagliardi@be-law.com>
**To:** Ethan Preston, Esq. <epreston@kamberedelson.com>
**Cc:** SESARSKAS@michaelbest.com, Colin McCarthy <CMcCarthy@be-law.com>, Emma Tofelogo Fernandez <etofelogo@be-law.com>, Lara Brostko <LBrostko@be-law.com>
**Subject:** CTG Weekly Billing Files
**Date:** Mon, 21 Apr 2008 09:55:57 -0700 *(11:55 CDT)*

Ethan --

CTG is prepared to produce electronically its weekly billing files despite the fact that the parties have not yet agreed upon a protocol for electronic discovery.  However, CTG believes that plaintiff John Lofton, which is seeking the production, should pay the costs of such production, which we understand is 11 cents per Bates-stamped image.  CTG hereby acknowledges its responsibility, in return, to pay the costs of any production requested from plaintiff Lofton.

Once we receive your agreement to pay the production costs we will forward such documentation.  If you are not agreeable to paying the costs associated with your document requests, then we will need to meet and confer regarding this issue and, if necessary, raise it with Judge Illston.

Regards,

Don Gagliardi


Donald P. Gagliardi, Esq.
Bergeson, LLP
303 Almaden Blvd.
Suite 500
San Jose, CA 95110-2712
Main: 408-291-6200
Direct: 408 291-2752
Fax: 408 297-6000
Email: dgagliardi@be-law.com

_____
The information transmitted in this e-mail (including any attachments) is a private communication for the sole use of the above individual or entity and may contain privileged and/or confidential information that may be exempt from disclosure under law.  If you are not an intended recipient, do not forward this email.  Interception of this message may be a federal crime.  Any unauthorized dissemination, distribution, or copy of this communication (including any attachments) is strictly prohibited.  If this e-mail has been transmitted to you in error, please notify the person listed above immediately, and delete the original message (including any attachments).

_____
IRS Circular 230 Disclosure: To ensure compliance with requirements posed by the IRS, we inform you that any U.S. federal tax advice in this communication (including attachments) is not intended or written by Bergeson, LLP to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or matter addressed herein.  2008 Bergeson, LLP [All Rights Reserved].



Exhibit 3

**From:** Donald P Gagliardi <dgagliardi@be-law.com>
**To:** Ryan Andrews, Esq. <randrews@kamberedelson.com>
**Cc:** Ethan Preston, Esq. <epreston@kamberedelson.com>, Jay Edelson, Esq. <jedelson@kamberedelson.com>, SESARSKAS@michaelbest.com, Colin McCarthy <CMcCarthy@be-law.com>, Emma Tofelogo Fernandez <etofelogo@be-law.com>
**Subject:** RE: CTG Weekly Billing Records
**Date:** Tue, 22 Apr 2008 14:26:53 -0700 *(16:26 CDT)*

Ryan --

CTG cannot agree to your proposal because the documents will not have Bates numbers, which would create a potentially logistical nightmare for litigation document management, especially considering the volume of material your office has already requested and the fact that this is potentially a class action matter.

If you will not agree to our proposal, then we will need to await an agreed protocol among all the parties regarding electronic discovery. Further, CTG will not stipulate to a protocol that involves production of documents in a form that does not involve individualized identification of documents and pages of documents, i.e., Bates-numbering.

Regards,

Don Gagliardi



**From:** Ryan Andrews, Esq. [mailto:randrews@kamberedelson.com]
**Sent:** Tuesday, April 22, 2008 2:14 PM
**To:** Donald P Gagliardi; Lara Brostko
**Cc:** Ethan Preston, Esq.; Jay Edelson, Esq.
**Subject:** CTG Weekly Billing Records



Dear Mr. Gagliardi and Ms. Brostko:

Thank you for prompt response to our inquiry regarding the number of documents in question and their original format.  As the files in question are in Excel, we are willing to accept copies of those files on CD ROM/DVD and we are willing to pay for the discs.  Please let me know if you are willing to send us the files on CD/DVD and feel free to contact me with any questions.

