JAY EDELSON (Pro Hac Vice Pending)
jedelson@kamberedelson.com
RYAN D. ANDREWS (Admitted Pro Hac Vice)
randrews@kamberedelson.com
KAMBEREDELSON, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
T: (312) 589-6370
F: (312) 589-6378

ATTORNEYS FOR PLAINTIFFS

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated<br><br>*Plaintiff*,<br><br>vs.<br><br>BANK OF AMERICA CORPORATION, FIA CARD SERVICES, N.A., a national banking association, CARLSON COMPANIES, INC., a Minnesota corporation, and CARLSON TRAVEL GROUP, INC., a California corporation, and DOES 1 to 100,<br><br>*Defendants*. | No. CV 07-05892 SI<br><br>[Assigned to the Hon. Susan Illston]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT, ATTORNEYS' FEES, & INCENTIVE AWARD**<br><br>Location: Courtroom 10<br>450 Golden Gate Ave.<br>San Francisco, CA 94102<br>Date: April 15, 2009<br>Time: 4:00 p.m. |

1

**NOTICE OF MOTION**

2          NOTICE IS HEREBY GIVEN that the Plaintiff will move the Court, pursuant to Federal

3   Rule of Civil Procedure 23(e) to grant final approval of a proposed settlement in this consumer

4   class action on April 15, 2004 at 4:00 p.m., or as soon thereafter as counsel may be heard by the

5   above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, in

6   Courtroom 7, before the Honorable Susan Illston.

7          The Plaintiff seeks final approval of this class action settlement as fair, reasonable and

8   adequate.  Plaintiff also seeks approval of Class Counsel's request for reasonable attorney's fees

9   and Plaintiff's incentive award for serving as class representative in this matter.  The Motion is

10  based on this Notice of Motion, the accompanying Brief in Support of the Motion and the

11  authorities cited therein, oral argument of counsel, and any other matter that may be submitted at

12  the hearing.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Table of Contents

I.    NATURE OF THE LITIGATION ................................................................ 2

   A. *The Lawsuit, Discovery, & Settlement* ............................................. 2

   B. *The Defendants' Position* ................................................................. 4

II.   TERMS OF THE SETTLEMENT ........................................................... 4

   A. *Class Definition* ............................................................................... 4

   B. *Individual Class Member Benefits* ................................................... 4

   C. *Addition Settlement Benefits* ........................................................... 5

      1.  Revision of Program Details ....................................................... 5

      2.  Cy Pres ....................................................................................... 5

      3.  Payment of Notice and Administrative Fees ............................... 5

      4.  Compensation for the Class Representative ............................... 5

      5.  Payment of Attorneys' Fees and Expenses ................................ 5

   D. *Release* ............................................................................................. 6

III.  THE NOTICE DIRECTED TO THE CLASS COMPORTS WITH DUE PROCESS
     AND RULE 23 ......................................................................................... 6

IV.   THE SETTLEMENT WARRANTS FINAL APPROVAL ......................... 7

   A. *The Strength of the Plaintiff's Case* .................................................. 9

   B. *The Risk of Continued Litigation* ..................................................... 9

   C. *The Risk of Maintaining Class Action Status* ................................. 10

   D. *The Amount Offered in the Settlement* ............................................ 10

   E. *The Extent of Discovery Completed* ................................................ 11

   F. *The Experience and Opinion of Counsel* ........................................ 12

   G. *The Reaction of Class Members* ...................................................... 12

V.    THE AGREED UPON ATTORNEYS' FEES & EXPENSES ARE REASONABLE..
     ................................................................................................................ 13

1  VI.    **THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD**

2         **TO LOFTON** ................................................................................................ 17

3  VII.   **CONCLUSION**................................................................................................ 18

4                                    **Table of Authorities**

5  **United States Supreme Court Cases:**

6  *Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................ 13

7  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .......................... 7

8  *Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414 (1968)............... 9

9  **United States Circuit Court of Appeals Cases:**

10 *Champion Produce, Inc. v. Ruby Robinson Co. Inc.*, 342 F.3d 1016 (9th Cir. 2003).................. 13

11 *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................ 12

12 *Dunleavy v. Nadler*, 213 F.3d 454 (9th Cir. 2000)................................................... 9, 11

13 *Friend v. Kolodzieczak*, 72 F.3d 1386 (9th Cir. 1995)................................................ 13

14 *In re U.S. Bancorp Litig.*, 291 F. 3d 1035 (8th Cir. 2002) ......................................... 17

15 *In Re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454 (9th Cir. 2000) ............................... 17

16 *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ..................................... 12

17 *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001) .............................................................. 14

18 *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975). ................................. 14

19 *Marshall v. Holiday Magic*, 550 F.2d 1173 (9th Cir. 1977) .......................................... 7

20 *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ..................................................... 8, 12

21 *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436 (9th Cir. 1983)........................ 14

22 *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)................... 11

23 *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1985) ................... 16

24 *Silber v. Mabon*, 18 F.3d 1449 (9th Cir. 1994) ........................................................... 7

25 *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)..................................................... 8

26 *Vizcaino v. Microsoft Corp.*, 290 F3d 1043 (9th Cir. 2002) ................................. 13, 16

27 *Wing v. Asarco Inc.*, 114 F.3d 986 (9th Cir. 1997) .................................................... 13

28

**United States District Cases:**

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ......................................................... 12

*In re OmniVision Tech. Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................... 8, 10, 11, 12

*Knight v. Red Door Salons, Inc.*, No. 08-01520 SC 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ....
.................................................................................................................................................... 10

*Lewis v. Starbucks Corp.*, No. 07-cv-00490, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ......... 7

*Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298 (S.D. Fla. 2005) ............................................... 9