Best regards,
Ryan

Ryan D. Andrews
Associate
KamberEdelson, LLC
53 West Jackson Blvd.
Suite 550
Chicago, IL 60604
312-589-6370
www.kamberedelson.com

************

The information contained in this communication is the property of Kambel/Edson, LLC.  It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s).  Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited.  If you have received this communication in error, please notify us immediately be return e-mail and destroy this communication and all copies thereof, including all attachments.
*************

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit 4

**From:** Donald P Gagliardi <dgagliardi@be-law.com>
**To:** Ryan Andrews, Esq. <randrews@kamberedelson.com>
**Cc:** Ethan Preston, Esq. <epreston@kamberedelson.com>, Colin McCarthy <CMcCarthy@be-law.com>, SESARSKAS@michaelbest.com, Emma Tofelogo Fernandez <etofelogo@be-law.com>, Lara Brostko <LBrostko@be-law.com>
**Subject:** RE: CTG Weekly Billing Records
**Date:** Thu, 24 Apr 2008 15:33:50 -0700 *(17:33 CDT)*

Ryan --

I don't know what your questions (other than cost estimate) have to do with our discussion, but I will attempt to answer them:

(1) Yes, the weekly biling files contain PAN numbers.  They also contain customer names (although not address or residency information); I may have mis-spoken on our call earlier.

(2) The fuel-related fee is *not* separately called out in the spreadsheet although it is included, where charged, within a column representing the total charges to the customer.  For example, for plaintiff John Lofton, the charges are shown as $107.10, but the $45 fuel-related fee is not specifically broken out.

(3) As set forth in CTG's formal discovery responses, the fuel related fees were remitted to Bank of America.

(4) We cannot provide a bottom-line bulk estimate.  As mentioned, our estimate is 11 cents per page, and there are 284 files with 6-9 spreadsheets of varying length.  It could anywhere from 1700 pages to 5,000 or 10,000 pages.

Regards,

Don Gagliardi

**From:** Ryan Andrews, Esq. [mailto:randrews@kamberedelson.com]
**Sent:** Thursday, April 24, 2008 3:04 PM
**To:** Donald P Gagliardi
**Cc:** Ethan Preston, Esq.; Colin McCarthy; SESARSKAS@michaelbest.com; Emma Tofelogo Fernandez; Lara Brostko
**Subject:** RE: CTG Weekly Billing Records

Don:

Thanks for taking the time to further discuss CTG's production of its weekly billing records this afternoon.  It was my understanding from the conversation that the billing files will be produced on CD/DVD in .tiff format with Bates-numbering and that your vendor is charging $0.11 per page for this.  However, if we are able to provide the name of, or price quote from, a different vendor that you would not be opposed using a less-expensive vendor.  It was also my understanding that you are willing to provide each year of CTG's billing records on a separate CD/DVD in their original Excel format.  If I am incorrect about any of the above, let me know.

Assuming my understanding is accurate, we need a few more things confirmed about the actual substantive files themselves, and I think we will be able to reach an agreement on this issue.  Can you confirm that the CTG Billing Files: (1) contain individual PANs; (2) separately identify any "fuel-related" fees; and (3) indicate whether fees were remitted to an airline or retained by any party?  Finally, can Lara provide us with her estimate of the actual total cost (still not sure how many pages the Excel sheets are) to produce these files?

In any event, I will await your answers to the above questions and perhaps you and Ethan can come to some agreement about this issue tomorrow.

Best regards,
Ryan


Ryan D. Andrews
Associate
KamberEdelson, LLC
53 West Jackson Blvd.
Suite 550
Chicago, IL 60604
312-589-6370
www.kamberedelson.com

************
The information contained in this communication is the property of KamberEdelson, LLC.  It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s).  Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited.  If you have received this communication in error, please notify us immediately be return e-mail and destroy this communication and all copies thereof, including all attachments.
************


-----Original Message-----
From: Donald P Gagliardi [mailto:dgagliardi@be-law.com]
Sent: Thu 4/24/2008 1:46 PM
To: Ryan Andrews, Esq.
Cc: Ethan Preston, Esq.; Colin McCarthy; SESARSKAS@michaelbest.com; Emma Tofelogo Fernandez; Lara Brostko
Subject: RE: CTG Weekly Billing Records


Ryan --

Call confirmed for noon PDT (2 pm CDT) today.  Please call me then.
Thanks.