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................... 12

*Rodriguez v. West Pub. Corp.*, No. CV05-3222, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) .. 7

**California Supreme Court Cases:**

*Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311 (1983) ...................................................................... 14

*Serrano v. Priest*, 20 Cal. 3d 25 (1977) ...................................................................................... 14

**California Court of Appeals Cases:**

*Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19 (1st Dist. 2000) ..................................... 13,14

*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224 (2001). .................................................. 14

**Miscellaneous:**

Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 11:41 (4th Ed. 2002) ............. 8

California Consumer Legal Remedies Act, Cal. Civ. Code § 1770 .................................................. 2

California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* ................................. 2

Fed. R. Civ. P. 23 (2007) .................................................................................................... 2, 6, 7

1    **MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS'
2    FEES, AND INCENTIVE AWARD**

3       This class action arose from Defendants' practice of charging "fuel related" fees to credit

4    cardholders who purchased airline tickets by redeeming "WorldPoints" earned by making

5    purchases using FIA WorldPoints credit cards.  Lofton's Amended Complaint alleged that the

6    terms of WorldPoints Program prohibited Defendants from charging any more than the total actual

7    cost of the airline tickets in the open market and that any "fuel related" fee would only be imposed

8    by an airline.  The Amended Complaint asserts causes of action for breach of contract; breach of

9    fiduciary duty; and aiding and abetting a breach of fiduciary duty.  On November 4, 2008, this

10   Court granted preliminary approval to the Class Action Settlement Agreement (the "Settlement

11   Agreement") reached after a lengthy mediation with the Honorable Ronald M. Sabraw (Ret.).  As

12   called for in the notice plan approved by the Court,[1] direct notice to each class member

13   ascertainable through substantial effort was provided, along with notice to the required

14   governmental agencies, and the deadline for the submission of exclusions has passed.[2]  Given the

15   strength of the settlement—affording current cardholder class members automatic payments and

16   former cardholders who submitted claims cash payments each of $28.39[3]—it is not surprising that

17   there has not been a single opt-out or objection.[4]

18   _____

19      [1] On December 10, 2008, this Court granted the stipulation of the Parties to modify the original
20   notice plan to provide summary notice of the Agreement to current FIA WorldPoints
     Cardholders who are members of the settlement class via first class mail, instead of periodic
21   statement inserts, as originally called for in the Settlement Agreement.  (Dkt. 135.)
        [2] The Court's November 4, 2008 Order set the deadline for objections on April 13, 2009.  As
22   of the date of filing, there have been no objections filed in this litigation. (*See* Dkt. 128.)
        [3] As of April 6, 2009, the Claims Administrator reported that there are 50,449 current
23   cardholder class members and an estimated 619 valid claims filed, resulting in an estimated cash
     payment of $28.39.  (Andrews Decl. ¶ 20.)  However, the claims period ended April 3, 2009, and
24   the Administrator may yet receive additional valid claims that may result in a slight adjustment to
     actual final amount of the settlement benefits.
25      [4] In fact, the Settlement Agreement was thoroughly scrutinized by the Attorneys' General of
26   Illinois, Arkansas, Iowa, Tennessee, Texas, Idaho, and Nevada, whose only concern dealt with an
     unintended possible broad reading of the release that would potentially prohibit Class Members
27   cooperating were these agencies to start an investigation.  (Andrews Decl. ¶ 19.)  This issue has
        (footnote continued)
28   _____

The complexity and novelty of Plaintiff's claims, coupled with the vigorous defense promised by the Defendants, further supports that this Court should find the results achieved in this litigation are "fair, reasonable, and adequate" and that the Settlement Agreement warrants final approval.  Plaintiff further requests that this Court grant the agreed-upon request for attorneys' fees and expense reimbursement in the amount of $587,500 and for an incentive award of $2,500.

## I.   NATURE OF THE LITIGATION

### A.   *The Lawsuit, Discovery, & Settlement.*

On November 20, 2007, Lofton initiated this class action litigation alleging that the Defendants improperly charged "fuel related" fees to consumers who redeemed points obtained under the FIA WorldPoints Rewards credit card program.  (Dkt. 1.)  The original Complaint, brought on behalf of all California residents, alleged causes of action for violation of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1770; breach of fiduciary duty; aiding and abetting a breach of fiduciary duty; and violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*  (*See id.*)  As part of both the Settlement Agreement, the Parties stipulated to the filing of an Amended Complaint on behalf of a nationwide class of FIA WorldPoints cardholders whom Defendants allegedly charged a "fuel related" fee despite representations that WorldPoints cardholders would not be charged more than the total actual cost of the airline tickets in the open market and that any "fuel related" fee assessed would be imposed only by the airline.  (*See* Dkt. 125.)

Since its inception, this matter has been intensely litigated by counsel for the Parties. Shortly after filing the Complaint, Plaintiff moved for a preliminary injunction seeking to stop the Defendants' allegedly wrongful practices of instituting improper "fuel related" fees.  (Dkt. 3.)  On February 20, 2008, Carlson Companies, Inc. ("CCI") filed a motion to dismiss for lack of personal jurisdiction and Bank of America ("BofA") filed a motion to dismiss contesting the adequacy of

---

been resolved by agreement of the Parties and has separately been filed with the Court.  (*See* Dkt. 136; Andrews Decl. ¶ 19.)

1   Plaintiff's claim on March 3, 2008.  (*See* Dkt Nos. 33 and 60, respectively.)  Further motion

2   practice ensued over the proper order and dates on which these motions should be responded to.