Don Gagliardi


_____

From: Donald P Gagliardi
Sent: Thursday, April 24, 2008 8:15 AM
To: 'Ryan Andrews, Esq.'
Cc: Ethan Preston, Esq.; Colin McCarthy; SESARSKAS@michaelbest.com; Emma
Tofelogo Fernandez; Lara Brostko
Subject: RE: CTG Weekly Billing Records


Ryan --

We can be available for the call today anytime between 9:30 am and 3:30
pm PDT.

Regards,

Don Gagliardi


_____

From: Ryan Andrews, Esq. [mailto:randrews@kamberedelson.com]
Sent: Thursday, April 24, 2008 7:00 AM
To: Donald P Gagliardi
Cc: Ethan Preston, Esq.
Subject: RE: CTG Weekly Billing Records


Don:

I am just following up on the message I left yesterday about speaking
with you and your paralegal regarding the production of the weekly
billing records in this case.  With your permission, I would like to
briefly speak to your paralegal so I can clear up a few questions we
still have so that some agreement on this issue can be reached.  If you
do not mind me speaking with her, please let her know to be expecting my
call and provide me with her direct line.  If you would like to be on
the call as well, let me know what time today works for you and you
paralegal and I will call then.

Best regards,
Ryan



Ryan D. Andrews
Associate
KamberEdelson, LLC
53 West Jackson Blvd.
Suite 550
Chicago, IL 60604
312-589-6370
www.kamberedelson.com

************
The information contained in this communication is the property of
KamberEdelson, LLC.  It is confidential, may be attorney work product,
attorney-client privileged or otherwise exempt from disclosure under
applicable law, and is intended only for the use of the addressee(s).
Unauthorized use, disclosure or copying of this communication or any
part thereof is strictly prohibited.  If you have received this
communication in error, please notify us immediately be return e-mail
and destroy this communication and all copies thereof, including all
attachments.
************



-----Original Message-----
From: Donald P Gagliardi [mailto:dgagliardi@be-law.com]
Sent: Tue 4/22/2008 7:58 PM
To: Ryan Andrews, Esq.
Cc: Ethan Preston, Esq.; Jay Edelson, Esq.; Colin McCarthy;
SESARSKAS@michaelbest.com; Lara Brostko; Emma Tofelogo Fernandez
Subject: RE: CTG Weekly Billing Records

Ryan --

Why don't we schedule a call so your paralegal can talk with ours.  We

lawyers can be on the calls as well. We are currently available either tomorrow afternoon (after 2 pm PDT) or all day on Thursday.

Don Gagliardi


_____

From: Ryan Andrews, Esq. [mailto:randrews@kamberedelson.com]
Sent: Tuesday, April 22, 2008 4:34 PM
To: Donald P Gagliardi
Cc: Ethan Preston, Esq.; Jay Edelson, Esq.
Subject: RE: CTG Weekly Billing Records


Don,

Thanks again for your prompt response. I understand CTG is concerned about the production of documents without Bates-numbering.  We assume that your Bates-numbering program produces .tiff files.  We would like to have CTG produce the original Excel files and the Bates-numbered .tiff files on CD/DVD media, in lieu of paper copies.  Can you indicate whether the 11 cent per page charge is for the production of paper copies or for the conversion to .tiff files?  If the 11 cents per page is for conversion, let us know if you would be willing to allow us to convert the original files ourselves. Let me know if you have any questions or additional concerns and if you can agree to provide us with the original Excel files prior to the parties' agreement on an electronic discovery protocol.