3   (*See* Dkt. Nos. 24, 46, 50, 52, 57, 58, 59, 61, 65, 66, 69, 70, and 71.)  Ultimately, the filing of

4   these motions allowed the parties to thoroughly examine the various claims and defenses asserted

5   in the litigation.

6          The discovery conducted allowed the parties to examine the relative merits of the claims

7   and defenses.  As the Court is aware from the Parties discovery related motion practice, *see* Dkt

8   Nos. 72-76, 81-83, 87, 92-93, 98-99, 102, 105, and 107, Plaintiff propounded several sets of

9   interrogatories, requests for the production of documents, and requests to admit facts. (*See also*

10  Declaration of Ryan D. Andrews ¶ 2, a true and accurate copy of which is attached as Exhibit A.)

11  After Plaintiff's motions to compel discovery were granted and CCI's motion to stay discovery

12  was denied by the Court on May 5, 2008, Defendants CCI and CTG submitted additional

13  responses to the discovery at issue.  (*See* Dkt. 107; *see also* Andrews Decl. ¶ 3.)  From these

14  discovery responses, along with additional information provided by Defendants, Plaintiff gathered

15  information sufficient to effectively mediate and engage in informed negotiations for relief on

16  behalf of the Class.  (Andrews Decl. ¶ 4.)

17         The final Settlement Agreement was the product of months of arms' length negotiations.

18  These negotiations began in earnest on June 17, 2008, with a fourteen-hour mediation in the

19  offices of JAMS in San Francisco, California with the assistance of Judge Sabraw.  (Andrews

20  Decl. ¶¶ 5-7.)  This initial attempt at settlement, however, ended in impasse, with both sides

21  rejecting the mediator's proposal.  (Andrews Decl. ¶ 7.)  Judge Sabraw nevertheless convinced the

22  parties to continue their ongoing settlement discussions and with his assistance an agreement in

23  principle as to relief to the class was arrived at on June 20, 2008. (Andrews Decl. ¶ 8.)  In the

24  months that followed, counsel for the parties—often with the active assistance of Judge Sabraw—

25  were able to finalize the terms of the Settlement Agreement that was filed with the Court on

26  October 28, 2009 and granted preliminary approval on November 5, 2008. (Andrews Decl. ¶¶ 8-9;

27  *see also* Dkt. 125, 128.)  The relief afforded the Class and the key terms of the Settlement

28  Agreement were agreed upon before the parties began, let alone concluded, negotiations

1  concerning attorneys' fees or incentive awards. (Andrews Decl. ¶ 10.) Plaintiff now requests this

2  Court finally approve the Settlement Agreement as fair, reasonable, and adequate and to approve

3  the agreed upon attorneys' fees and incentive award.

4  **B.** *The Defendants' Position.*

5  From the outset of this litigation, Defendants have denied and continue to deny any

6  wrongdoing whatsoever or that they, or any of them, committed or have threatened or attempted to

7  commit, any wrongful acts or violations of law or duty, including, but not limited to, those

8  allegations in the Complaint and the Amended Complaint that the terms of WorldPoints Program

9  prohibited Defendants from charging any more than the total actual cost of the airline tickets in the

10 open market and that any "fuel related" fee would only be imposed by an airline. (Andrews Decl.

11 ¶ 11.) Defendants contend that they have acted properly and therefore deny that Lofton or the

12 Settlement Class are entitled to any form of damages based on the conduct alleged in either the

13 Complaint or the proposed Amended Complaint. (Andrews Decl. ¶ 12.) In addition, Defendants

14 have and continue to maintain that they have meritorious defenses to all claims alleged in the

15 Complaint and the Amended Complaint and were and are prepared to vigorously defend all claims

16 asserted in this litigation absent settlement. (Andrews Decl. ¶ 13.)

17 **II. TERMS OF THE SETTLEMENT**

18 The key terms of the settlement follow:

19 **A.** *Class Definition***:** The Class is defined as Current and former FIA WorldPoints

20 Cardholders (as defined in Section 1.14 of the Settlement Agreement) Nationwide who redeemed

21 earned WordPoints for airfare from June 27, 2005 through November 30, 2007, and who paid a

22 "fuel related fee" and have not received any prior refund of such "fuel related fee." (*See* Dkt. 125,

23 Ex. 1.) However, the Defendants, the Claims Administrator, the mediator and other such parties

24 are listed and excluded from the Class and participating in the settlement.

25 **B.** *Individual Class Member Benefits.* Prior to the Effective Date of the Settlement,

26 the Defendants will establish and administer a cash settlement fund consisting of one million four

27 hundred fifty thousand dollars ($1,450,000). The entire Settlement Fund will be used to pay the

28 claims of the class members, with no reversion to the Defendants. The 50,459 members of the

class who are current FIA WorldPoints CardHolders will each automatically receive a check or credit on their next FIA WorldPoints credit card bill in the amount of $ 28.39. Those 619 of 4024 members of the class who are former FIA WorldPoints Cardholders that submitted valid Claim Forms will also be receiving a check for $ 28.39.

**C.**   ***Addition Settlement Benefits.***  In addition to the individual monetary relief afforded the Settlement Class, the following relief or benefits have been agreed to or performed by the Defendants:

**1.**   <u>**Revision of Program Details.**</u> The Defendants have corrected the "fuel related" fee language of the *Program Details* at issue in this litigation.

**2.**   <u>**Cy Pres:**</u> The checks Defendants will issue will state that if not cashed within 90 days of the date of issuance, such funds shall be directed to a charitable or non-profit organization.  The parties have agreed that, with the approval of the Court, such funds will be given to Feeding America, a 501(c)(3) non-profit.  Feeding America is the nation's leading domestic hunger-relief charity with its mission being to feed America's hungry through a nationwide network of member food banks and to engage our country in the fight to end hunger.