Best regards,
Ryan


Ryan D. Andrews
Associate
KamberEdelson, LLC
53 West Jackson Blvd.
Suite 550
Chicago, IL 60604
312-589-6370
www.kamberedelson.com

************
The information contained in this communication is the property of KamberEdelson, LLC.  It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s). Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited.  If you have received this communication in error, please notify us immediately be return e-mail and destroy this communication and all copies thereof, including all attachments.
************


-----Original Message-----
From: Donald P Gagliardi [mailto:dgagliardi@be-law.com]

To: Ryan Andrews, Esq.
Cc: Ethan Preston, Esq.; Jay Edelson, Esq.; SESARSKAS@michaelbest.com;
Colin McCarthy; Emma Tofelogo Fernandez
Subject: RE: CTG Weekly Billing Records

Ryan --

CTG cannot agree to your proposal because the documents will not have
Bates numbers, which would create a potentially logistical nightmare for
litigation document management, especially considering the volume of
material your office has already requested and the fact that this is
potentially a class action matter.

If you will not agree to our proposal, then we will need to await an
agreed protocol among all the parties regarding electronic discovery.
Further, CTG will not stipulate to a protocol that involves production
of documents in a form that does not involve individualized
identification of documents and pages of documents, i.e.,
Bates-numbering.

Regards,

Don Gagliardi


_____

From: Ryan Andrews, Esq. [mailto:randrews@kamberedelson.com]
Sent: Tuesday, April 22, 2008 2:14 PM
To: Donald P Gagliardi; Lara Brostko
Cc: Ethan Preston, Esq.; Jay Edelson, Esq.
Subject: CTG Weekly Billing Records




Dear Mr. Gagliardi and Ms. Brostko:

Thank you for prompt response to our inquiry regarding the number of
documents in question and their original format.  As the files in
question are in Excel, we are willing to accept copies of those files on
CD ROM/DVD and we are willing to pay for the discs.  Please let me know
if you are willing to send us the files on CD/DVD and feel free to
contact me with any questions.

Best regards,
Ryan

Ryan D. Andrews
Associate
KamberEdelson, LLC
53 West Jackson Blvd.
Suite 550
Chicago, IL 60604
312-589-6370
www.kamberedelson.com

The information contained in this communication is the property of KamberEdelson, LLC.  It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s). Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited.  If you have received this communication in error, please notify us immediately be return e-mail and destroy this communication and all copies thereof, including all attachments.
***********

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Exhibit 5

BERGESON, LLP
ATTORNEYS AT LAW
303 ALMADEN BOULEVARD, SUITE 500
SAN JOSE, CALIFORNIA 95110
TELEPHONE (408) 291-6200
FACSIMILE (408) 297-6000
WWW.BE-LAW.COM

May 1, 2008

*By Email (w/o enclosures) and Federal Express*

Ethan Preston, Esq.
KamberEdleson, LLC
53 West Jackson Ave., Suite 550
Chicago, IL 60604

Re:   ***Lofton v. Bank of America, et al.***
      Case No. C07-05892 MJJ (USDC/N.D.Cal.)

Dear Ethan:

We are somewhat befuddled by your lengthy email dated April 29, 2008, the body of which begins, **"CTG's Weekly Billing Files Are Not Responsive"** (emphasis yours), and which asserts in the final paragraph that "Lofton is not inclined to pay some unknown amount to Bates-stamp documents which are not usable to him." In the same paragraph you suggest that we send you all the "non-responsive" weekly billing files for you to determine whether "they are usable," after which you will arrange to have them Bates-stamped. As mentioned repeatedly, most recently in my email to your colleague Ryan Andrews earlier in the day on April 29, "CTG is prepared to produce the weekly billing records [for the entire period requested] once we reach agreement from your office to pick up the costs." Accordingly, we are *not* amenable to the procedure outlined by you.

Instead, enclosed is the weekly billing file transmitted to Bank of America for the week in October 2007 in which your client, John Lofton, redeemed WorldPoints as alleged in his Complaint in the above-named lawsuit, labeled CTG000002-CTG000201. Additionally for your convenience, enclosed is a CD containing an Excel format of the documents, labeled CTG000001. CTG is producing this single file at its own cost. If you determine that such form of document is not "usable" by you, CTG will consider your request for similar such documents to be withdrawn. If, however, you determine the file "usable" and would like to receive similar such documents for a broader period of time, including the entire time period previously requested, CTG will expect to be compensated for the reasonable costs of production, which necessarily includes Bates-stamping. Please note that the documents and CD have been marked "Confidential" pursuant to the Stipulated Protective Order.