**3.**   <u>**Payment of Notice and Administrative Fees**</u>:  The Defendants retained Rust Consulting, Inc. as the Claims Administrator, and in addition to the monies to be distributed to the Class, have paid the full cost of disseminating notice to the Class as well as the other costs currently incurred and to be incurred effectuating the Settlement Agreement.  Defendants have separately submitted documentation on the reach of the notice and the actions performed by the Claims Administrator.

**4.**   <u>**Compensation for the Class Representative:**</u> Defendants have agreed to, subject to Court approval, pay John Lofton, in addition to any award under the settlement and separate and apart from the relief provided to the Class, an incentive award of $2,500 as appropriate compensation for his efforts on behalf of the Class.  Defendants have further agreed that they will not object to, or otherwise challenge, Lofton's application for an incentive award if the request to the Court is not more than this amount.

1        **5.**    <u>**Payment of Attorneys' Fees and Expenses**</u>: Defendants have agreed to

2    pay Class Counsel, subject to Court approval, $587,500 in both attorneys' fees and for the

3    reimbursement of costs separate and apart from the relief provided to the members of the class.

4    This amount was agreed upon only after the terms of class relief—and the majority of the terms of

5    the ultimate Settlement Agreement—had been decided.  (Andrews Decl. ¶ 10.)  Defendants have

6    agreed that they will not object to, or otherwise challenge, Class Counsel's application for

7    reasonable attorneys' fees and for reimbursement of costs and other expenses for said amount.

8    Class Counsel has, in turn, agreed not to seek more than said amount from the Court and does not

9    seek more than this amount in section V below.

10        **D.**    *Release*

11        Upon the entry of a final order approving this settlement and the time for appeal has

12    expired or such appeal has been decided, John Lofton and each and every member of the

13    settlement class who has not timely filed a request to be excluded from the settlement class will

14    release and forever discharge the Defendants from any and all manner of claims, whether known

15    or unknown, that have been, could have been, or in the future might be asserted in the pending

16    litigation or in any other court or proceeding regarding the Defendants' alleged disclosure,

17    imposition, and collection of "fuel related" fees to the Class from June 27, 2005 through

18    November 30, 2007, or Defendants' alleged failure to secure the lowest fare possible for the Class

19    as a result of the inclusion of such "fuel related" fees in the cost of airfare from June 27, 2005

20    through November 30, 2007, and shall be permanently barred and enjoined from the institution or

21    prosecution, or from asserting, either directly or indirectly, derivatively, or representatively any

22    claims against the Defendants as further provided for in the attached settlement agreement.[5]  (Dkt.

23    125, Ex 1.)

24

25

26        [5] The Parties have agreed that that nothing in the Settlement Agreement, or settlement
documents more generally, shall be construed to prevent any Class Member from responding to,

27    cooperating in or communicating with any action, investigation or proceeding initiated by a State
or the Federal Attorney General or other governmental agency.  (*See* Dkt. 136.)

28

### III.   THE NOTICE DIRECTED TO THE CLASS COMPORTS WITH DUE PROCESS AND RULE 23

Before final approval of a class action can issue, notice of the settlement must be provided to the class. Fed. R. Civ. P. 23(e)(1). Rule 23 requires the class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Actual notice, however, is not required. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice to the class must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Notice by first-class mail to class members' last known addresses as determined by defendants' records is sufficient to provide due process to known affected parties and is the best notice practicable. *Lewis v. Starbucks Corp.*, No. 07-cv-00490, 2008 WL 4196690, at*5 (E.D. Cal. Sept. 11, 2008)(citing *Mullane,* 339 U.S. at 318).

Not only must notice of a class action settlement be properly disseminated to the class, its content must also comport with Rule 23. Under Rule 23(c)(2)(B), the notice directed to the class must clearly, and in concise, plain, easily understood language state: (a) the nature of the action; (b) the definition of the class certified; (c) the class claims, issues, or defenses; (d) that a class member may enter an appearance through an attorney if they desire; (e) that the court will exclude any member of the class upon request; (f) the method and time to request exclusion; and (g) that the judgment will be binding on class members. Fed. R. Civ. P. 23(c)(2)(B). Proper notice should also disclose any incentive award to the class representative, the proposed attorneys' fee award, the time and location of the final approval hearing, how the settlement benefits will be distributed, and the contact information of Class Counsel for those seeking to make inquiries. *Rodriguez v. West Pub. Corp.*, No. CV05-3222, 2007 WL 2827379, at *6 (C.D. Cal. Sept. 10, 2007) (citing *Marshall v. Holiday Magic*, 550 F.2d 1173, 1177-78 (9th Cir. 1977)).

As further detailed in the documentation submitted by Defendants, the Claims Administrator sent via first-class mail the summary notice to 54,483 potential class members identified though Defendants' records. As this Court found at preliminary approval, the summary

1   notice—as well as the detailed "long form" notice at www.FIAWorldPointsSettlement.com

2   prominently displayed in the mailed notice—clearly and concisely apprised the Class of the

3   above-listed requirements of Rule 23 and due process.  (Dkt. 128.)

4   **IV.      THE SETTLEMENT WARRANTS FINAL APPROVAL**

5         Under Federal Rule of Civil Procedure 23(e), "[t]he court must approve any settlement,

6   voluntary dismissal, or compromise of the claims, issues or defenses of a certified class" and such

7   approval may occur "only after a hearing and on finding that the settlement, voluntary dismissal,

8   or compromise is fair, reasonable, and adequate." Fed. R. Civ. P. 23; *In re OmniVision Tech. Inc.*,

9   559 F. Supp. 2d 1036, 1040 (N.D. Cal. 2008) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th

10  Cir. 2003)).  While a number of factors must be balanced when considering the final approval of a

11  class action settlement, "[i]n the Ninth Circuit, a court affords a presumption of fairness to a

12  settlement, if: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3)

13  the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction

14  of the class objected.  *Lewis*, 2007 WL 2827379, at *7 (citing Alba Conte and Herbert B.