Regards,

Donald P. Gagliardi

Enclosures
cc:  All Counsel (by email w/o enclosures)

ANTHONY M. GLASSMAN
BEVERLY HILLS, CA 90210

AFFILIATED COUNSEL:
BERGESON & CAMPBELL
WASHINGTON, D.C. 20005

MARK E. FOSTER
SAN JOSE, CA 95110

1
2
3
4
5
6
7
8
9
10
11
12

Exhibit 6

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**From:** Donald P Gagliardi <dgagliardi@be-law.com>
**To:** epreston@kamberedelson.com
**Cc:** Le, Elizabeth D. <EDLe@rkmc.com>, Yu, Jordan S. <JSYu@ReedSmith.com>, Steven Teppler, Esq.
<steppler@kamberedelson.com>, Colin McCarthy <CMcCarthy@be-law.com>, Sarskas, S. Edward (12521)
<SESARSKAS@michaelbest.com>, ...
**Subject:** RE: Follow up questions re: weekly billing files
**Date:** Tue, 6 May 2008 09:51:19 -0700 *(11:51 CDT)*

Ethan --

As we have said in our formal responses, motion papers, and in our meet-and-confer discussions, CTG's weekly billing records are only one piece of a larger puzzle.  We believe Bank of America is the only party that would have every piece of the puzzle, including Bank of America's individual cardholder files (and including copies of these same weekly billings from CTG to Bank of America.)   Further, my understanding is that you cannot derive answers to Lofton's Interrogatories Nos. 1-3 propounded to CTG  from the weekly billing files alone but that you may be able to do so by cross-referencing information within the weekly billing files against the cardholder records held by Bank of America.

Regards,

Don Gagliardi


**From:** Ethan Preston [mailto:epreston@kamberedelson.com]
**Sent:** Tuesday, May 06, 2008 9:31 AM
**To:** Donald P Gagliardi
**Cc:** Le, Elizabeth D.; Yu, Jordan S.; Steven Teppler, Esq.
**Subject:** Follow up questions re: weekly billing files


Dear Don,

CTG's response to Lofton's Interrogatories Nos. 1-3 indicated that "the answer to [these Interrogatories] to the extent determinable, may be determined by examining Bank of America's business records" and that the "pertinent records would include Bank of America's individual cardholder files and CTG's files of weekly billings to Bank of America." Likewise, CTG's April 11 Opposition to the Motion to Compel stated that "the answers to interrogatories Nos. 2 and 3, to the extent determinable, could be determined from Bank of America records, including 'Bank of America's individual cardholder files and CTG's files of weekly billings to Bank of America.'"

I am in receipt of your sample Excel file. Rule 33(d) requires CTG "to provide some combination of technical support, information on application software, or other assistance [that] enables [Lofton] to derive or ascertain the answer from the electronically stored information as readily as the responding party." Fed. R. Civ. P. 33 advisory committee notes on 2006 amendments. Can you please explain to me precisely how I can determine, from the weekly billing statement you provided, those tickets whose purchase price included fees which were designated as fuel-related and fees which were not imposed by the airline?

Regards,

Ethan
--
Ethan Preston
KamberEdelson, LLC
53 West Jackson, Suite 550
Chicago, IL 60604
(312) 589-6370

This communication may be confidential and proprietary. The only persons

authorized to use this communication are the addressee(s), their agents and attorneys. Any other disclosure or use of this communication's existence, contents, substance, purport, effect, or meaning is prohibited. This communication may be exempted and protected from disclosure as attorney work product, attorney-client privilege, or under other applicable rules and/or laws. If you have received this communication in error, please notify me immediately by return e-mail and destroy this communication and any copies or attachments.