15  Newberg, *Newberg on Class Actions* § 11:41 (4th Ed. 2002)).  As provided above, the Settlement

16  Agreement, to which there have been no objections, was only reached by experienced counsel

17  with sufficient discovery and after extensive arm's length negotiations and mediation with Judge

18  Sabraw.  Accordingly, the Court's analysis of the factors listed below should be examined with a

19  presumption that the Settlement Agreement is fair.

20        It is well-settled that in analyzing the fairness, reasonableness, and adequacy of a class

21  action settlement, the Court may consider the following non-exhaustive list of factors: "(1) the

22  strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

23  litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

24  in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the

25  experience and views of counsel; (7) the presence of a governmental participant;[6] and (8) the

26  _____

27        [6] There has been no formal governmental participant in this matter.  However, as stated in
    footnotes 4 and 5, *supra*, the Parties have filed a clarification as to the meaning of certain release
28        (footnote continued)

reaction of the class members to the proposed settlement."  *Molski v. Gleich*, 318 F.3d 937, 953

(9th Cir. 2003); *see also In re OmniVision*, 559 F. Supp. 2d at 1040-41 (same).  In the instant case,

each of the factors militates in favor of approving the settlement.

### A.     The Strength of the Plaintiff's Case

"Basic to [analyzing a proposed settlement] in every instance, of course, is the need to

compare the terms of the compromise with the likely rewards of the litigation."  *Protective Comm.*

*for Indep. Stockholders v. Anderson*, 390 U.S. 414, 424-25 (1968).  Class Counsel are confident in

the strength of the Plaintiff's claims; however, they are also cognizant of the legal uncertainty in

this litigation that that would be present absent the instant Settlement Agreement.  (Andrews Decl.

¶¶ 13-16.)  This uncertainty is underscored by Defendants' continued denial that Plaintiff's claims

have any merit.  Further, CCI's Answer to the Complaint asserted twenty-one separate affirmative

defenses (Dkt. 23) and CTG's Answer asserted nineteen affirmative defenses (Dkt. 28), only one

of which need gain traction with a jury to defeat Plaintiff's claims.  Given the novelty of

Plaintiff's claims, the assuredly vigorous defense, and the number of affirmative defenses

presented, Plaintiff's case is not so strong that the Settlement Agreement is unreasonable.

Accordingly, this factor favors approval of the settlement.

### B.     The Risk of Continued Litigation

The next factor this Court must consider is "the risk of continued litigation balanced

against the certainty and immediacy of recovery from the Settlement."  *In re OmniVision*, 559, F.

Supp. 2d at 1041 (citing *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)).  "The Court

should consider the vagaries of litigation and compare the significance of immediate recovery by

way of the compromise to the mere possibility of relief in the future, after protracted and

expensive litigation.  In this respect, it has been held proper to take the bird in hand instead of a

---

language resulting from being contacted by a group of Attorneys' General.  The clarification has
satisfied all concerns that the aforementioned Attorneys' General had with the Settlement
Agreement.

1    prospective flock in the bush." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla.

2    2005).

3         In the absence of the Settlement and assuming Plaintiff prevailed in defeating the pending

4    motions to dismiss and on the question of class certification, it is certain that the expense,

5    duration, and complexity of the protracted litigation that would result from the nature of the claims

6    alleged in this litigation would be substantial.  Significant costs would be incurred were this matter

7    to proceed to trial, including expenses for expert witnesses, technical consultants, and the myriad

8    of other costs necessitated by the trial of a class action.  (Andrews Decl. ¶ 16.)  Further, evidence

9    and witnesses from across the country would have to be assembled.  (*Id.*)  As a result, Plaintiff

10   certainly faced a significant challenge in proving his case on the merits.  Given the complexity of

11   the issues, the defeated party would likely appeal.  As such, the substantial and immediate relief

12   provided to the class under the Settlement weighs heavily in favor of its approval compared to the

13   inherent risk of continued litigation, trial, and appeal.

14        **C.    *The Risk of Maintaining Class Action Status***

15        The Court's November 4, 2008 Order certified a nationwide class for settlement purposes

16   only.  (Dkt. 128, ¶¶ 3-7.)  However, if the Court fails to grant final approval to the Settlement

17   Agreement for any reason, the certification of the class will automatically become void.  (*Id.* ¶

18   18(b).)  Although Plaintiff and Class Counsel believe they would be successful in obtaining

19   certification of an adversarial class absent the Settlement Agreement, Defendants have made it

20   clear that in its absence they would vigorously oppose adversarial certification.  (*See* Dkt. 125

21   Ex.1 ¶ F; *see also* Andrews Decl. ¶ 14.)  Further, even if Plaintiff were successful in a motion for

22   class certification absent the Settlement Agreement, Defendant could move for decertification of

23   the class before or during trial and likely would challenge certification on appeal.  Accordingly,

24   this factor weighs in favor of approving the Settlement Agreement because if at any point the

25   Class failed to become certified or if certification was reversed, the Class would get nothing.  *See*

26   *Rodriguez,* 2007 WL 2827379, at *8.

27   //

28   //

### D. The Amount Offered in the Settlement

The next factor relevant to a consideration of the reasonableness of the Settlement Agreement is the amount offered by Defendants. The reasonableness of the amount offered can be determined by comparing it to the maximum potential recovery if Plaintiff were to ultimately succeed at trial. *See In re OmniVision*, 559 F. Supp. 2d at 1042 (finding a certain recovery of 6% of the potential recovery after accounting for attorneys' fees and costs to be reasonable and favor approval of the settlement); *see also Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *3 (N.D. Cal. Feb. 2, 2009) (finding a settlement payment of 50% of the potential damages to be reasonable and favored approval of the settlement). In fact, "[i]t is well-settled that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982). Moreover, the certainty and relative immediacy of the cash payment under the Settlement agreement, when compared with the risk associated with seeking the full amount but receiving nothing, further justifies the reasonableness of accepting less than the maximum potential recovery. *See In re OmniVision*, 559 F. Supp. 2d at 1042.

In this matter, discovery and disclosures by the Defendants permitted Plaintiff to estimate the maximum potential damages to be approximately $3,750,000. (Andrews Decl. ¶ 17.) Under the Settlement Agreement, $1,450,000 will be paid out to the Class with any remainder due to un-cashed checks to be distributed to a *cy pres* recipient. In addition to the amount to be paid directly to the Class, Defendants have paid for the costs of administration and notice, and have agreed, subject the Court's approval, to pay Attorneys' fees of $587,500 and a $2,500 incentive award. All told, Defendants have paid through the Settlement Agreement over 60% of what Plaintiffs could have hoped to recover if victorious at trial. As such, the amount of settlement favors approval of the parties' agreement.

### E. The Extent of Discovery Completed

The next factor requires the Court consider both the extent of the discovery conducted to date and the stage of the litigation as indicators of class counsel's familiarity with the case and ability to make informed decisions. *In re OmniVision*, 559 F. Supp. 2d at 1042 (citing *Dunleavy*,

1   213 F.3d at 459).  As discussed above, Plaintiff propounded several sets of interrogatories,

2   requests for the production of documents, and requests to admit facts.  Defendants provided

3   answers, certain admissions, and responsive documents both before and after the Court's May 5,

4   2008 Order granting Plaintiff's Motion to Compel.  (*See* Dkt. 107.)  These discovery responses,

5   along with additional information provided by Defendants—both prior to and at the mediation—

6   and Class Counsel's pre-suit investigation, allowed Class Counsel to be adequately familiarized

7   with the case and to effectively negotiate the merits of the Settlement Agreement. (Andrews Decl.

8   ¶ 4.)  Accordingly, this factor too favors approval of the Settlement Agreement.

9          **F.**      ***The Experience and Opinion of Counsel***

10         The sixth factor has the Court consider Class Counsel's experience and views about the

11  adequacy of the Settlement.  *See In re OmniVision*, 559 F. Supp. 2d at 1043.  In fact, "[t]he

12  recommendations of plaintiff's counsel should be given a presumption of reasonableness."  *Id.*

13  (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)).  Reliance on such

14  recommendations is premised on the fact that "parties represented by competent counsel are better

15  positioned than courts to produce a settlement that fairly reflects each party's expected outcome in

16  the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Class Counsel,

17  as well as other members of KamberEdelson LLC that were actively involved in the litigation of

18  this matter, have regularly engaged in major complex litigation, and have had extensive

19  experience in prosecuting consumer class action lawsuits of similar size and complexity.  (*See*

20  Declaration of Jay Edelson ¶ 3, a true and accurate copy of which is attached as Exhibit B.)

21  Through their investigation, review of discovery materials, litigation, mediation, and settlement

22  Class Counsel have an intimate understanding of the instant litigation and believe the settlement to

23  more than exceed the "fair, adequate, and reasonable" standard required for the Court's approval.

24  (Andrews Decl. ¶¶ 4, 15; Edelson Decl. ¶ 5.)  This fact, therefore, also favors the Court's final

25  approval of the Settlement Agreement.

26         **G.**      ***The Reaction of Class Members***

27         The final factor in the Court's determination of the fairness, adequacy, and reasonableness

28  of the Settlement Agreement is the reaction of the class to the settlement.  *Molski*, 318 F.3d at 953.

1   "It is established that the absence of a large number of objections to a proposed class action

2   settlement raises a strong presumption that the terms of a proposed class action settlement are

3   favorable to the class members." *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D.

4   523, 528-29 (C.D. Cal. 2004). The complete lack of objections from the class members to the

5   Settlement Agreement further favors its approval. *Churchill Village LLC v. Gen. Elec.*, 361 F.3d

6   566, 577 (9th Cir. 2004).

7          In this case, the court-approved notice procedures utilized by the parties sent direct notice

8   to 54,483 potential class members, yet it yielded no objections or requests for exclusion. Further,

9   Class Counsel spoke with dozens of class members who called the toll-free number provided in

10  the notice and the majority of callers expressed their approval with the litigation and the

11  settlement. (Andrews Decl. ¶ 18.) In this day of professional objectors and cynicism about class

12  actions, the fact that there is not a single request for exclusion and not a single objection says

13  much about the appropriateness of granting final approval of the settlement. Accordingly, this and

14  the other factors each favor this Court entering final approval of the settlement.

15  **V.      THE AGREED UPON ATTORNEYS' FEES & EXPENSES ARE REASONABLE**

16         Although the Parties have agreed on the amount of attorneys' fees and expenses, the Court

17  nonetheless has discretion over the amount to be awarded. *Hensley v. Eckerhart*, 461 U.S. 424,

18  437 (1983). In this matter, Plaintiff's claims are governed by state law, which therefore, also

19  governs the award of fees. *Champion Produce, Inc. v. Ruby Robinson Co. Inc.*, 342 F.3d 1016

20  (9th Cir. 2003) (affirming application of state law for the calculation of attorney's fees where

21  underlying claims were based in state contract law); *see also Vizcaino v. Microsoft Corp.*, 290 F3d

22  1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the

23  award of fees.") It is well established that in a class action governed by California law where "the

24  responsibility to pay attorneys' fees is statutorily or otherwise transferred from the prevailing

25  plaintiff or class to the defendant, the primary method for establishing the amount of reasonable

26  attorneys' fees is the lodestar method." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26

27  (1st Dist. 2000). Further, even under Ninth Circuit precedent where a determination of fees arises

28

out of a settlement agreement, the Court would determine a reasonable fee using a lodestar with multiplier analysis. *See Wing v. Asarco Inc.*, 114 F.3d 986, 988 (9th Cir. 1997).

The lodestar figure, or "touchstone," is based on the total number of reasonable attorney hours expended multiplied by a reasonable hourly rate for each attorney involved in the litigation. *Lealao*, 82 Cal. App. 4th. at 26; *Friend v. Kolodzieczak*, 72 F.3d 1386, 1389 (9th Cir. 1995). It is proper to calculate attorneys' fees at prevailing rates to compensate for delay in receipt of payment. *Vizcaino,* 290 F.3d at 1051. Further, the standard lodestar formula is not limited to this initial mathematical calculation and may be enhanced with a multiplier upon consideration of a variety of factors. *Lealao*, 82 Cal. App. 4th at 41 (quoting *Press v. Lucky Stores, Inc.*, 34 Cal. 3d 311, 322 (1983)).

Factors often utilized by California courts in justifying the enhancement of a base lodestar include the amount or result obtained by counsel, the contingent risk presented in undertaking the litigation, and the promptness of settlement. *Id.* at 45, 52; *see also Serrano v. Priest*, 20 Cal. 3d 25 (1977)("*Serrano III*") (listing additional factors available for consideration in adjusting a base lodestar). Under Ninth Circuit precedent, the setting of a lodestar rate and enhancement requires the consideration of the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69 (9th Cir. 1975).[7] Lodestar fee enhancement for contingent risk accounts for the possibility that the attorney will not receive payment if the suit does not succeed, and therefore constitutes earned compensation, that "is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorneys'

---

[7] The *Kerr* factors include: (1) the time and labor required; (2) the novelty and difficulty of the issues involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the case; (8) the amount in question and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 69-70. Many of these factors are addressed throughout this brief and "[t]he Court need not discuss specifically each factor so long as the record shows that the court considered the factors called in to question by the case at hand. *Newhouse v. Robert's Ilima Tours, Inc.*, 708 F.2d 436, 441 (9th Cir. 1983).

fees." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138 (2001).  In California and in other courts around the nation, lodestar multipliers generally range from 2-4 and even higher multiplier have been awarded.  *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher"); *see also Vizcaino*, 290 F.3d at 1052-54 (listing, *inter alia*, lodestar multipliers in class action throughout the country and finding the average multiplier to be 3.32).

As supported by the attached declaration, Class Counsel's base lodestar is represented by the following chart:

| ATTORNEY (position) | YEARS OF PRACTICE | HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|---|
| J. Edelson (Managing Partner) | 13 years | 47.6 | $550 | $26,180.00 |
| Scott A. Kamber (Managing Partner) | 18 years | 53.0 | $550 | $29,150.00 |
| E. Preston (Former Partner) | 8 years | 619.5 | $450 | $278,775.00 |
| R. Andrews (Associate) | 4 years | 228.2 | $360 | $82,152.00 |
| S. Teppler (Senior Counsel) | 29 years | 107.3 | $450 | $48,285.00 |
| Jennifer Feldscher (Former Associate) | 8 years | 180.7 | $300 | $54,210.00 |
| S. Lezel (Associate) | 4 years | 30.3 | $360 | $10,908.00 |
| Law Students | N/A | 89.0 | $210 | $18,690.00 |
| **TOTAL** | | **1,355.6** | | **$548,350.00** |

(Edelson Decl. ¶ 11.)  The attorneys performing work on this litigation are billed at rates that correlate to their respective experience, that are reasonable in the Chicago, New York, and California legal markets.  (Edelson Decl. ¶ 10.)  Although several lawyers were involved in the litigation of this matter, each made conscious effort to minimize the duplication of work.  (Edelson Decl. ¶ 7.)  Further, the hours submitted were reviewed and any unnecessary hours or duplicative

1    hours have been adjusted. (Edelson Decl. ¶ 7.)  Therefore, Class Counsel's base, or touchstone,

2    lodestar amount is $548,350.[8]

3          Without considering the expenses Class Counsel incurred prosecuting this matter, applying

4    a modest multiplier of 1.05 necessary to arrive at the agreed-upon fees in this case is warranted.

5    Class Counsel's willingness to undertake this litigation was risky, and despite such risk, an

6    exceptional result was achieved for the class.  Notably, each class member is entitled to a $28.39

7    cash payment with any money resulting from un-cashed checks being donated to *cy pres*.  The

8    majority of class members will receive this benefit automatically.  As Plaintiff's claims are

9    untested and the volume of the revenue involved with the "fuel fees" at issue was substantial,

10   Class Counsel agreed to commence this litigation knowing they would assuredly face significant

11   opposition.  (Edelson Decl. ¶ 4.)  Indeed, although this case settled on a short—though heavily

12   litigated— time frame, Defense counsel made clear that absent a settlement this matter would have

13   continued to be aggressively defended.  (Andrews Decl. ¶¶ 11-13.)  As noted above, the rates

14   employed by Class Counsel are their normal billing rates presently charged to hourly clients.

15   (Edelson Decl. ¶ 10.)   Analysis of novel issues, significant investigation, discovery and careful

16   and extended negotiation of the final settlement agreement were required to ensure maximum

17   benefit to class, and that is in fact what the class got.  Accordingly, Class Counsel's base lodestar

18   of $548,350 warrants a multiplier of 1.05, which is commonly awarded and entirely reasonable

19   given the result obtained, resulting in a award of attorney's fees of $575,767.50.

20         In addition to this amount, Class Counsel have expended $12,566.50 in reimbursable

21   expenses, such as filing fees, appearance fees, expert consulting charges, travel, copying, and

22   other similar expenses. (Edelson Decl. ¶ 12.)  However, including the full expenses and

23   anticipated additional time and expenses in the fee award would exceed the agreed-upon total for

24

25

26
_____

27         [8] Class Counsel anticipate an additional $10,000 in time and expenses to be incurred through

28   finalizing the administration of the settlement, which is <u>not</u> included in the base lodestar.

1  fees and expenses of $587,500.  Therefore, Counsel requests the limit its award to the agreed-upon

2  $587,500.[9]

3  **VI.    THE COURT SHOULD APPROVE THE AGREED-UPON INCENTIVE AWARD
            TO LOFTON**

4             Under the Settlement Agreement, the Class Representative John Lofton, is to receive

5  an award of $2,500.  "[N]amed plaintiffs, as opposed to designated class members who are not

6  named plaintiffs, are eligible for reasonable incentive awards." *Knight*, No. 08-01520 SC, 2009

7  WL 248367, at *7 (quoting *Staton*, 327 F.3d at 977).  The Court has discretion to approve any

8  incentive award and should consider relevant factors, including: (1) the actions the plaintiff has

9  taken to protect the interests of the class; (2) the degree to which the class benefited from those

10  actions; (3) the amount of time and effort the plaintiff expended in pursuing the litigation; and (4)

11  reasonable fears of workplace retaliation.  *Staton*, 327 F.3d at 977.  California courts have

12  recognized the appropriateness of incentive awards in similar actions.  *See In Re Mego Fin. Corp.*

13  *Sec. Litig.*, 213 F. 3d 454, 463 (9th Cir. 2000) (approving $5,000 incentive award to two class

14  representatives in a settlement of $1,725,000); *see also In re U.S. Bancorp Litig.*, 291 F. 3d 1035,

15  1038 (8th Cir. 2002) (approving $2,000 incentive awards to five class representatives in a

16  settlement of $3,000,000 to the class).

17             This award, which has been agreed-upon and to which there is no objection, is entirely

18  reasonable and well within the range of similar awards. Lofton's involvement in this action was

19  _____

20       [9] Were this matter a true common fund case, it is well established that in the Ninth Circuit
     the court would have discretion to choose either the percentage of the fund or lodestar method to

21   determine the amount of reasonable fess.  *See Vizcaino* , 290 F.3d at 1047.  A true common fund

22   case exists where the burden of litigation expenses is "shared among those who are benefited by
     the litigant's efforts . . . [and] is properly applied, however, only if (1) the class of beneficiaries is

23   sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted
     with some exactitude to those benefiting."  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d

24   268, 271 (9th Cir. 1985) (internal quotations and citations omitted).  In such cases a "benchmark"
     award of 25%, with the average being 20-30%, has been established.  *Id.* at 1047. Simply, if the

25   cross check approaches the benchmark award, it confirms that the lodestar is reasonable.  Here, the

26   agreed-upon attorneys' fee amount to approximately 26% of the value of the settlement including
     the amounts to be paid to the class and the costs of notice and administration and is therefore

27   reasonable.

28

1   critical to the ultimate success of the case. (Edelson Decl. ¶ 6.)  Lofton was actively involved in

2   the prosecution of this matter and his involvement included: independently bringing the alleged

3   violation to the attention of Class Counsel; working with class counsel in the investigation of his

4   claims; aiding in discovery; and participating in the negotiation of the Settlement Agreement.

5   (Declaration of John Lofton ¶¶ 4-18, a true and accurate copy of which is attached as Exhibit C.)

6   Further, Lofton is a practicing attorney in the Bay Area and took considerable personal and

7   professional risk for the benefit of the class by being a named plaintiff in this class action.  (Lofton

8   Decl. ¶¶ 9, 13.)  Several Class Members that contacted Class Counsel after receiving the notice

9   commented that they too had noticed what they believed to be violations of the WorldPoints

10  *Program Details* and improper assessment of "fuel related" fees, but believed obtaining redress

11  would be too difficult, for various reasons.  (Andrews Decl. ¶ 18.)  But for his bringing the alleged

12  violations to the attention of Class Counsel and his participation and willingness to undertake the

13  responsibilities and risks attendant with bringing a representative action, the substantial benefit to

14  the class discussed above would not have resulted.  (Edelson Decl. ¶ 6.)  Lofton therefore requests

15  the Court approve the agreed-upon incentive award of $2,500.

16  **VII.   CONCLUSION**

17          For the foregoing reasons, Plaintiff respectfully asks that the Court grant preliminary

18  approval of the proposed settlement agreement, approve the form and manner of notice described

19  above, and enter the proposed order separately submitted (a copy of which is also included as

20  Exhibit C to the Settlement Agreement), and grant such further relief the Court deems reasonable

21  and just.

22  Dated: April 8, 2009                              JAY EDELSON
                                                      RYAN D. ANDREWS
23                                                    KAMBEREDELSON, LLC

24

25                                                    By:     /s/ Ryan D. Andrews

26

27                                                    Attorneys for Plaintiff
                                                      JOHN LOFTON
28